IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | |
|---|---|
| CITY OF COMBS, TEXAS et al., § § | |
| Plaintiffs § § | |
| v. § | CIV. ACTION NO. B-02-169 |
| § | |
| EAST RIO HONDO WATER SUPPLY § CORPORATION, et al. § § | |
| Defendants. § | |

United States District Court
Southern District of Texas
FILED

JAN 2 4 2003

Michael N. Milby
Clerk of Court

## PLAINTIFFS' PRE-TRIAL MEMORANDUM

Pursuant to this Court's January 17, 2003 Order of Three-Judge Court, Plaintiffs submit this memorandum in support of their Section 5 of the Voting Rights Act cause of action.

### I. Background

Plaintiffs brought this action alleging, among other things, a violation of Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. Plaintiffs alleged and Defendants have admitted that the East Rio Hondo Water Supply Corporation, on February 14, 1997, adopted bylaws, which specified election procedures for the election of officers and directors of the Corporation. See: Plaintiffs' Complaint ¶ 2; Defendants' Original Answer and Counterclaim ¶ 2. It is undisputed that these bylaws and election procedures have not been submitted for or received preclearance pursuant to Section 5 of the Voting Rights Act. *Id.* The Defendants, however, argue that the Corporation is not a "political subdivision" within the meaning of Section 5.[1] Although the language of Section 5 does

---

[1] Defendants' rely on the definition provided in the DOJ Section 5 regulations that quotes Section 14(c)(2) of the Act, for the proposition that only jurisdictions that conduct voter registration are "political subdivisions" subject to the provisions of Section 5. Defendants' Response In Opposition To Plaintiffs'

not expressly indicate its scope, the Defendants' argument is inconsistent with the legislative history and judicial interpretations of Section 5.

## II. Scope of Section 5

The United States Supreme Court first interpreted the term "political subdivion" in the context of Section 5 in *United States v. Sheffield Bd. of Comm'rs.*, 435 U.S. 110 (1978). The Court determined that "[t]he language, structure, history, and purposes of the Act persuade us that § 5, like the constitutional provisions it is designed to implement, applies to all entities having the power over any aspect of the electoral process within designated jurisdictions" *Sheffield*, 435 U.S. at 118. The Court found that a broad reading of Section 5 was required to implement fully the Congressional objectives underlying the Act. *Id.* at 117-118. The Court, therefore, held that Section 5 applied to an Alabama city that did not register voters. *Id.* at 138. Moreover, Section 5 was aimed at the subtle, as well as the obvious voting procedures, gives broad interpretation to the right to vote and is meant to reach all necessary actions of making the vote effective. *Allen v. State Board of Elections*, 393 U.S. 544, 565-66 (1969).

Consistent with the Supreme Court's interpretation of the Act and with the Congressional mandate of the Act, courts have held the Voting Rights Act to apply to a variety of different "political subdivisions". For instance, in addition to election changes involving jurisdictions such as cities, counties, school districts, states and the like, courts have also held the Voting Rights Act to apply to: the abolishment of the Edwards

---

Motion For Preliminary Injunction and Supporting Memorandum, ¶ 2. Yet, the Supreme Court has rejected the notion that Section 14(c)(2) limits the scope of Section 5 coverage. *United States v. Sheffield Bd. of Comm'rs*, 435 U.S. 110, 126 (1978). The Court found that a broad reading of Section 5 was required to implement fully the Congressional objectives underlying the Act and specifically rejected the proposition that only jurisdictions that engage in registration are "political subdivisions" under Section 5. *Sheffield* 435 U.S. at 117-18, 138.

2

Underground Water District and creation of the Edwards Aquifer Authority, which regulate the use, reuse, and conservation of water within or withdrawn from the Edwards Aquifer, *State of Texas v. U.S.*, 866 F. Supp. 20 (D.D.C. 1994); the Caledonia Natural Gas District, which was created to provide natural gas service to the residents of the greater Caledonia community, *Moore v. Caledonia Natural Gas District*, 890 F. Supp. 547, 548 (N.D. Miss., 1995); and the Salt River Project Agricultural Improvement and Power District, an agricultural improvement district operating a federal reclamation project, *Smith v. Salt River Project Agr. Imp. and Power District*, 109 F. 3d 586, 588 (9th Cir. 1997). In fact, the framework of the Caledonia Natural Gas District is remarkably similar to the East Rio Hondo Water Supply Corporation. See *Moore*, 890 F. Supp. at 548 and Chapter 834, Mississippi Local and Private Laws of 1988 and compare with Chapter 67 of the Texas Water Code (e.g. Both provide the electoral franchise to users or customers. Both are free to develop their own election procedures.).

### III. East Rio Hondo Water Supply Corporation is Covered by Section 5

Consistent with the broad scope of the Voting Rights Act contemplated by the Congress and interpreted by the courts, the East Rio Hondo Water Supply Corporation is clearly subject to the preclearance provisions of Section 5. First, the Corporation was created and is limited in its authority by virtue of the State enactments. See Chapter 67, Texas Water Code. Second, the State has allowed the Corporation to benefit from State benefits allowed only to its political subdivisions. See e.g. §§ 15, 16, and 17, Texas Water Code; and §11.30, Texas Tax Code. Third, the State has determined that like other of its political subdivisions, the East Rio Hondo Water Supply Corporation and other such non-profit water supply corporations, must comply with its open government

sunshine laws. See, Open Records Act, Chapter 552, Texas Government Code; and Open Meetings Act, Chapter 551, Texas Government Code. Fourth, in each of these provisions the State has defined non-profit water supply corporations, such as the East Rio Hondo Water Supply Corporation, as a "governmental body" or a "political subdivision" of the State. See, §§ 15.001(5), 16.001(7), and 17.001(6), Texas Water Code; §551.001(3)(I), Texas Government Code (Texas Open Meetings Act); § 552.003(a)(9) Texas Government Code (Texas Open Records Act). Applying the facts of this case to the law, the new bylaws and any election actions taken pursuant to the bylaws are subject to the preclearance provisions of the Voting Rights Act, and are unenforceable unless or until precleared pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c. *Clark v. Roemer*, 500 U.S. 646 (1991).

## IV. Conclusion

Based on the foregoing, Plaintiffs ask this Three-Judge Court to order Defendants to submit the 1997 bylaws for preclearance and to enjoin its board of directors election scheduled for February 11, 2003 and all other elections scheduled pursuant to said bylaws, unless and until preclearance is received.

DATED: January 24, 2003

Respectfully submitted,

ROLANDO L. RIOS
Fed. I. D. # 14370
GEORGE KORBEL
MELISSA M. CASTRO
The Law Offices of Rolando L. Rios
The Milam Building
115 E. Travis, Suite 1645
San Antonio, Texas 78205
Ph:    (210) 222-2102
Fax:   (210) 222-2898

JOSE GARZA
Fed. I. D. #
Law Office of Jose Gaza
1913 Fordham
McAllen, Texas 78505
Ph (956) 343-0157

Attorneys for the Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Plaintiffs' Pre-Trial Memorandum has been mailed to the attorney for the Defendants at the following address on this 24 day of January 2003.

Mr. J.W. Dyer
Dyer & Associates
3700 N. 10th Street, Suite 105
Mc Allen, Texas 78501
Tel. (956) 686-6606
Fax (956) 686-6601

By: _____
ROLANDO L. RIOS