IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 0 4 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| CITY OF COMBS, TEXAS et al., | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | CIV. ACTION NO. B-02-169 |
| | § | |
| EAST RIO HONDO WATER SUPPLY | § | |
| CORPORATION, et al. | § | |
| | § | |
| Defendants. | § | |

PLAINTIFFS' MEMORANDUM IN RESPONSE TO COURT'S ORDER

Pursuant to this Court's January 23, 2003 Order, Plaintiffs submit this memorandum in support of their Section 2 of the Voting Rights Act and 14th Amendment causes of action.

As a preliminary matter, it should be noted Plaintiffs believe that until the Section 5 issue is resolved, this Court should refrain from proceeding with the evaluation of all other claims. The United States Supreme Court has determined that district courts are precluded from addressing the validity of unprecleared election procedures, unless or until the Section 5 issue is resolved. *Conner v. Waller*, 421 U. S. 656 (1975)(*per curiam*). Moreover, the Plaintiffs have not yet filed for any preliminary injunctive or other preliminary relief outside their Section 5 claims. Plaintiffs' suggested, consistent with this Court's order, to extend the deadline for briefing on the non Section 5 issues. However the Defendants rejected the suggeston. Therefore, Plaintiffs will attempt to address issues raised by this Court's January 27, 2003 order.

1

**I. Jurisdiction**

In addition to the Section 5, of the Voting Rights Act, 42 U.S.C. § 1973c, Plaintiffs have raised claims pursuant to Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, as well as the Fourteenth, Fifteenth, and Nineteenth Amendments to the United States Constitution, 42 U.S.C. § 1983. All of these federal claims invoke this Court's jurisdiction since they are claims to redress the deprivation of rights and privileges secured by the Constitution and by acts of Congress providing for the equal rights of persons within the jurisdiction of the United States, and to secure equitable relief under an act of Congress providing for the protection of civil rights, including the right to vote. 28 U.S.C. § 1343 (3) & (4); 42 U.S.C. § 1973 et seq. Clearly, this Court has jurisdiction over this case.

**II. Section 2 of the Voting Rights Act**

**A. Dispositive Legal Authorities**

Plaintiffs have raised a claim of Hispanic vote dilution in violation of the Section 2 of the Voting Rights Act, 42 U.S.C. § 1973 (Section 2). Congress amended Section 2 in 1982 "to clearly establish the standards … for proving a violation of that section." S. Rep. No. 471, 97th Cong., 2nd Sess., at 2 (1982), reprinted in 1982 U.S.C.C.A.N. 177, 178 [hereinafter S. Rep.]. Congress intended to "make clear that proof of discriminatory intent is not required to establish a violation of Section 2." S. Rep. at 2. Under the framework articulated by the Congress, a plaintiff can prevail 'by showing that a challenged election law or procedure, in the context of the total circumstances of the local process, ha[s] the result of denying a racial or language minority an equal chance to participate in the electoral process." S. Rep. at 16.

2

The United States Supreme Court elaborated on the basic analytical framework established for evaluating a claim under Section 2 in *Thornburg v. Gingles*, 478 U.S. 30 (1986). In *Gingles*, the Court provided some structure to the statute's "totality of circumstances" test in a case challenging North Carolina's multimember legislative districts. *Gingles*, 478 U.S. at 47.

The Court identified three threshold factors generally necessary to prove a Section 2 claim:

> Stated succinctly, a bloc voting majority must *usually* be able to defeat candidates supported by a politically cohesive, geographically insular minority group.

*Gingles*, 478 U.S. at 49 (emphasis in original).

In other words, the plaintiff must demonstrate that: 1) the minority group is sufficiently large and geographically compact to constitute a majority in a single member district; 2) the minority group is politically cohesive; and 3) the white majority votes sufficiently as a bloc to enable it usually to defeat the minority's preferred candidate. *Clark v. Calhoun County, Miss.*, 88 F.3d 1393, 1395 (5th Cir. 1996). Once the plaintiffs establishes the three *Gingles* factors, they must then show that "under the totality of circumstances" they do not possess the same opportunities to participate in the political process and elect representatives of their choice enjoyed by other voters. *Id.*

### B. Application of Material Facts to Legal Standards

Plaintiffs believe that once discovery is complete[1], they will be able to demonstrate that the facts of this case will support Plaintiffs' Section 2 claims. First, with a 2000 census population in Cameron County of over 80% Hispanic, there can be

---

[1] In order to avoid unnecessary expense to the parties, Plaintiffs have refrained from initiating any discovery on these issues since the Section 5 issue should be determined first. See *Conner v. Waller supra.*

3

little doubt that Plaintiffs will be able to establish the feasibility of creating an Hispanic majority single member district. Second, voting analysis will find that Hispanics vote cohesively in Cameron County elections and that within the boundaries of the East Rio Hondo Water Supply Corporation, Anglo voters vote sufficiently as a bloc to usually defeat Hispanic preferred candidates. The facts will establish that, over time, the vast majority of directors of the East Rio Hondo Water Supply Corporation have been Anglo, and that the majority of members participating in director elections have been Anglo. Thus the Plaintiffs will be able to establish the three *Gingles* preconditions.

A review of the "totality of circumstances" will also help establish Plaintiffs' Section 2 claims. The existence of racially polarized voting and the extent to which minorities are elected to the governing board are the two most important factors considered in the "totality of circumstances" inquiry. *Westwego Citizens for Better Government v. City of Westwego*, 946 F.2d 1109, 1122. (5th Cir. 1991). Here the record will establish that racially polarized voting exists in Cameron County elections and that few Hispanics have been elected to the governing board of the East Rio Hondo Water Supply Corporation.

Finally, it should be noted that Defendants have asserted that the East Rio Hondo Water Supply Corporation is not a "political subdivision" of the State of Texas as defined by Section 14 of the Voting Rights Act and is therefore not a covered jurisdiction for purposes of the Voting Rights Act. In response to the Defendants' position, Plaintiffs incorporate herein, the Plaintiffs' Pre-Trial Memorandum submitted and filed with the Three-Judge Court in this cause, on the identical issue of coverage, involving the

Plaintiffs' Section 5 of the Voting Rights Act cause of action.[2] In addition, Plaintiffs would show this Court that just as with the its interpretation of "political subdivision" in the Section 5 context, the Supreme Court has also held that Section 2 applies to jurisdictions that do not conduct voter registration and that Section 2 was not constrained by the language in Section 14 of the Act. *Uvalde Consol. Indep. Sch. Dist.* 625 F.2d 547, 555-556.

### C. Relief Requested

Plaintiffs seek orders from this Court enforcing the provisions of Sections 5 and 2 of the Voting Rights Act through the issuance of injunctive relief preventing the continued use of the unprecleared and discriminatory election procedures contained in the East Rio Hondo Water Supply Corporation's by-laws including the requirement of a membership fee for voting and the use of staggered terms and at-large elections for its board of directors.

## III. Constitutional Violations

### A. Dispositive Legal Authorities

The Plaintiffs have alleged that the $100.00 fee, which allows a person to vote in Water District elections is nothing more than the imposition of an unconstitutional poll tax. The Supreme Court spoke clearly on this almost forty years ago:

> We conclude that a State violates the Equal Protection Clause of the Fourteenth Amendment whenever it makes the affluence of the voter or payment of any fee an electoral standard. Voter qualifications have no relation to wealth nor to paying or not paying this or any other tax. (footnote omitted)

---

[2] Section 5 and Section 2 are closely related. *Chisom v. Roemer*, 501 U.S. 380, 401 (1991). Both Section 2 and Section 5 should be interpreted in a manner that provides 'the broadest possible scope' in combating racial discrimination. Compare: *Chisom,* 501 U.S. at 403 (Section 2 case) with *Allen v. State Bb. of Elections*, 393 U.S. 544, 567 (1969) (Section 5 case).

*Harper v. Virginia Bd. of Elections*, 383 U.S. 663, 666 (1966)

Essentially, the Supreme has traditionally found that the right to vote is a fundamental right, *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886)(the Court referred to "the political franchise of voting" as a "fundamental political right, because preservative of all rights.").

In the matter before this Court, it might be argued that the $100.00 fee is merely a membership fee that is much like a driver's license or some other state fee related to exercising a right.  However, in *Harper*, the Supreme Court anticipated this position:

> It is argued that a State may exact fees from citizens for many different kinds of licenses; that if it can demand from all an equal fee for a driver's license, (footnote omitted)  it can demand from all an equal poll tax for voting. But we must remember that **the interest of the State, when it comes to voting, is limited to the power to fix qualifications. Wealth, like race, creed, or color, is not germane to one's ability to participate intelligently in the electoral process. (emphasis added)**

*Harper*, 383 U.S. at 368

The Supreme Court continued:

> Lines drawn on the basis of wealth or property, like those of race (Korematsu v. United States, 323 U.S. 214, 216 ), are traditionally disfavored. See Edwards v. California, 314 U.S. 160, 184 -185 (Jackson, J., concurring); Griffin v. Illinois, 351 U.S. 12 ; Douglas v. California, 372 U.S. 353 . To introduce wealth or payment of a fee as a measure of a voter's qualifications is to introduce a capricious or irrelevant factor. The degree of the discrimination is irrelevant. In this context - that is, as a condition of obtaining a ballot - the requirement of fee paying causes an "invidious" discrimination (Skinner v. Oklahoma, 316 U.S. 535, 541 ) that runs afoul of the Equal Protection Clause.

*Id.*

The bottom line is that

> whether the citizen, otherwise qualified to vote, has $1.50 in his pocket or nothing at all, pays the fee or fails to pay it. The principle that denies the State the right to dilute a citizen's vote on account of his economic status or other such factors by analogy bars a system which excludes those unable to pay a fee to vote or who fail to pay.

*Harper*, 383 U.S. at 668

### B. Application of Material Facts to Legal Standards

It is particularly significant that the fee needed to qualify to vote in *Harper* was in the $1.00 to $2.00 range *Harper*, 383 U.S. at 668 n 4. Here, the fee is $100.00. Even accounting for inflation the obstacle on the ability to cast a vote here is much higher. East Rio Hondo is an entity which fills the municipal function of providing potable water to the persons living in the area defined by state license. A person can receive water without paying the $100.00 membership fee. But the person cannot vote without paying the $100.00 fee. This is a tax directly related to voting.

### C. Relief Requested

In most situations, Courts deal first with the statutory causes of action before considering the Constitutional ones. *Polk Co. v. Glover*, 305 U.S. 5, 10  (1938). If the Court finds that the factual situation here is not covered by Section 5 of the Voting Rights Act or any other Federal Statute, then Plaintiffs will pursue its claim that the $100.00 membership fee is simply a replay of the facts in *Harper*. As such, Plaintiffs are entitled to the same relief.

## IV. Conclusion

Plaintiffs have presented a legitimate claim under the Voting Rights Act and pursuant to the United States Constitution. Plaintiffs would ask the court to establish a reasonable scheduling order under which the parties may proceed, but to refrain from any determination of the merits of all claims until the Section 5 issue is resolved.

DATED: February 4, 2003                     Respectfully Submitted,

7

ROLANDO L. RIOS
Fed. I. D. # 14370
GEORGE KORBEL
MELISSA M. CASTRO
The Law Offices of Rolando L. Rios
The Milam Building
115 E. Travis, Suite 1645
San Antonio, Texas 78205
Ph:     (210) 222-2102
Fax:    (210) 222-2898

JOSE GARZA
Fed. I. D. # 1959
Law Office of Jose Gaza
1913 Fordham
McAllen, Texas 78505
Ph (956) 343-0157

Attorneys for the Plaintiffs

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Plaintiffs' Memorandum In Response to Court's Order has been mailed to the attorney for the Defendants at the following address on this 4 day of February 2003.

Mr. J.W. Dyer
Dyer & Associates
3700 N. 10th Street, Suite 105
Mc Allen, Texas 78501
Tel. (956) 686-6606
Fax (956) 686-6601

By:    _____
        ROLANDO L. RIOS

8