**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern District of Texas
FILED

FEB 0 4 2003

Michael N. Milby
Clerk of Court

| | |
|---|---|
| CITY OF COMBES, TEXAS, OLGA § <br> MONTES, Individually and in her § <br> Capacity as Alderman for the City of § <br> Combes, Texas, ANTONIO § <br> HERNANDEZ and MARIAN § <br> HERNANDEZ, § <br>       Plaintiffs § <br> § <br> vs. § <br> § <br> EAST RIO HONDO WATER SUPPLY § <br> CORPORATION, B. J. SIMPSON, § <br> CHARLES M. KILBOURN, THOMAS § <br> F. SCHMITT, MARIA HOPPER, § <br> GLORIA SCIENCE, SANTOS § <br> CASTILLO, BEN COWAN and § <br> HENRY LIPE, CURRENTLY § <br> ELECTED AND/OR APPOINTED § <br> MEMBERS OF THE BOARD OF § <br> DIRECTORS OF THE EAST RIO § <br> HONDO WATER SUPPLY § <br> CORPORATION, § <br>       Defendants § | CIVIL ACTION NO. B-02-169 |

**DEFENDANTS' MOTION TO DISMISS FOR PLAINTIFFS'**
**FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE,**
**OPPOSED MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AND SUPPORTING MEMORANDUM**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE OF SAID COURT:

NOW COME EAST RIO HONDO WATER SUPPLY CORPORATION, B. J. SIMPSON,

CHARLES M. KILBOURN, THOMAS F. SCHMITT, MARIA HOPPER, SANTOS CASTILLO,

BEN COWAN and HENRY LIPE, CURRENTLY ELECTED AND/OR APPOINTED MEMBERS

OF THE BOARD OF DIRECTORS OF THE EAST RIO HONDO WATER SUPPLY

-1-

CORPORATION (collectively *"East Rio Hondo Water Supply Corporation"* or *"Defendants"*) who ask the Court to dismiss Plaintiffs' claims, or in the alternative, to render summary judgment against Plaintiffs on Plaintiffs' claims under the Voting Rights Act and to render judgment against Plaintiffs on Plaintiffs' other constitutional claims include any action pursuant to 42 U.S.C. § 1983, and in support of this Motion would show as follows:

### Standard of Review

1. Defendant asserts that Plaintiffs have failed to allege facts that support a claim. Failure to state a claim requires dismissal. In the alternative, Defendants assert that Summary judgment is proper in any case where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of genuine issue of material fact by either (1) submitting of summary judgment evidence that negates the existence of a material element of Plaintiff's claim or (2) showing there is no evidence to support an essential element of Plaintiff's claim. Celotex Corp., 477 U.S. at 322 -25, 106 S. Ct. at 2552-54.

### Argument and Summary Judgment Evidence

2. In order to sustain a claim under the Voting Rights Act, Plaintiffs must prove that East Rio Hondo Water Supply Corporation is a "political subdivision" as defined in Section 5 of the Voting Rights Act. The allegation is completely without merit, and Plaintiffs cannot raise a material fact issue on this element. Accordingly, Defendants are entitled to summary judgment on this claim as a matter of law. This Motion for Summary Judgment is based on the Affidavit of Brian Macmanus, Director of Water and Wastewater of East Rio Hondo Water Supply Corporation, attached hereto as **Exhibit "A"** which states the following:

-2-

- East Rio Hondo Water Supply Corporation is a non-profit water supply corporation which is organized and operates under its bylaws and complies with the provisions of Chapter 67, Texas Water Code (formerly Article 1434a, Rev.Civ.Stat.Tex.) and the general provisions of the Texas Non-Profit Corporation Act, Article 1396-1.01, et seq., Rev.Civ.Stat.Tex. East Rio Hondo Water Supply Corporation is a "retail public utility" pursuant to § 13.002, Texas Water Code which defines "retail public utility" as follows:

  > "'Retail public utility means' means any person, corporation, public utility, water supply or sewer service corporation, municipality, political subdivision or agency operating, maintaining, or controlling in this state facilities for providing potable water, service or sewer service or both, for compensation."

- East Rio Hondo Water Supply Corporation meets the definition of water supply corporation set forth in § 13.002 (24) of the Texas Water Code.

- East Rio Hondo Water Supply Corporation has adopted bylaws and is required to operate in accordance with its bylaws which insure that it is member-owned and member-controlled. A true and correct copy of East Rio Hondo Water Supply Corporation's bylaws is attached as **Exhibit "1"** to the Affidavit.

- East Rio Hondo Water Supply Corporation is governed by a Board of Directors which, pursuant to its bylaws and Texas Water Code § 67.005 (West 2002), are to be elected by its members.

- The Board of Directors may adopt written procedures for nomination and election of Directors by the Members of the corporation pursuant to its bylaws and Texas Water Code § 67.007 (West 2002).

- The $100.00 fee which Plaintiffs mischaracterize as a poll tax is a refundable membership fee authorized by Texas utility regulations applicable to East Rio Hondo Water Supply Corporation.

- These fees are included in East Rio Hondo Water Supply Corporation's tariff on file with the Texas Commission of Environmental Quality f/k/a Texas Natural Resource Conservation Commission.

- A true and correct copy of East Rio Hondo Water Supply Corporation's tariff is attached hereto as **Exhibit "2"**.

-3-

- East Rio Hondo Water Supply Corporation is governed by its elected Board of Directors. The Board of Directors determines the policies of East Rio Hondo Water Supply Corporation.

- East Rio Hondo Water Supply Corporation is in the business of supplying potable water service within an area of service defined by Texas Natural Resource Conservation Commission Certificate of Convenience and Necessity No. 11552 for water, a copy of which may be found in the official records of the Texas Commission of Environmental Quality f/k/a the Texas Natural Resource Conservation Commission.

- "The United States Department of Agriculture has required that the East Rio Hondo Water Supply Corporation charge the $100.00 membership fee as a condition to the Department extending financial assistance to the Corporation.

- "The United States Department of Agriculture has promulgated recommended bylaws for a Water Supply Corporation receiving financial assistance from the USDA, a true and correct copy of which is attached hereto as **Exhibit "3"** and incorporated herein by reference as if fully copied and set forth at length.

- "East Rio Hondo Water Supply Corporation receives financial assistance from the United States Department of Agriculture.

- Plaintiffs base the entirety of their case on the unproven allegation that East Rio Hondo Water Supply Corporation is a "political subdivision" as defined in Section 5 of the Voting Rights Act. The allegation is completely without merit.

- East Rio Hondo Water Supply Corporation is not a "political subdivision," according to the provisions of the Texas Election Code which defines political subdivision as follows:

  "Political subdivision" means a county, city, or school district or any other governmental entity that:

  (A)  embraces a geographic area with a defined boundary;
  (B)  exists for the purpose of discharging functions of government; and
  (C)  possesses authority for subordinate self-government through officers selected by it".

Tex. Election Code § 1.005 (West 2003).

-4-

- East Rio Hondo Water Supply Corporation is not a county, city, school district or other governmental entity.

- East Rio Hondo Water Supply Corporation does not conduct registration for voting and is not a political entity of any kind.

- East Rio Hondo Water Supply Corporation is a non-profit water supply corporation which is organized and operates under the provisions of Chapter 67, Texas Water Code (formerly Article 1434a, Rev.Civ.Stat.Tex.) and the general provisions of the Texas Non-Profit Corporation Act, Article 1396-1.01, et seq., Rev.Civ.Stat.Tex

- East Rio Hondo Water Supply Corporation is defined under Texas law to be a "political subdivision" for the limited purpose of certain specific statutory schemes, such as the water financing activities of the Texas Water Development Board under Chapters 15-17 of the Texas Water Code. See, Tex. Water Code §§ 15.001(5); 16.001(7), and 17.001(6) (West 2000). Note that each of these statutes limit use of the definition to "in this chapter". Tex. Water Code §§ 15.001, 16.001 and 17.001, (West 2000).

- East Rio Hondo Water Supply Corporation has applied to receive financing from the Texas Water Development Board.

- By expressly including non-profit water supply corporations in the definitions of "political subdivision" the legislature enabled them to participate in particular water development programs.

- East Rio Hondo Water Supply Corporation does not conduct public elections, elect public officials and has no power to assess and collect taxes.

- East Rio Hondo Water Supply Corporation is not a governmental unit under the Texas Tort Claims Act. Tex.Civ.Prac. & Rem. Code § 101.001 (West 2003) (Water Supply Corporation not included in definition of political subdivision).

- East Rio Hondo Water Supply Corporation is not exempt from ad valorem taxation pursuant to § 11.11 of the Texas Property Tax Code which exempts property owned by the State of Texas or a political subdivision.

- Prior to enactment of Section 11.30 of the Property Tax Code, which exempts certain property operated by water supply corporations, water supply corporations enjoyed no exemption from ad valorem taxation.

- As an entity which is a non-profit corporation, operating as a retail public utility, which is not political, which has no power to assess or collect taxes, and which is not

subject to the Texas Election Code, there is no support for a conclusion that East Rio Hondo Water Supply Corporation is a "political subdivision" subject to the terms of the Voting Rights Act.

- East Rio Hondo Water Supply Corporation consists of a nine-member Board; six (6) are male and three (3) are female, of which three of its members are Hispanic.

- East Rio Hondo Water Supply Corporation Certificate of Incorporation., a true and correct copy attached as **Exhibit "4"** to the Affidavit.

Defendants incorporate herein the matters set forth in the Affidavit as if fully copied and set forth at length.

3. "Political Subdivision" as defined in the Voting Rights Act refers "to any county or parish, except that where registration for voting is not conducted under the supervision of a county or parish, the term shall include any other subdivision of a State which conducts registration for voting". 28 CFR § 51.2. East Rio Hondo Water Supply Corporation does not meet this definition. East Rio Hondo Water Supply Corporation is not a "political subdivision" according to the provisions of the Texas Election Code. Section 1.005 of the Texas Election Code, defines political subdivision as follows:

> "Political subdivision" means a county, city, or school district or any other governmental entity that:
>
> (A) embraces a geographic area with a defined boundary;
> (B) exists for the purpose of discharging functions of government; and
> (C) possesses authority for subordinate self-government through officers selected by it.

Tex. Election Code § 1.005 (West 2003). East Rio Hondo Water Supply Corporation is not a county, city, school district or other governmental entity. It does not conduct registration for voting and is not a political entity of any kind. East Rio Hondo Water Supply Corporation is a non-profit water supply corporation which is organized and operates under the provisions of Chapter 67, Texas

Water Code (formerly Article 1434a, Rev.Civ.Stat.Tex.) and the general provisions of the Texas

Non-Profit Corporation Act, Article 1396-1.01, et seq., Rev.Civ.Stat.Tex.  East Rio Hondo Water

Supply Corporation is a "retail public utility" pursuant to § 13.002, Texas Water Code which defines

"retail public utility" as follows:

> "'Retail public utility means' means any person, corporation, public utility, water
> supply or sewer service corporation, municipality, political subdivision or agency
> operating, maintaining, or controlling in this state facilities for providing potable
> water, service or sewer service or both, for compensation."

East Rio Hondo Water Supply Corporation is governed by a Board of Directors elected by its

members.  Tex.Water Code § 67.005 (West 2002).  The Board of Directors adopts written

procedures for nomination and election of its Directors by the Members of the corporation.

Tex.Water Code § 67.007 (West 2002). The $100.00 fee which Plaintiffs mischaracterize as a poll

tax is a membership fee authorized by Texas utility regulations applicable to East Rio Hondo Water

Supply Corporation.  Pursuant to 30 TAC § 291.3(23) a member of a water supply corporation is

defined as

> "A person who holds a membership in a water supply or sewer service corporation
> and who is a record owner of a fee simple title to property in an area served by a
> water supply or sewer service corporation, or a person who is granted a membership
> and who either currently receives or will be eligible to receive water or sewer utility
> service from the corporation.  In determining member control of a water supply or
> sewer service corporation, a person is entitled to only one vote regardless of the
> number of memberships the person owns."

The membership fee is defined as

> "A fee assessed each water supply or sewer service corporation service applicant
> which entitles the applicant to one connection to the water or sewer main of the
> corporation.  The amount of the fee is generally defined in the corporation's bylaws
> and payment of the fee provides for issuance of one membership certificate in the
> name of the applicant, for which certain rights, privileges, and obligations are
> allowed pursuant to said bylaws. For purposes of Texas Water Code, § 13.043(g),

-7-

> a membership fee is a fee not exceeding approximately 12 times the monthly base rate for water or sewer service or an amount that does not include any materials, labor, or services required for or provided by the installation of a metering device for the delivery of service, capital recovery, extension fees, buy-in fees, impact fees, or contributions in aid of construction."

30 TAC § 291.3 (23)(24). These fees are included in East Rio Hondo Water Supply Corporation's tariff on file with the Texas Commission of Environmental Quality f/k/a Texas Natural Resource Conservation Commission.

4. Non-profit water supply corporations are defined under Texas law to be a "political subdivision" for the limited purpose of certain specific statutory schemes, such as the water financing activities of the Texas Water Development Board under Chapters 15-17 of the Texas Water Code. See, Tex. Water Code §§ 15.001(5); 16.001(7), and 17.001(6) (West 2000). Note that each of these statutes limit use of the definition to "in this chapter". Tex. Water Code §§ 15.001, 16.001 and 17.001, (West 2000). The rationale for including water supply corporations within the definition of "political subdivision" for purposes of these statutory schemes is explained in a Letter Opinion of the Texas Attorney General who, in answering questions of jurisdiction under the Texas Antiquities Code, stated that "a non-profit water supply corporation created pursuant to that statute [Article 1434a, V.T.C.S., now Chapter 67, Water Code] is not a political subdivision or a municipal or governmental agency. Letter Opinion No. 95-011 (March 17, 1995), attached hereto as **"Exhibit "B"**. By expressly including non-profit water supply corporations in the definitions of "political subdivision" the legislature enabled them to participate in particular water development programs. See generally Tex.Const.Art. III § 49-d-5 (authorizing legislature to extend to water supply corporations benefits of water development programs established by various other constitutional provisions). However, the use of a specialized definition of "political subdivision" in particular

-8-

statutes does not change the meaning of that term elsewhere. See Gov't Code § 311.011 (common and technical usage of words in statutes). Letter Opinion No. 95-011 (March 17, 1995). Texas courts have consistently interpreted the attributes of political subdivisions to include; geographical area and boundaries, public elections, public officials and the power to assess and collect taxes. Monsanto v. Cornerstone Mun. Utility Dist., 865 S.W.2d 937, 940 (Tex. 1993). The use of the term "political subdivision" to include non-profit water supply corporations must be express, by clear act of the Texas Legislature, it will not be implied. Tarrant County Water Supply Corporation v. Hurst-Euless Bedford Ind. Sch. District, 391 S.W.2d 162 (Tex.Civ.App – Ft. Worth 1965, writ ref'd. n.r.e.). Plaintiffs' attempt to impose the requirements of the Voting Rights Act on a non-profit corporation based solely on definitional language limited to certain financing arrangements is without any legal merit.

5.    Plaintiff further argues that East Rio Hondo Water Supply Corporation is a political subdivision pursuant to the Act because it is subject to the provisions of the Texas Open Meetings Act and Texas Open Records Act. Tex. Gov't Code § 551.00 et. seq. and § 552.001 et. seq. (West 2003). Plaintiffs neglect to note that under § 551.001 of the Open Meetings Act, all non-profit corporations eligible to receive funds under the federal community services block grant program are subject to the Open Meetings and Open Records Acts. Also, note that certain property owner's associations are subject to the Open Records and Open Meetings Acts. These non-profit corporations are subject to these Acts because they elect to become subject to them by accepting federal funds or electing to apply for an ad valorem tax exemption under § 11.30 of the Texas Property Tax Code. These entities are not inherently governmental as alleged by Plaintiffs. Under Plaintiffs' argument all non-profit corporations receiving federal block grants would be subject to

the Voting Rights Act simply by being included in the definition of "governmental body" as used in these Acts. Clearly such a result cannot be upheld by this Court.

6. East Rio Hondo Water Supply Corporation is not a governmental unit under the Texas Tort Claims Act. Tex.Civ.Prac. & Rem. Code § 101.001 (West 2003) (Water Supply Corporation not included in definition of political subdivision). East Rio Hondo Water Supply Corporation is not exempt from ad valorem taxation pursuant to § 11.11 of the Texas Property Tax Code which exempts property owned by the State of Texas or a political subdivision. Prior to enactment of Section 11.30 of the Property Tax Code, which exempts certain property operated by water supply corporations, water supply corporations enjoyed no exemption from ad valorem taxation. North Alamo Water Supply Corporation v. Willacy County, 804 S.W.2d 894 (Tex. 1991) (water supply corporation not entitled to exemption from taxation as a charity). See also Leander Indep. School Dist. v. Cedar Park Water Supply Corp., 479 S.W.2d 908 (Tex. 1972) (water supply corporation not entitled to tax exemption pursuant to constitutional provision which provided exemption for public property used for public purposes; Private property of a water supply corporation did not meet constitutional standards even if property was used for public purposes).

7. As an entity which is a non-profit corporation, operating as a retail public utility, which is not political, which has no power to assess or collect taxes, and which is not subject to the Texas Election Code, there is no support for a conclusion that East Rio Hondo Water Supply Corporation is a "political subdivision" subject to the terms of the Voting Rights Act.

8. East Rio Hondo Water Supply Corporation is not a "governmental entity". Defendants incorrectly assert that East Rio Hondo Water Supply Corporation falls within the definition of "political subdivision" as set forth in the Texas Election Code 1.005(13) which states:

-10-

"Political Subdivision" means a county, city, or school district or any other governmental entity that:

(A) embraces a geographic area with a defined boundary;
(B) exists for the purpose of discharging functions of government; and
(C) possesses authority for subordinate self-government through officers selected by it.

In order for East Rio Hondo Water Supply Corporation to be considered a "political subdivision" pursuant to this statute, it must be a "governmental entity" and meet each of the three requirements set out in the statute. East Rio Hondo Water Supply Corporation is not a "governmental entity" because it was not created by the State nor governed by the State. A "Water Supply Corporation" is not created through power of the State but by private individuals who make an application to the secretary of state "in the same manner as provided by law for an application for a private corporation. Texas Water Code 67.003. A Water Supply Corporation does not require Constitutional/State authority for its existence because it is a private entity. **Other entities**, which are not Water Supply Corporations and which are regulated by the Texas Water Code are **specifically created by the State** and therefore are "governmental entities", i.e., "public entities" and not private entities. The following are statutes allowing "public entity" creation:

Chapter 51 - Water Control and Improvement Districts
51.011 (Creation of District) A water control and improvement district may be created under and subject to the authority, conditions, and restrictions of either Article III, Section 52, of the Texas Constitution, or Article XVI, Section 59, of the Texas Constitution.

Chapter 54 - Municipal Utility Districts
54.011 (Creation of District) A municipal utility district may be created under and subject to the authority, conditions, and restrictions of Article XVI, Section 59, of the Texas Constitution.

Chapter 55 - Water Improvement Districts
55.021 (Creation of District) A water improvement district may be created in the manner prescribed by this subchapter, either under and subject to the limitations of Article III, Section 52, of the Texas Constitution, or under Article XVI, Section 59, of the Texas Constitution.

-11-

Chapter 56 - Drainage Districts
56.011 - (Creation of District) A drainage district may be created in the manner prescribed by this subchapter, either under and subject to the limitations of Article III, Section 52, of the Texas Constitution, or under Article XFI, Section 59, of the Texas Constitution.

Chapter 57 - Levee Improvement Districts
57.011 (Creation) A levee improvement district may be created in the manner prescribed by this chapter under Article XVI, Section 59, of the Texas Constitution.

Chapter 58 - Irrigation Districts
58.011 (Creation of District) An irrigation district may be created under and subject to the authority, conditions, and restrictions of either Article III, Section 52, of the Texas Constitution, or Article XVI, Section 59, of the Texas Constitution.

The statute referring to the formation of a water supply corporation is as follows:

Chapter 67 – Nonprofit Water Supply or Sewer Service Corporations
67.003 (Creation of Corporation)

    (a)    Three or more individuals who are citizens of this state may form a corporation by making an application to the secretary of state in the same manner as provided by law for an application for a private corporation;

    (b)    The application for charter must include the number of directors and the name of each director; and

    (c)    The name designated for the corporation must include the words "Water Supply Corporation."

Since East Rio Hondo Water Supply Corporation is not created pursuant to the State's constitutional power, it is not a governmental/public entity . Therefore it is not a "political subdivision" created by the State of Texas and is not subject to the Voting Rights Act.  Plaintiffs have failed to state a cause of action under the Voting Rights Act because Plaintiffs have failed to set forth facts asserting that East Rio Hondo Water Supply Corporation is a "governmental entity". Plaintiffs Reply Brief only refers to public entities created with constitutional/State power and not to private corporations and therefore said cases are not on point.

9. East Rio Hondo Water Supply Corporation does not embrace a geographic area with a defined boundary. Section (A) of the Texas Election Code requires that a "political subdivision" embrace a geographic area with a defined boundary. East Rio Hondo Water Supply Corporation is a private corporation with a service area approved by the State. Its boundaries are not created by any Constitutional authority creating the entity of "East Rio Hondo Water Supply Corporation". Plaintiffs have failed to state a cause of action under the Voting Rights Act because Plaintiffs have failed to allege facts that assert East Rio Hondo Water Supply Corporation embraces a geographic area with a defined boundary.

10. East Rio Hondo Water Supply Corporation does not exist for the purpose of discharging functions of government. Section (B) of the Texas Election Code requires that a "political subdivision" exist for the purpose of discharging functions of government.  Defendants have contested that East Rio Hondo Water Supply Corporation performs a government function and maintain that it is a private corporation. A private water supply corporation is not a governmental agency. Tarrant County Water Supply Corporation v. Hurst-Euless-Bedford Independent School District, 391 S.W.2d 162 (Tex.Civ.App.-- Ft. Worth 1965, writ ref'd n.r.e.). In addition, Plaintiffs reliance on current statutory provisions which list "water supply corporation" along with other entities under "political subdivisions" is misplaced. The nature of those sections are such that the term "political subdivision" was used as a matter of convenience in listing various types of entities rather than as a matter of definition. Plaintiffs have failed to allege any fact asserting that East Rio Hondo Water Supply Corporation performs a function of government. Plaintiffs have failed to state a claim for enforcement of the Voting Rights Act because Plaintiffs have failed to allege facts that assert East Rio Hondo Water Supply Corporation exists for the purpose of discharging functions of

-13-

government and failed to allege any facts asserting that East Rio Hondo Water Supply Corporation does perform a function of government.

11. East Rio Hondo Water Supply Corporation does not posses authority for subordinate self-government through officers selected by it. Section (C) of the Texas Election Code requires that a "political subdivision" possesses authority for subordinate self-government through officers selected by it. Federal rights as asserted by plaintiffs are only available when there has been a state "public" actor. The election in the present case is one established by the by-laws of East Rio Hondo Water Supply Corporation, a private corporation, and not an election prescribed by state statute. "A public office cannot exist without authority of law. Offices are created by law, and none can exist except by its sanction." Tex.Jur III, Public Officers and Employees, Section 20. The election for offices in the present case do not involve elections for a public office created by the Constitution of Texas or any state statute. Section 49 of the Water Code contains provisions related to elections in Subchapter D. (49.101 - 49.108). In 49.001, definitions are provided separately for "District" (1) and "Water supply corporation" (5). The provisions in Section 49 related to elections pertain only to "Districts" and not to "Water Supply Corporations". Other provisions in Section 49, such as 49.218 (Acquisition of Property) and 49.220 (Right to Use Existing Rights of Way) specifically state that the provision applies to "Districts" and "Water supply corporations". The "election" portion of Section 49 applies only to the specific entity identified, "District", and does not apply to an entity not specifically identified, such as a "water supply corporation". East Rio Hondo Water Supply Corporation's elections are for a private office being conducted pursuant to its by-laws. Nonpublic officials are not covered by Section 5 of the Voting Rights Act, 1973c. Trevino v. Pastrick, 573 F.Supp. 806. (Court upheld denial of request for preliminary injunction on election

-14-

of nonpublic office). Since East Rio Hondo Water Supply Corporation's election will not determine any public office, there can be no claim of deprivation of Federal rights. Plaintiffs have failed to allege a cause of action because they have failed to allege that a public office was being determined by the election and Plaintiffs have failed to allege facts to support an assertion that the contested election involved any public office.

12. <u>Preliminary Injunctive Relief,</u> Plaintiffs have failed to establish the basic requirements for a preliminary injunction. Plaintiffs have failed to allege facts that an irreparable injury or immediate harm will occur if the election proceeds. Plaintiffs have not alleged that a citizen has in fact been denied the right to vote while the current by-laws have been in effect. Plaintiffs have not alleged that a person previously allowed to vote under the "old" by-laws will now be precluded from voting pursuant to the current by-laws. The Plaintiffs have not alleged any fact to show that the current election system would have an impact on Hispanic participation. In order to prevail on a request for a preliminary injunction, the Plaintiffs must prove the following four elements:

1) a substantial likelihood that plaintiff will prevail on the merits;

2) a substantial threat that Plaintiff will suffer irreparable injury if the injunction is not granted;

3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant; and

4) the granting the preliminary injunction will not disserve the public interest.

<u>Chisom v. Roemer</u> 853, F2d 1186, reh den., en banc (CA5 La 857 F2d 1473), 1988.

The balance of equities given the particular circumstances of this case does not support issuance of a preliminary injunction. The complaint was filed in September yet the Plaintiffs waited until

December to file their request for injunctive relief for an election to be held in February. The voting changes are not so clearly subject to Section 5 that East Rio Hondo Water Supply Corporation's failure to submit the by-laws for approval constitute deliberate defiance of the Act, especially when the applicability of the Act has not been determined by the Court. Even an established violation of Section 2 of the Voting Rights Act does not automatically constitute irreparable injury. Chisom v. Roemer 853 F2d 1186, reh den., en banc (CA5 La 857 F2d 1473). The court in Chisom vacated the preliminary injunction of an election and stated that the Court was in full accord with the teachings of the Supreme Court in Reynolds v. Sims, 377 U.S. 533, 555, 84 S.Ct. 1362, 1378, 12 L.Ed. 2d 506 (1964) that

> "the right to vote freely for the candidate of one's choice is of the essence of a democratic society and any restrictions on that right strike at the heart of representative government. And the right of suffrage can be denied by a debasement or dilution of the weight of a citizen's vote just as effectively as by wholly prohibiting the free exercise". In addition, the Chisom court stated, "...we agree with the commentators who suggest that 'only when the threatened harm would impair the court's ability to grant effective remedy is there really a need for preliminary relief'. Wright & Miller, Federal Practice and Procedure Section 2948 at 431-34 (1973). "

Plaintiffs have not plead facts to support a need for preliminary relief that would justify the impairment of voting privileges held by the individual members of East Rio Hondo Water Supply Corporation.  Plaintiffs have failed to allege facts that support the granting of a preliminary injunction. The equitable relief of such action is not appropriate under the facts alleged in this case.

13. Sec. 2 Voting Rights Act. In determining the applicable tests to be applied in this case for consideration of Sec. 2 of the Voting Rights Act, one analyzes the specific "groups" that are involved such as: 1) majority/minority population; and 2) majority/minority registered voters. Plaintiffs have alleged that Hispanics are a majority population in Cameron County and that

-16-

Hispanics are a minority number on East Rio Hondo Water Supply Corporation's Board.  Since

Hispanics are a "minority" group, then cases examining if a minority's vote can be diluted when it

is the majority population should be examined.  In <u>Salas v. Southwest Texas Junior College District</u>,

964 F.2d 1542, (5th Cir.1992) the Court diligently examined the facts within the framework of

applicable "tests" and concluded the "district court's ultimate finding that the cause of the Hispanic

voters' lack of electoral success is failure to take advantage of political opportunity, rather that a

violation of Section 2, is not clearly erroneous."  In a Section 2(a) violation, plaintiffs must show

> "that the political processes leading to nomination or election...are not equally open
> to participation by members of the {the protected class} in that its members have less
> opportunity than other members of the electorate to participate in the political process
> and to elect representatives of their choice......Provided that nothing in this section
> establishes a right to have members of a protected class elected members equal to
> their proportion in the population."

The court in <u>Salas</u> stated that,

> "in a multimember or at-large challenge where the protected class is also the
> registered voter majority, the 'totality of circumstances' analysis becomes even more
> significant.  That analysis consists of an application of the earlier referenced
> <u>Zimmer</u>, or Senate Report, factors.  They include factors adversely affecting the
> protected class' right to participate in the election process, such as discrimination,
> and its effects in areas such as education, health, and employment; voting practices
> or procedures, and prior election success."

Other than East Rio Hondo Water Supply Corporation's request for payment of a membership fee,

Plaintiffs have failed to allege any  facts to support a claim under Sec. 2.   The court must then

determine whether the alleged vote dilution is attributable to the challenged election practice - i.e.

requiring membership fees.  In order to make out a Section 2 claim against East Rio Hondo Water

Supply Corporation, Plaintiffs must establish that election procedures results in discrimination "on

account of race or color."  The Fifth Circuit rejected a Section 2 challenge to an at large voting

system based exclusively on a statistical difference between Hispanic and white voter turnout. <u>Salas v. Southwest Texas Junior College Dist.</u>, 964 F.2d 1542, 1556 (5th Cir. 1992). A bare statistical showing of disproportionate impact on a racial minority does not satisfy the Section 2 "result" inquiry. Instead, section 2 plaintiffs must show a causal connection between the challenged voting practice and a prohibited discriminatory result. Only a voting practice that results in discrimination gives rise to Section 2 liability. Plaintiffs have failed to allege that the requirement of membership fees to be paid on a one time basis results in a discriminatory election process. Plaintiffs have only alleged statistical information, unsupported by any evidence, and this is insufficient for a claim under Section 2. After a discussion of <u>Gringles</u>' three factors which involved a situation where the minority group was the majority population, the Court in <u>Salas</u> stated "...it is the plaintiff's burden, in order to justify relief, to 'prove that the use of a multimember electoral (process complained of) operated to minimize or cancel out their ability to elect their preferred candidates." Plaintiffs have the burden of proof to demonstrate that the membership fee (process complained of) operates to minimize or cancel out their ability to elect their preferred candidates. Plaintiffs' current pleadings do not allege facts to support Plaintiffs' burden and therefore, Plaintiffs have failed to state a claim for which relief is available pursuant to Sec. 2 of the Voting Rights Act.

14.  14th Amendment/Equal Protection.  The court in <u>Terrazas v. Clements</u>, (ND Tex) 581 F. Supp. 1329, discussed the similarities and differences of Sec. 2 claims and constitutional claims related to equal protection and stated the following:

> "Section 2 of the Voting Rights Act, 42 USCA Section 1973, as amended in 1982, and the fourteenth amendment to the United States Constitution offer related remedies for minority groups that have suffered interference with their right to vote as a result of the voting practices or procedures in their electoral system. To obtain either remedy, a plaintiff must show that, in the totality of circumstances, the

-18-

'political processes leading to nomination and election were not equally open to participation by the group in question— that its members had less opportunity than did other residents in the district to participate in the political processes and to elect legislators of their choice. Under neither test does the failure of a minority group to translate its voting strength into proportional representation suffice to establish a lack of access."

The court in Terrazas further stated, "Despite the common purpose and evidentiary focus, section 2 of the Voting Rights Act demands a less exacting burden of proof. To find that an electoral system violates the constitution, a court must determine that the discriminatory impact of the system derived from the intent to bring about the result. Terrazas v. Clements (ND Tex) 581 F. Supp. 1329. Therefore, to establish an equal protection violation, a plaintiff alleging deprivation of voting rights must show discriminatory intent as well as disparate effect. Plaintiffs have failed to allege any facts regarding discriminatory intent. Plaintiffs have failed to state a claim for which relief may be granted for constitutional violations of equal protection. In addition, a defendant in a claim arising out of constitutional infringement on the 14th Amendment/Equal Protection must be acting under "color of law". Defendant East Rio Hondo Water Supply Corporation denies that it is a state actor (for the reason stated previously) and offers additional argument on this issue in the subsequent section concerning 42 U.S.C. 1983 actions. Since plaintiffs have failed to allege facts to support that defendant Rio Hondo is a state actor, plaintiffs have failed to state facts to support a claim arising under the 14[th] amendment.

15. 15th Amendment. Plaintiffs have not asserted that the Fifteenth Amendment imposes a standard different or more liberal than the Fourteenth Amendment or the Voting Rights Act. (See discussion in Terrazas v. Clements. ) Applying the same standard as the Fourteenth Amendment, Plaintiffs have failed to allege any facts regarding a discriminatory intent. Plaintiffs have failed to

allege facts to support a claim for which relief may be granted for claims arising under the Fifteenth Amendment.

16.   19th Amendment.   Plaintiffs' only assertion of a claim under the Nineteenth Amendment is one reference to it in Plaintiffs' "Complaint". Plaintiffs have not asserted any facts that specifically refer to a violation of the Nineteenth Amendment therefore this claim is totally unsupported and should be dismissed.

17. 42 U.S.C. 1983 Action. Section 1983 is an action for deprivation of right and states as follows:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights,2 privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law...."

A claim for relief under 42 U.S.C. 1983 must contain two elements: 1) that plaintiffs have been deprived of a right secured by the Constitution of the United States; and 2) that the defendant acted under color of law. Wong. v. Stripling, 881 F.2d 200 (5th Cir. 1989). "The Supreme Court has explained : "In Cases under 1983, 'under color' of law has consistently been treated as the same thing as the 'state action' required under the Fourteenth Amendment. McCormack v. Natl. Collegiate Athletic Assn, 845 F.2d 1338(5th Cir. 1988), Rendell-Baker v. Kohn, 457 U.S. 830, 838, 102 S. Ct. 2764, 2769-70, 73 L.Ed. 2d 418 (1982). The ultimate issue in determining whether a person is subject to suit under 1983 is the same question posed in cases arising under the fourteenth amendment: is the alleged infringement of federal rights "fairly attributable to the State. Rendell-Baker v. Kohn. The issue addressed in this motion is, if there were infringements on Plaintiffs' federal rights, are East Rio Hondo Water Supply Corporation's alleged actions/conduct state action.

-20-

Plaintiffs have failed to allege or otherwise assert facts that East Rio Hondo Water Supply Corporation was acting "under color of law". East Rio Hondo Water Supply Corporation has asserted and provided facts to establish that it is a private non-profit corporation. As a private entity its conduct/action do not give rise to an action under the Fourteenth Amendment. <u>Jackson v. Metropolitan Edison Co.</u>, 419 U.S. 345 (1974). East Rio Hondo Water Supply Corporation is regulated by the State but regulation does not transform actions by Defendant to actions of the State. As the Supreme Court stated in <u>Jackson</u>, "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself."  The <u>Jackson</u> Court further stated,

> "Doctors, optometrists, lawyers, Metropolitan, and Nebbia's upstate New York grocery selling a quart of milk are all in regulated businesses, providing arguably essential goods and services, affected with a public interest.  We do not believe that such a status converts their every action, absent more, into that of the State."

In the present case, the evidence establishes that East Rio Hondo Water Supply Corporation is a regulated, privately owned utility and this evidence is insufficient to connect East Rio Hondo Water Supply Corporation with activity "under color of law" for purposes of the Fourteenth Amendment. In order to prevail on a 1983 action, Plaintiff must prove that Defendants were acting under color of state.  The plaintiffs have failed to allege any facts to support that Defendant was acting under color of state law.  The Plaintiffs have failed to allege a cause of action pursuant to a 1983 action for which relief may be granted.

18. <u>Membership Fee.</u> Plaintiffs have wrongly asserted that the membership fee of a one time payment of $100.00 is a poll tax. Rio Hondo is a private corporation and as such its members have a constitutional right to assemble pursuant to the U. S. Constitution's First and Fourteenth

-21-

Amendments. Pursuant to 42 USCS Section 1973h(b) the Attorney General is authorized to bring actions related to "poll tax" violations. The Attorney General is not a party to this case and therefore no relief on the basis of a "poll tax" violation can be ordered.

19. <u>Private Corporation/Not Political Subdivision.</u>  Plaintiffs have wholly failed to plead facts to support a finding that East Rio Hondo Water Supply Corporation is a "political subdivision" subject to the Voting Rights Act, therefore, Plaintiffs' claims arising out of the Voting Rights Act should be dismissed. In the alternative, East Rio Hondo Water Supply Corporation has established, by competent summary judgment evidence, that it is a private corporation, thereby negating the existence of a material element of Plaintiffs' claim arising under the Voting Rights Act, and therefore, summary judgment should be granted in favor of the Defendants.

20. <u>Private Corporation/Not State Actor</u>.  Plaintiffs have wholly failed to plead facts to support a finding that East Rio Hondo Water Supply Corporation is a state actor or was acting under color of law, and therefore, Plaintiffs' claims asserted pursuant to Federal Constitutional Amendments, and 42 U.S.C. 1983 should be dismissed. In the alternative, East Rio Hondo Water Supply Corporation has established by competent summary judgment evidence that it is a private corporation, thereby negating the existence of a material element of Plaintiffs' claims asserted pursuant to Federal Constitutional Amendments and 42 U.S.C. 1983, and therefore, summary judgment should be granted in favor of Defendants.

## Conclusion

21. For these reasons, Defendants ask the Court to grant this Motion and dismiss Plaintiffs' claims, or in the alternative, render a summary judgment in this case that Plaintiffs take nothing on their claims and granting Defendants all relief requested in this Motion.

Respectfully submitted,

J. W. Dyer, Attorney in Charge
State Bar No. 06316020
Federal I.D. No. 8644
Dyer & Associates
3700 N. 10th St., Ste. 105
McAllen, TX 78501
Telephone: (956) 686-6606
Telecopier: (956) 686-6601

**ATTORNEY FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing **Defendants' Motion to Dismiss for Plaintiffs' Failure to State a Claim, or in the Alternative, Opposed Motion for Partial Summary Judgment and Supporting Memorandum** has been served on the 4th day of February, 2003, to the following parties in the manner indicated below:

Mr. Rolando L. Rios                        *Via CMRRR No. 7002 1000 0004 8558 3504*
Law Offices of Rolando L. Rios
The Milam Building
115 E. Travis, Ste. 1645
San Antonio, TX 78205

Mr. Michael Milby                          *Via Hand Delivery*
U. S. District Clerk
Brownsville Division
600 E. Harrison St.
Brownsville, TX 78520-7114

J. W. Dyer

mtc:motions10:erhwscmtn2dismiss

-23-

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CITY OF COMBES, TEXAS, OLGA MONTES, Individually and in her Capacity as Alderman for the City of Combes, Texas, ANTONIO HERNANDEZ and MARIAN HERNANDEZ,<br>     Plaintiffs<br><br>vs.<br><br>EAST RIO HONDO WATER SUPPLY CORPORATION, B. J. SIMPSON, CHARLES M. KILBOURN, THOMAS F. SCHMITT, MARIA HOPPER, GLORIA SCIENCE, SANTOS CASTILLO, BEN COWAN and HENRY LIPE, CURRENTLY ELECTED AND/OR APPOINTED MEMBERS OF THE BOARD OF DIRECTORS OF THE EAST RIO HONDO WATER SUPPLY CORPORATION,<br>     Defendants | § § § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. B-02-169 |

## ORDER SETTING HEARING DATE

IT IS ORDERED that the hearing date on *Defendants' Motion to Dismiss for Plaintiffs'*

*Failure to State a Claim, or in the Alternative Opposed Motion for Partial Summary Judgment and*

*Supporting Memorandum* be and the same is set for _____ o'clock __.m. on the _____ day of __

_____, 2003, in the Federal Courthouse for the Southern District of Texas, Brownsville

Division, in Brownsville, Cameron County, Texas.

SIGNED this _____ day of _____, 2003.

_____
U. S. DISTRICT JUDGE PRESIDING

Copy to:     J. W. Dyer, Dyer & Associates, 3700 N. 10th, Ste. 105, McAllen, TX 78501
                  Rolando L. Rios, The Milam Bldg., 115 E. Travis, Ste. 1645, San Antonio, TX 78205

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| CITY OF COMBES, TEXAS, OLGA | § | |
| MONTES, Individually and in her | § | |
| Capacity as Alderman for the City of | § | |
| Combes, Texas, ANTONIO | § | |
| HERNANDEZ and MARIAN | § | |
| HERNANDEZ, | § | CIVIL ACTION NO. B-02-169 |
|     Plaintiffs | § | |
| | § | |
| vs. | § | |
| | § | |
| EAST RIO HONDO WATER SUPPLY | § | |
| CORPORATION, B. J. SIMPSON, | § | |
| CHARLES M. KILBOURN, THOMAS | § | |
| F. SCHMITT, MARIA HOPPER, | § | |
| GLORIA SCIENCE, SANTOS | § | |
| CASTILLO, BEN COWAN and | § | |
| HENRY LIPE, CURRENTLY | § | |
| ELECTED AND/OR APPOINTED | § | |
| MEMBERS OF THE BOARD OF | § | |
| DIRECTORS OF THE EAST RIO | § | |
| HONDO WATER SUPPLY | § | |
| CORPORATION, | § | |
|     Defendants | § | |

## ORDER

On the ____ day of _____, 2003, came to be heard Defendants' Motion to Dismiss for Plaintiffs' Failure to State a Claim, or in the Alternative, Opposed Motion for Partial Summary Judgment and Supporting Memorandum, and the Court, finding that good cause has been shown;

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that Defendants' Motion to Dismiss for Plaintiffs' Failure to State a Claim, or in the Alternative Opposed Motion for Partial Summary Judgment and Supporting Memorandum be, and is hereby **GRANTED**, and that Plaintiffs take nothing on their claims.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| CITY OF COMBES, TEXAS, OLGA MONTES, Individually and in her Capacity as Alderman for the City of Combes, Texas, ANTONIO HERNANDEZ and MARIAN HERNANDEZ, <br>     Plaintiffs <br><br> vs. <br><br> EAST RIO HONDO WATER SUPPLY CORPORATION, B. J. SIMPSON, CHARLES M. KILBOURN, THOMAS F. SCHMITT, MARIA HOPPER, GLORIA SCIENCE, SANTOS CASTILLO, BEN COWAN and HENRY LIPE, CURRENTLY ELECTED AND/OR APPOINTED MEMBERS OF THE BOARD OF DIRECTORS OF THE EAST RIO HONDO WATER SUPPLY CORPORATION, <br>     Defendants | § § § § § § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. B-02-169 |

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | **AFFIDAVIT OF BRIAN MACMANUS** |
| COUNTY OF CAMERON | § | |

BEFORE ME, the undersigned authority, on this day personally appeared Brian Macmanus, who being by me duly sworn, upon his oath, deposed and said as follows:

1. "My name is Brian Macmanus. I am over the age of twenty-one years. I have never been convicted of a felony, and I am fully competent to make this Affidavit. I have personal knowledge of the facts stated herein, and they are all true and correct.

**EXHIBIT "A"**

2.  " I am employed by East Rio Hondo Water Supply Corporation as Director of Water and Wastewater. I have been employed by East Rio Hondo Water Supply Corporation since January 2000.

3.  "East Rio Hondo Water Supply Corporation is a non-profit water supply corporation which is organized and operates under its bylaws and complies with the provisions of Chapter 67, Texas Water Code (formerly Article 1434a, Rev.Civ.Stat.Tex.) and the general provisions of the Texas Non-Profit Corporation Act, Article 1396-1.01, et seq., Rev.Civ.Stat. East Rio Hondo Water Supply Corporation is a "retail public utility" pursuant to § 13.002, Texas Water Code which defines "retail public utility' as follows:

> "Retail public utility means" means any person, corporation, public utility, water supply or sewer service corporation, municipality, political subdivision or agency operating, maintaining, or controlling in this state facilities for providing potable water, service or sewer service or both, for compensation."

Water supply corporation is defined in § 13.002 (24) of the Texas Water Code as follows:

> "'Water supply or sewer service corporation' means a nonprofit corporation organized and operating under Chapter 67 that provides potable water service or sewer service for compensation and that has adopted and is operating in accordance with by-laws or articles of incorporation which ensure that it is member-owned and member-controlled. The term does not include a corporation that provides retail water or sewer service to a person who is not a member, except that the corporation may provide retail water or sewer service to a person who is not a member if the person only builds on or develops property to sell to another and the service is provided on an interim basis before the property is sold."

East Rio Hondo Water Supply Corporation meets the definition of water supply corporation set forth in § 13.002 (24) for the Texas Water Code. East Rio Hondo Water Supply Corporation has adopted bylaws and is required to operate in accordance with its bylaws which insure that it is member-owned and member-controlled. A true and correct copy of East Rio Hondo Water Supply Corporation's bylaws is attached as **Exhibit "1"** and is incorporated herein by reference as if fully

copied and set forth at length. East Rio Hondo Water Supply Corporation is governed by a Board

of Directors which, pursuant to its bylaws and in compliance with Texas Water Code § 67.005 (West

2002), are to be elected by its members. The Board of Directors may adopt written procedures for

a nomination and election of Directors by the Members of the corporation pursuant to its bylaws and

Texas Water Code § 67.007 (West 2002). The $100.00 fee which Plaintiffs mischaracterize as a poll

tax is a refundable membership fee authorized by Texas utility regulations applicable to East Rio

Hondo Water Supply Corporation. Pursuant to 30 TAC § 291.3(23) a member of a water supply

corporation is defined as

> "A person who holds a membership in a water supply or sewer service corporation
> and who is a record owner of a fee simple title to property in an area served by a
> water supply or sewer service corporation, or a person who is granted a membership
> and who either currently receives or will be eligible to receive water or sewer utility
> service from the corporation. In determining member control of a water supply or
> sewer service corporation, a person is entitled to only one vote regardless of the
> number of memberships the person owns."

The membership fee is defined as

> "A fee assessed each water supply or sewer service corporation service applicant
> which entitles the applicant to one connection to the water or sewer main of the
> corporation. The amount of the fee is generally defined in the corporation's bylaws
> and payment of the fee provides for issuance of one membership certificate in the
> name of the applicant, for which certain rights, privileges, and obligations are
> allowed pursuant to said bylaws. For purposes of Texas Water Code, § 13.043(g),
> a membership fee is a fee not exceeding approximately 12 times the monthly base
> rate for water or sewer service or an amount that does not include any materials,
> labor, or services required for or provided by the installation of a metering device for
> the delivery of service, capital recovery, extension fees, buy-in fees, impact fees, or
> contributions in aid of construction."

30 TAC § 291.3 (23)(24). These fees are included in East Rio Hondo Water Supply Corporation's

tariff on file with the Texas Commission of Environmental Quality f/k/a Texas Natural Resource

Conservation Commission. A true and correct copy of East Rio Hondo Water Supply Corporation's

tariff is attached hereto as **Exhibit "2"** and is incorporated herein by reference as if fully copied and

set forth at length. East Rio Hondo Water Supply Corporation is governed by its elected Board of Directors. The Board of Directors determines the policies of East Rio Hondo Water Supply Corporation, and I, in turn, implement these policies as Director of Water and Wastewater. As Director of Water and Wastewater, it is among my duties to supervise the application for government grants and loans for construction of East Rio Hondo Water Supply Corporation's water and sewer system and to oversee the administration of the use of the proceeds.

4. "East Rio Hondo Water Supply Corporation is in the business of supplying potable water service within an area of service defined by Texas Commission of Environmental Quality Certificate of Convenience and Necessity No. 11552 for water, a copy of which may be found in the official records of the Texas Commission of Environmental Quality f/k/a Texas Natural Resource Conservation Commission.

5. "The United States Department of Agriculture has required that the East Rio Hondo Water Supply Corporation charge the $100.00 membership fee as a condition to the Department extending financial assistance to the Corporation.

6. "The United States Department of Agriculture has promulgated recommended bylaws for a Water Supply Corporation receiving financial assistance from the USDA, a true and correct copy of which is attached hereto as Exhibit "3" and incorporated herein by reference as if fully copied and set forth at length.

7. "East Rio Hondo Water Supply Corporation receives financial assistance from the United States Department of Agriculture.

8. "Included in my duties as Director of Water and Wastewater for East Rio Hondo Water Supply Corporation is the responsibility to serve as custodian of the records of the Corporation. As custodian, I am familiar with the records of East Rio Hondo Water Supply Corporation, and

**Exhibits "1", "2", "3", and "4"** attached hereto are true and correct copies of the originals maintained by the Corporation.

9. "Plaintiffs base the entirety of their case on the unproven allegation that East Rio Hondo Water Supply Corporation is a "political subdivision" as defined in Section 5 of the Voting Rights Act. The allegation is completely without merit. "Political Subdivision" as defined in the Voting Rights Act refers "to any county or parish, except that where registration for voting is not conducted under the supervision of a county or parish, the term shall include any other subdivision of a State which conducts registration for voting". 28 CFR § 51.2. East Rio Hondo Water Supply Corporation does not meet this definition. East Rio Hondo Water Supply Corporation is not a "political subdivision," according to the provisions of the Texas Election Code. Section 1.005 of the Texas Election Code, defines political subdivision as follows:

> "Political subdivision means a county, city, or school district or any other governmental entity that:
> (A) embraces a geographic area with a defined boundary;
> (B) exists for the purpose of discharging functions of government; and
> (C) possesses authority for subordinate self-government through officers selected by it.

Tex. Election Code § 1.005 (West 2003). East Rio Hondo Water Supply Corporation is not a county, city, school district or other governmental entity. It does not conduct registration for voting and is not a political entity of any kind. East Rio Hondo Water Supply Corporation is a non-profit water supply corporation which is organized and operates under the provisions of Chapter 67, Texas Water Code (formerly Article 1434a, Rev.Civ.Stat.Tex.) and the general provisions of the Texas Non-Profit Corporation Act, Article 1396-1.01, et seq., Rev.Civ.Stat.Tex

10. "East Rio Hondo Water Supply Corporation is defined under Texas law to be a "political subdivision" for the limited purpose of certain specific statutory schemes, such as the water

financing activities of the Texas Water Development Board under Chapters 15-17 of the Texas Water Code. See, Tex. Water Code §§ 15.001(5); 16.001(7), and 17.001(6) (West 2000). Note that each of these statutes limit use of the definition to "in this chapter". Tex. Water Code §§ 15.001, 16.001 and 17.001, (West 2000). East Rio Hondo Water Supply Corporation has applied to receive financing from the Texas Water Development Board. By expressly including non-profit water supply corporations in the definitions of "political subdivision" the legislature enabled them to participate in particular water development programs. East Rio Hondo Water Supply Corporation does not conduct public elections, elect public officials and has no power to assess and collect taxes.

11. "East Rio Hondo Water Supply Corporation is not a governmental unit under the Texas Tort Claims Act. Tex.Civ.Prac. & Rem. Code § 101.001 (West 2003) (Water Supply Corporation not included in definition of political subdivision). East Rio Hondo Water Supply Corporation is not exempt from ad valorem taxation pursuant to § 11.11 of the Texas Property Tax Code which exempts property owned by the State of Texas or a political subdivision. Prior to enactment of Section 11.30 of the Property Tax Code, which exempts certain property operated by water supply corporations, water supply corporations enjoyed no exemption from ad valorem taxation.

12. "As an entity which is a non-profit corporation, operating as a retail public utility, which is not political, which has no power to assess or collect taxes, and which is not subject to the Texas Election Code, there is no support for a conclusion that East Rio Hondo Water Supply Corporation is a "political subdivision" subject to the terms of the Voting Rights Act.

13. "East Rio Hondo Water Supply Corporation consists of a nine-member Board; six (6) are male and three (3) are female, of which three of its members are Hispanic".

14.  A true and correct copy of East Rio Hondo Water Supply Corporation's Certificate of Incorporation is attached hereto as **Exhibit "4"** and is incorporated herein by reference as if fully copied and set forth at length.

FURTHER, AFFIANT SAYETH NOT.

Brian Macmanus, Affiant

SWORN TO AND SUBSCRIBED BEFORE ME by the said Brian Macmanus on this 4ᵗʰ day of February, 2003, to certify which witness my hand and seal of office.



Notary Public in and for the State of Texas

Sofia López
Printed Name of Notary Public

SOFIA LOPEZ
Notary Public, State of Texas
My Commission Expires
July 26, 2005

<u>BY-LAWS</u>

<u>OF</u>

<u>EAST RIO HONDO WATER SUPPLY CORPORATION</u>

By-laws of East Rio Hondo Water Supply Corporation, having duly been presented to the Board of Directors of said Corporation and duly adopted as follows:

## ARTICLE I

The President shall preside at all members' and directors' meetings. He may, and upon demand of one-third (1/3) of the members shall, call a special meeting of the members or directors, and he may, and shall, upon demand of one-third (1/3) of such directors, call a special meeting of the directors and membership. Such special meeting shall be held upon giving the notice required in Article XII of the by-laws. He shall perform all other duties that usually pertain to the office or are delegated to him by the Board of Directors.

## ARTICLE II

The Vice-President shall, in case of absence or disability of the President, perform the duties of the President.

## ARTICLE III

The Secretary-Treasurer shall have the custody of all the monies and securities of the Corporation. The Secretary-Treasurer shall keep regular books and shall keep minutes of all meetings of Members and Directors. All monies of the Corporation shall be deposited by the Secretary-Treasurer in such depository as shall be selected by the Directors. Checks must be signed by the Secretary-Treasurer and the President or Vice-President, in the absence of the President. The Secretary-Treasurer shall have custody of the seal of the Corporation and affix it as directed hereby or by resolution passed by the Board of Directors or Members. The Board of Directors may appoint an employee as assistant or deputy secretary to assist the Secretary-Treasurer in all official duties pertaining to the office of Secretary.

1



The position of the Secretary-Treasurer and other positions entrusted with receipt and disbursement of funds shall be placed under a fidelity bond in an amount which shall be set from time to time, but not less than once a year, by the Board of Directors. The fidelity bond coverage amount shall approximate the total annual debt service requirements for all FmHA loans and be evidenced by a position fidelity schedule bond as acceptable to the Farmers Home Administration.

## ARTICLE IV

Section 1.  The Board of Directors shall consist of nine (9) Directors, a majority of whom shall constitute a quorum.  Upon issuance of the Charter and annually thereafter on the second Tuesday in February, the Board of Directors shall elect a President, a Vice-president and a Secretary-Treasurer.  The Directors shall be elected by the Members at the Members' regular meeting provided for in Article XI of the By-laws.  The Directors shall be divided into three (3) classes, each class to be as near equal in number as possible.  The terms of the Directors of the first class shall expire at the first annual meeting of the Shareholders after their election, the terms of the Directors of the second class shall expire at the second annual meeting after their election and terms of the Directors of the third class shall expire at the third annual meeting after their election.  At each annual meeting after such classification, the number of Directors equal to the number of the class whose term expires at the time of such meeting shall be elected to hold office until the third succeeding annual meeting.  The Directors shall serve without pay, but may be compensated for actual expenses by a majority vote of Directors.

Upon the death or resignation of a Director, a successor shall be elected by a majority of the existing Directors to serve until the next regular or special Membership meeting at which time the general Membership shall elect a successor for the remaining balance of the previously vacated term.

2

Section 2.  Officers and Directors may be removed from office in the following manner except as otherwise provided in Article V: Any Member, Officer or Director may present charges against a Director or Officer by filing such charges in writing with the Secretary-Treasurer of the Corporation.  If presented by a Member, the charges must be accompanied by a petition signed by a least ten (10) percent of the Members of the Corporation.  Such removal shall be voted on at the next regular or special meeting of the Membership and shall be effective if approved by a vote of 2/3 majority of those voting if a quorum is present.  The Director(s) or Officer(s) against whom such charges have been presented shall be informed in writing, of such charges at least twenty(20) days prior to the meeting, and shall have the opportunity at such meeting to be heard in person or by counsel and to present witnesses; and the person or person presenting such charges shall have the same opportunity.  If the removal of a Director(s) is approved, such action shall also vacate any other office(s) held by the removed Director(s) in the Corporation.  A vacancy in the Board thus created shall immediately be filled by a qualified person other than the removed Director upon a vote of a majority of the Members present and voting at such meeting.  A vacancy in any office thus created shall be filled by the Board of Directors from among their number so constituted after the vacancy in the Board has been filled.

Section 3.  The President of the Board or his designee shall preside at any meeting of the Members convened to consider removal of an Officer or Director as provided under Section 2, unless the President is the subject of charges, in which event the Vice-President shall preside.  In the event both the President and Vice-President are the subject of charges, those Directors who are not the subject of any charges shall appoint one of their number to preside over the meeting.  Any meting convened to consider the removal of an Officer or Director shall be conducted in accord with the procedures prescribed by the Credentials Committee established under the provisions of Article XI.  The fact that President, Vice-

3

President, or any other Officer or Director has been made the subject of charges does not otherwise prevent such Officer from continuing to act in his capacity as an Officer of Director of the Corporation.    Any Director that has been removed under the provisions of this Article shall not be precluded from subsequent election to the position of the Board of Directors.

Section 4.  The Board of Directors shall adopt and maintain of conflict of interest policy designed to promote the business of the Corporation and serve the interests of the Membership.

ARTICLE V

Section 1.  Regular meetings of the Board of Directors shall be held at such time and place as the Board may determine at the next previous regular meeting, and shall include posting of the meeting as required by the Texas Open Meetings Act, ARticle 6353-17, Tex. Rev. Civ. Stat., by furnishing the notice to the County Clerk or clerks of the county or counties in which the corporation provides service, and by posting such notice in a place readily convenient to the public in its administrative office at all time for at least seventy-two (72) hours preceding the scheduled time of the meting.  Such notice shall specify the date, hour, place and subject of each meeting held by the Board of Directors.

Section 2.  Any Director failing to attend two (2) consecutive regular monthly meetings shall be given written notice by the balance of the Board of Directors that failure by said Director to attend a third consecutive monthly meeting, without justifiable cause acceptable to the balance of the Board of Directors, shall give rise to removal of said Director from the Board.  A successor shall be elected by a majority vote of the Directors remaining to serve until the next regular or special Membership meeting, at which time the general membership shall elect a successor for the balance of the term.  If the removal of a Director pursuant to this Section 2 occurs at an annual Membership meeting, then the successor shall be elected by a majority vote of the Membership in attendance at the meeting.

4

Section 3.    The Board of Directors shall provide access for the public, new service applicants, or Members to the regular monthly meetings of the Board of Directors by setting aside a time for hearing of suggestions, proposals, or grievances.    The Board of Directors shall establish reasonable rules for access to such meetings.

Section 4.    The Board of Directors shall ensure that all meetings comply with the requirements of the Open Meetings Act, Article 6252-17, Tex. Rev. Civ. Stat., including any subsequent amendment thereto.    In the vent of any conflict between the provisions of these By-laws and the requirements of the Open Meetings Act, the provisions of the Open Meetings Act shall prevail.

Section 5.    In conducting their duties as members of the Board, each Director (1) shall be entitled to rely, in good faith and with ordinary care, on information, opinions, reports or statements, including financial statements and other financial data, concerning the Corporation or the Corporation's affairs, that have been prepared or presented by one or more Officers or employees of the Corporation; or by legal counsel, public accountants, or other persons retained by the Corporation for the development of professional advice and information falling within such person's professional or expert competence; (2) may believe, in good faith and with ordinary care, that the assets of the Corporation are at least that of their book value; and (3) in determining whether the Corporation has made adequate provision for the discharge of its liabilities and obligations; and may rely in god faith and with ordinary care on the financial statements of, or other information concerning, any person or entity obligated to pay, satisfy or discharge some or all of the Corporations' liabilities or obligations; and may rely in good faith on information, opinions, reports or statements, including financial statements and other financial data, prepared or presented by one or more officers or employees of the Corporation; legal counsel, public accountants, or other persons provided the Director

5

reasonably believes such matters to fall within such person's professional or expert competence, Nevertheless, a Director must disclose any knowledge he or she may have concerning a matter in questions that makes reliance otherwise provided herein to be unwarranted.

## ARTICLE VI

The Corporation shall conduct its business on a non-profit basis, and no dividends shall ever be paid upon the memberships of such Corporation.  All profits arising from the operation of such business shall be annually paid out to the persons who have, during the past year, transacted business with such Corporation, in direct proportion to the amount of business transacted, provided that no such dividends shall ever be paid while any indebtedness of the Corporation remains unpaid.

## ARTICLE VII

The Directors of the Corporation shall establish and maintain, so long as the corporation is indebted to the Government, in an institution insured by the State of Federal Government, or invested in readily marketable securities backed by the full faith and credit to the United States of America, a reserve account separate and apart from other fund accounts of the Corporation.  such deposits shall be made monthly and shall continue until the total amount deposited equals the sum as required by the executed loan resolutions provided, however that after any withdrawals, such deposits shall be resumed until the amount accumulated in the fund is restored to the sum as required by the executed loan resolution.

Withdrawals may be made from this fund only upon prior written approval from Farmers Home Administration.  Approval shall be made only for emergency repairs, obsolescence of equipment, improvements to facility, and for making up any deficiencies in revenue for loan payments.

The Directors shall invest all sums in this fund not required to be expended within the year in which the same are deposited in bonds or other evidence of indebtedness of the United States of America, or in readily marketable securities backed by the full

6

faith and credit of the United States of America.  Securities so purchased shall be deemed at all times to be part of the reserve fund account.

## ARTICLE VIII

Section 1.  Every person (which includes any legal entity) owning or having a legal right to the control, possession or occupancy of property served or which may reasonably be served by the Corporation, shall have the right to become a Member of the Corporation upon payment of the Membership fee hereinafter provided and upon compliance with the Corporation's conditions of water and/or sewer service as provided for in its published charges, rates and conditions of service.  Membership shall not be denied because of the applicant's race, color, creed, citizenship or national origin.  It is the intent of the Corporation to provide service on a nondiscriminatory basis to all persons desiring service to the extent that the capabilities of the system will reasonably permit.

Section 2.  The Membership fee shall be $100.00.  Payment of Membership fee or transfer of Membership shall entitle an applicant to further qualify for one (1) connection to the system or shall entitle a transferee of Membership to continue to qualify for service to an existing connection to the system by meeting the conditions for water and/or sewer as provided in the Corporation's published rates, charges, and conditions of service.  A person may own more than one Membership but each Member shall be entitled to only one vote regardless of the number of Memberships owned. Membership certificates shall be in such form as shall be determined by the Board of Directors.

Section 3.  The Membership fee may be revised by the Board of Directors as the Board may determine to be appropriate.  (In determining the amount of the membership fee, however, the Board shall ensure that the fee is sufficient to establish the potential Member as being legitimately interested in securing water service from the Corporation for such potential Members' own needs.) Furthermore, the Board shall determine and administer such fee in

7

a manner or in an amount which does not unreasonably deny service to financially deprived potential Members. In no event, however, shall the Membership fee exceed an amount equal to the sum of twelve (12) charges of the Corporation's minimum monthly water rate unless previously approved by Farmers Home Administration.

## ARTICLE IX

Where necessary for determining those Members entitled to notice of, or those Members entitled to vote at any meeting or any adjournment thereof, or where necessary to make a determination of Members for any other proper purpose, ownership of Memberships shall be deemed to be vested in those persons who are the record owners of Memberships as evidenced by the Membership transfer book on the 15th day of the month preceding the month of the date upon which the action requiring such determination is to taken. Nothing herein shall preclude the holder of a Membership from mortgaging such Membership, or, upon notification of the Corporation, preclude the holder of such mortgages from exercising legal rights pursuant to such mortgages upon proper notice to the Corporation.

## ARTICLE X

Section 1.    In order to ensure that business done by the Corporation shall continue within the capacity of its facilities and to prevent undue financial burden on the Members of the Corporation, Membership in the Corporation shall be transferred in accordance with the following:

(a)    Except as herein provided, Membership in the Corporation shall be deemed personal estate and a person or entity that owns any stock of, is a Member of, or has some other right of participation in the Corporation may not sell or transfer that stock, Membership or other right of participation to another person or entity except: (1) by will to a transferee who is a person related to the testator within the second degree by consanguinity; (2) by transfer without compensation to a transferee who is a person related to the owner of the stock or other interest within the second degree by consanguinity; or (3) by transfer without compensation or by sale to the Corporation.

8

(b)    Subsection (a) of this section does not apply to a person or entity that transfers the Membership or other right of participation to another person or entity as part of the conveyance of real estate from which the Membership or other right of participation arose.

(c)    The transfer of stock, a Membership, or another right of participation under this section does not entitle the transferee to water or sewer service unless each condition for water or sewer service is met as provided in the Corporation's published rates, charges and conditions of service. Water or sewer service provided by the Corporation as a result of stock, Membership, or other right of participation may be conditioned on ownership of the real estate designated to receive service and from which the Membership or other right of participation arose.

(d)    The Corporation may cancel a person's or other entity's stock, Membership, or other right of participation of the person or other entity fails to meet the conditions for water or sewer service prescribed by the Corporation's published rates, charges, and conditions of service, or fails to comply with any other conditions of service, or fails to comply with any other condition placed on the receipt of water or sewer service under the stock, Membership of other right of participation authorized under Subsection (c) of this section.  The Corporation may, consistent with the limitations prescribed by Subsection (a) of this section and as provided in the Corporation's tariff, reassign cancelled stock, or a canceled Membership or other right of participation to any person or entity that has title to the real estate from which the canceled Membership or other right of participation of any person or entity that has legal title to the real estate from which the canceled Membership or other right of participation arose and for which water or sewer service is requested, subject to compliance with the conditions for water or sewer service prescribed by the Corporation's published rates, charges, and conditions of service.

9

Section 2.    Notwithstanding anything to the contrary hereinabove provided, the consideration for the transfer of any Membership in the Corporation from the original Members, their transferees, pledges, administrators or executors, or other persons shall never exceed the amount of the original costs of such Membership.  No gain or profit shall ever be realized from the sale or transfer of a Membership.

ARTICLE XI

Section 1.  There shall be a regular meeting of the Members annually, on the 2nd Tuesday in February to transact all business that may be properly brought before it.  The Secretary-Treasurer shall give at least fifteen (15) days written notice of such annual meeting to the Membership indicating the time, place and purpose of the such meeting, and shall address and mail the notice to each Member at the address last known to the Corporation.  Failure to hold or call an annual or special meeting in accordance with these By-laws shall give each member rights to compel the Board of Directors to properly hold an annual or special meeting of the Membership.  Voting by proxy shall be permitted.  Members holding ten percent (10%) of the votes entitled to be cast, represented in person or by proxy, shall constitute a quorum for the transaction of business

Section 2.  After fixing a date for the notice of a meeting, the Board of Director shall prepare an alphabetical list of the names of all voting members who are entitled to vote as of the record date of the meeting.  The list must show the address of each voting member.  Not later than two (2) business days after the date notice is given of the meeting, and continuing through the meeting, the list of voting members must be available for inspection by any member entitled to vote at the meeting for the purpose of communication with other members concerning the meeting at the Corporation's principal office or at a reasonable place identified in the meeting notice in the city where the meeting will be held. Any voting member, or voting member's agent or attorney, shall be allowed, on written demand, to inspect and, at a reasonable time

10

and at his expense, copy the list.  Further, the board shall make the list of voting members available at the meeting, and shall allow inspection of such list by any voting member or voting member's agent or attorney at any time during the meeting including any adjournments thereof.

Section 3.  The Board of Directors shall establish a standing Credentials Committee of three (3) members, of which the Secretary-Treasurer shall be the chairperson.  This committee shall adopt proper procedures for conducting an annual or special membership meeting, adopt a specific proxy form to be used in conducting an annual or special membership meeting; adopt procedures for proper notification of the membership of such meetings; delivery of the Corporation's proxy forms to the membership; determine, qualify and register the eligible voters for such meeting; validate proxies, determine presence of quorum for conducting the meeting; design ballots; canvass all votes, and institute proper recording of results of such elections.

ARTICLE XII

Special meetings of the Directors may be held upon the posting of notice of such special meeting, in the manner provided under Article V of these By-laws, at least two hours before the meeting is convened.  It shall be the responsibility of the President or his designee to ensure that proper notice is posted.  In no event shall any special meeting of the Directors be convened where the business of such meeting could be considered at a regular meeting of the Directors receiving at least seventy-two (72) hours notice as provided under Article V of these By-laws.

Prior to convening any special meeting of the Members, the President shall request in writing that the Secretary-Treasurer give at least ten (10) days prior notice to the Members, and that such special meeting is otherwise noticed as provided under Article V of these By-laws.  Such notice shall specify the time, place and purpose of the meeting, and shall be addressed and mailed to each of the Members at their address last known to the Corporation.

11

ARTICLE XIII

The business of the corporation shall be handled under the direction of the Board of Directors by a manager to be elected by majority vote of the Board. The manager shall serve with or without compensation. The manager, with the approval of the Board of Directors, may employ, with or without compensation, such supervisory, clerical or other employees as may be required to effectively operate the business of the Corporation.

ARTICLE XIV

Notwithstanding the ownership of the Membership certificate, all members shall be billed, disconnected or reconnected, and otherwise shall receive service in accordance with the written policies of the Corporation, including the tariff of the Corporation. In the event a member should surrender his membership certificate properly endorsed to the Secretary-Treasurer of the Corporation, the water service shall terminate except as for the minimum charge for the current month and the charge for water used during the current month, and except as for any prior unpaid amounts due the Corporation. In the event membership is terminated, cancelled, withdrawn or surrendered, whether voluntarily or involuntarily, the former member's rights and interest in the assets of the Corporation will not be forfeited.

ARTICLE XV

Upon the discontinuance of the Corporation by dissolution or otherwise, all assets of the Corporation remaining after payment of the indebtedness of the Corporation shall be distributed among the Members and former members in direct proportion to the amount of their patronage with the Corporation insofar as practicable. Any indebtedness due the Corporation by a member for water service or otherwise shall be deducted from such member's share prior to final distribution. By application for and acceptance of membership in the Corporation, each member agrees that, upon the discontinuance of the Corporation by dissolution or otherwise, all assets of the Corporation transferred to that member shall be in turn immediately transferred by the individual member to an entity

12

that provides a water supply or wastewater service or both, that is exempt from ad valorem taxation, in accordance with 11.30 of the Texas Tax Code.

## ARTICLE XVI

The fiscal year of the Corporation shall be from January 1, of each to December 31 of each year.

## ARTICLE XVII

For so long as the Corporation is indebted for a loan or loans made to it by the United States of America through the Farmer's Home Administration, the Corporation shall insure with a reputable insurance company such of its properties and in such amounts as is required by the State Director of the Farmer's Home Administration for the State of Texas.

## ARTICLE XVIII

Section 1.  If at the end of any fiscal year or in the event of emergency repairs the Board of Directors determines the total amount derived from the collection of water charges to be insufficient for the payment of all costs incident to the operation of the Corporation's system during the year in which such charges are collected, the Board shall make and levy an assessment against each member of the Corporation as the Board may determine or as may be required by Farmer's Home Administration, so that the sum of such assessments and the amount collected from water and other charges is sufficient to fully pay all costs of operation, maintenance, replacement and repayment on indebtedness for the year's operations, but this provision shall not operate for the benefit of any third party creditor other than Farmer's Home Administration without a favorable vote of the majority of the members.  Any assessments levied to make up operational deficits in any year shall be levied against members in proportion to their patronage with the corporation.

Section 2.  In the event a member should surrender his membership certificate properly endorsed to the Secretary-Treasurer of the Corporation, his obligation to pay such assessments shall be limited to assessments made and levied prior to the date of

13

surrender of his membership certificate, provided, however, that this paragraph and the second sentence of Article XIV shall not apply to relieve a member of his obligation under special agreements covering multiple membership certificates held by one member which may have been required or approved by the Farmer's Home Administration.

## ARTICLE XIX

The Corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of its Members, Board of Directors, and committees, and shall keep a record of the name and addresses of its members entitled to vote at its registered office or principle office in Texas.

Annually the Board of Directors shall prepare or cause to be prepared a report of the financial activity of the Corporation of for the preceding year including a statement of support, revenue, and expenses and changes in fund balances, a statement of functional expenses, and balance sheets for all funds or such financial reports as required by Farmer's Home Administration. Such report shall be approved by the Board of Directors.

With prior written request, corporate records, books and annual reports, subject to exceptions provided by the Open Records Act, Article 6252-17a, Tex. Rev. Civ. Stat., including any amendments thereto, shall be available for public inspection and copying by the public or their duly authorized representatives during normal business hours subject to a reasonable charge for the preparation of copies.

In the event of any conflict between the provisions of the Open Records Act and the provisions of these By-laws, the provisions of the Open Records Act shall prevail.

## ARTICLE XX

These By-laws may be altered, amended, or repealed by a vote of a majority of the members present at any regular meeting of the Corporation, or at any special meeting of the Corporation called for that purpose, except that the members shall not have the power to change the purpose of the Corporation so as to decrease its

14

rights and powers under the laws of the State, or to waive any requirements of bond or other provisions for the safety and security of the property and funds of the Corporation or its members, or to deprive any member of rights and privileges then existing, or so to amend the by-laws as to effect a fundamental change in the policies of the Corporation. Notice of any amendment to be made at a special meeting of the members must be given at least ten (10) days before such meeting and must set forth the amendments to be considered. For so long as the Corporation is indebted for a loan or loans made to it by the United States of America through the Farmer's Home Administration, these by-laws shall not be altered, amended or repealed without the prior written consent of the State Director of the Farmer's Home Administration for the State of Texas.

## ARTICLE XXI

The seal of the Corporation shall consist of a circle within which shall be inscribed "EAST RIO HONDO WATER SUPPLY CORPORATION".

## ARTICLE XXII

The Corporation pledges its assets for use in performing the organization's charitable functions as permitted in its charter.

## ARTICLE XXIII

The above By-laws and regulations were unanimously adopted by the Membership of the EAST RIO HONDO WATER SUPPLY CORPORATION at a meeting in the offices of the Corporation on the 14th day of February, 1997.


THOMAS F. SCHMITT,
Secretary-Treasurer


15

# TARIFF

**East Rio Hondo Water Supply Corporation**
**P.O. Box 621, 206 Industrial Parkway**
**Rio Hondo, Texas 78583**
**(956)-748-3633**


EXHIBIT " 2 "

# TABLE OF CONTENTS

**SECTION A.**  *RESOLUTION AND AUTHORITY*

**SECTION B.**  *STATEMENTS*

**SECTION C.**  *DEFINITIONS*

**SECTION D.**  *GEOGRAPHIC AREA SERVED*

**SECTION E.**  *SERVICE RULES AND REGULATIONS*
1. Service Entitlement
2. Application Procedures and Requirements
3. Activation of Standard Service
4. Activation of Non-Standard Service
5. Changes in Service Classification (also see Temporary Service E. 6. b., Note 2)
6. Membership
7. Owners and Renters (Section C., Miscellaneous Transaction Forms)
8. Denial of Service
9. Applicant's or Transferee's Recourse
10. Insufficient Grounds for Refusal of Service
11. Deferred Payment Agreement (Miscellaneous Transaction Forms)
12. Indigent Care Policy
13. Charge Distribution and Payment Application
14. Due Dates, Delinquent Bills, and Service Disconnection Date
15. Rules for Disconnection of Service
16. Billing Cycle Changes
17. Back-Billing
18. Disputed Bills
19. Inoperative Meters
20. Bill Adjustment Due to Meter Error
21. Meter Tampering and Diversion CRIMINAL MISCHIEF
22. Meter Relocation
23. Prohibition of Multiple Connections to a Single Tap
24. Member's Responsibility

**SECTION F.**  *DEVELOPER, SUBDIVISION, and*
*NON-STANDARD SERVICE REQUIREMENTS*
1. Corporation's Limitations
2. Purpose
3. Application of Rules
4. Non-Standard Service Application
5. Design
6. Non-Standard Service Contract
7. Property and Right-of-Way Acquisition

        8. Bids for Construction
        9. Pre-Payment for Construction and Services
      10. Construction
      11. Service Within Subdivisions

**SECTION G.**      *RATES AND SERVICE FEES*
        1. Service Investigation Fee
        2. Membership Fee
        3. Easement Fee (Sample Application Packet)
        4. Installation Fee
        5. Impact Fee
        6. Monthly Charges
        7. Late Payment Fee
        8. Water Rights
        9. Mortgagee/Guarantor Notification Fee (Miscellaneous Transaction Form)
      10. Returned Check Fee
      11. Reconnect Fee
      12. Service Trip Fee
      13. Equipment Damage Fee
      14. Customer History Report Fee
      15. Meter Test Fee (Miscellaneous Transaction Fee)
      16. Transfer Fee (Miscellaneous Transaction Fee)
      17. Membership Certificate Copy Fee
      18. Non-Disclosure Fee
      19. Information Disclosure Fee
      20. Customer Service Inspection Fee
      21. Security Lock Fee
      22. Billing Stub Fee
      23. Other Fees

**SECTION H.**      *RETAIL DROUGHT CONTINGENCY AND EMERGENCY WATER DEMAND MANAGEMENT PLAN*
        1. Declaration of Policy, Purpose, and Intent
        2. Public Involvement
        3. Public Education
        4. Coordination with Regional Water Planning Group
        5. Authorization
        6. Application
        7. Definitions
        8. Trigger Criteria for Initiation and Termination of Drought Response Stages
        9. Drought Response Stages
      10. Enforcement
      11. Variances
      12. Severability

**SECTION I.**      *WHOLESALE DROUGHT CONTINGENCY AND EMERGENCY WATER DEMAND MANAGEMENT PLAN*

1. Declaration of Policy, Purpose, and Intent
2. Public Involvement
3. Wholesale Water Customer Education
4. Coordination with Regional Water Planning Group
5. Authorization
6. Application
7. Triggering Criteria for Initiation and Termination of Drought Response Stages
8.. Drought Response Stages
9. Variances
10. Severability

## SAMPLE APPLICATION PACKET

1. Standard Application and Agreement Form (USDA RUS-TX Bulletin 1780-9) (Rev. 5/99)
2. Right of Way Easement Form, East Rio Hondo Water Supply Corporation
3. Non-Standard Application and Agreement

## MISCELLANEOUS TRANSACTION FORMS

1. Confidentiality of Utility Records Form
2. Customer Notice (For Rationing)
3. Deferred Payment Agreement
4. Installment Agreement
5. Line Extension Refund Agreement
6. Membership Mortgage Agreement
7. Membership Transfer Authorization
8. Meter Test Authorization and Test Report
9. Notice of Requirement to comply with the Subdivision and Service Extension Policy
10. Request for Service Discontinuance
11. Equipment and Line Dedication Agreement
12. Termination Notice

## MISCELLANEOUS

1. Tariff Filing Requirements (TNRCC)
2. Re-Service Illustration
3. Equity Buy In Fee Calculation Example

# SECTION A.
# RESOLUTION AND AUTHORITY

THE BOARD OF DIRECTORS OF EAST RIO HONDO WATER SUPPLY CORPORATION
ESTABLISHES THAT :

1.  This Tariff of the East Rio Hondo Water Supply Corporation, serving in Cameron and Willacy
    Counties, consisting of Sections A. through H. and forms inclusive, is adopted and enacted as the
    current regulations and policies effective as of April 8, 2002.

2.  Only those preexisting written contracts or agreements executed by the present or previous Board of
    Directors shall remain in effect, unless the contract or agreement requires compliance with changes
    of the tariff from time to time.

3.  The adoption of this tariff does not prohibit or limit the Corporation from enforcing previous
    penalties or assessments from before the current effective date.

4.  An official copy of this and all policies or records shall be available during regular office hours of
    the Corporation.  The Secretary of the Corporation shall maintain the original copy as approved and
    all previous copies for exhibit.

5.  Rules and regulations of state or federal agencies having jurisdiction shall supersede any terms of
    this policy.  If any section, paragraph, sentence, clause, phrase, word, or words of this policy are
    declared unconstitutional or invalid for any purpose, the remainder of this policy shall not be
    affected.

PASSED and APPROVED this 8th day of April, 2002.


_____

Billie Joe Simpson
President, East Rio Hondo Water Supply Corporation



SEAL



ATTEST:


_____

Thomas Schmitt
Secretary/Treasurer, East Rio Hondo Water Supply Corporation


Approved_____

# SECTION B.
## STATEMENTS

1. ***Organization.*** The East Rio Hondo Water Supply Corporation is a member-owned, non-profit corporation incorporated pursuant to the Texas Water Code Chapter 67, Nonprofit Water Supply or Sewer Service Corporations and as supplemented by the Texas Non-Profit Corporation Act, Tex. Rev. Civ. Stat. Ann., Article 1396-1.01, et seq. (West 1980, Vernon Supp. 1996 as amended) for the purpose of furnishing potable water and or sewer utility service. The Board of Directors elected by the Members of the Corporation adopts corporation operating policies, rates, and regulations.

2. ***Non-Discrimination Policy.*** Membership in the Corporation and service is provided to all Applicants who comply with the provisions of this Tariff regardless of religion, race, creed, color, national origin, sex, disability, or marital status.

3. ***Policy and Rule Application.*** These policies, rules, and regulations apply to the water and <u>or</u> sewer services provided by the East Rio Hondo Water Supply Corporation, also referred to as Corporation, or ERHWSC. Failure on the part of the Member, Consumer, or Applicant to observe these policies, rules and regulations gives the Corporation the authority to deny or discontinue service according to the terms of this Tariff as amended from time to time by the Board of Directors of the Corporation.

4. ***Corporation Bylaws.*** The Corporation Members have adopted bylaws (see Article 1396-2.09), which establish the make-up of the Board of Directors and other important regulations of the Corporation. The bylaws are on file at the Corporation's office.

5. ***Fire Protection Responsibility.*** The Corporation does not provide nor imply that fire protection is available on any of the distribution system. All hydrants or flush valves are for the operation and maintenance of the system and may be used for refill only by authorized fire departments. The Corporation reserves the right to remove any hydrant, due to improper use or detriment to the system as determined by the Corporation, at any time without notice, refund, or compensation to the contributors unless such hydrants are installed pursuant to the terms of a Non-Standard Service Contract as provided for in Section F, in which event the terms and conditions of the Contract shall apply.

6. ***Damage Liability.*** The ERHWSC is not liable for damages caused by service interruptions, events beyond its control, and for normal system failures. The limit of liability of the ERHWSC is the extent of the cost of service provided. By acceptance of Membership, Member consents to waiver of such liability.

7. ***Information Disclosure.*** The records of the Corporation shall be kept in the Corporation office in Rio Hondo, Texas. All information collected, assembled, or maintained by or for the Corporation shall be disclosed to the public in accordance with the Texas Open Records Act. An individual customer may request in writing that their name, address, telephone number, or social security number be kept confidential. Such confidentiality does not prohibit the utility from disclosing this information to an official or employee of the state or a political subdivision of the state acting in an official capacity or an employee of the Corporation acting in connection with the employee's duties. Further, such confidentiality does not prohibit the Corporation from disclosing the name and address

Approved _____

of each member on a list to be made available to the Corporation's voting members, or their agents or attorneys, in connection with a meeting of the Corporation's members. The Corporation shall give its applicants and customers notice of rights to confidentiality under this policy and all prevailing associated fees for such request.

8. *Customer Notice Provisions.* The Corporation shall give written notice of monthly rate changes by mail or hand delivery to all consumers at least 30 days prior to the effective date of the new rate. The notice shall contain the old rates, new rates, effective date of the new rate, date of Board authorization, and the name and phone number of the Corporation's contact person designated to address inquiries about the rate change.

9. *Grievance Procedures.* Any Member of the Corporation or individual demonstrating an interest under the policies of this Tariff in becoming a Member of the Corporation shall have an opportunity to voice concerns or grievances to the Corporation by the following means and procedures:
   a. By presentation of concerns to the Corporation's manager or authorized staff member. If not resolved to the satisfaction of the aggrieved party then,
   b. By presenting a letter to the Board of Directors stating the individual's grievance or concern and the desired result.
   c. The Board of Directors shall respond to the complaint by communicating the Board's decision in writing.
   d. Any charges or fees contested as a part of the complaint in review by the Corporation under this policy shall be suspended until a satisfactory review and the Board of Directors has made a final decision.

10. *Customer Service Inspections.* The Corporation requires that a customer service inspection certification be completed prior to providing continuous water service to new construction and for all new members as part of the activation of standard and some non-standard service. Customer service inspections are also required on any existing service when the corporation has reason to believe that cross-connections or other potential contaminant hazards exist, or after any material improvement, correction or addition to the members' water distribution facilities. This inspection is limited to the identification and prevention of cross connections, potential contaminant hazards and illegal lead materials. (30 TAC 290.46(i-k))

11. *Submetering Responsibility.* Submetering and Non-Submetering by Master Metered Accounts may be allowed in the Corporation's water distribution or sewer collection system provided the Master Metered Account customer complies with the Texas Natural Resource Conservation Commission's Chapter 291 Subchapter H rules pertaining to Submetering. The Corporation has no jurisdiction or responsibility to the tenants; tenants receiving water under a Master Metered Account are not considered customers or Members of the Corporation. Any interruption or impairment of water service to the tenants is the responsibility of the Master Metered Account Customer. Any complaints regarding submetering should be directed to the Texas Natural Resource Conservation Commission.

12. *Floodplain Resolution.* In order to prevent construction of dwellings within the floodplains of the areas served by ERHWSC, the extension of water or wastewater service to any structure in floodplains as designated by the United States Federal Emergency Management Agency (FEMA) floodplain maps is not permitted by ERHWSC Resolution as passed October 2, 2000.

Approved _____

# SECTION C.
## DEFINITIONS

**Active Service** – The status of any Member receiving authorized service under the provisions of this Tariff.

**Applicant** – A person, partnership, cooperative corporation, corporation, agency, public or private organization of any type applying for service with the East Rio Hondo Water Supply Corporation.

**Board of Directors** -- The governing body elected by the Members of the East Rio Hondo Water Supply Corporation. (Article 1396-1.02 (7))

**Bylaws** -- The rules pertaining to the governing of the East Rio Hondo Water Supply Corporation adopted by the Corporation Members. (Article 1396-1.02 (5))

**Certificate of Convenience and Necessity (CCN)** -- The authorization granted under Chapter 13 Subchapter G of the Texas Water Code for East Rio Hondo Water Supply Corporation to provide water and/or sewer utility service within a defined territory. East Rio Hondo Water Supply Corporation has been issued Certificate Number 11552. Territory defined in the CCN shall be the Certificated Service Area. (See Section D.  Certificated Service Area Map)

**Contribution to Construction Fee** – A fee paid by a Member, or potential Member, of the Corporation for the purpose of aiding the RUS and the Corporation in the construction of a project.

**Corporation** -- The East Rio Hondo Water Supply Corporation. (Section B. 3 of this Tariff)

**Developer** – Any person, partnership, cooperative corporation, corporation, agency, or public or private organization who subdivides land or requests more than two (2) water or sewer service connections on a single contiguous tract of land [as defined in Chapter 13.2502 (e)(1) of the Water Code].

**Disconnection of Service** -- The discontinuance of water or sewer service by the Corporation to a Member/Customer.

**Easement** -- A private perpetual dedicated right-of-way for the installation of ERHWSC utility pipelines and necessary facilities which allows access to property for future operation, maintenance, facility replacement, facility upgrades, and/or installation of additional pipelines (if applicable). This may also include restrictions on the adjacent area to limit the installation of sewer lines or other facilities that would restrict the use of any area of the easement. (See Sample Application Packet, Right of Way Easement, East Rio Hondo Water Supply Corporation)

**Equity Buy-In Fee** -- A fee assessed of new Applicants for service for the purpose of acquiring capital to defray the costs of expanding the system facilities in order to meet the customer growth needs of the Corporation. This fee is charged for each meter equivalent or service unit for which service has been requested. (see Miscellaneous)

**Final Plat** -- A complete plan for the subdivision of a tract of land. The East Rio Hondo Water Supply

Corporation shall determine if a plat submitted for the purpose of this Tariff shall qualify as a final plat. (30 TAC 291.85)

**Hazardous Condition** -- A condition that jeopardizes the health and welfare of the Members/Consumers of the Corporation as determined by the Corporation or regulatory authority.

**Indication of Interest Fee** -- A fee paid by a potential Member of the Corporation for the purpose of determining the feasibility of a construction and /or expansion project. The Indication of Interest Fee may be converted to a Membership Fee upon determination that service to the Applicant is feasible and available. This also applies to applicants applying for, or receiving, Temporary Service. (Section E. 6. b., and Sample Application Packet - USDA RUS-TX Bulletin 1780-9 (Rev. 5/99))

**Liquidated Membership** -- A Membership that has been canceled due to delinquent charges exceeding the Membership Fee or for other reasons as specified in this Tariff. Service shall not be provided to any person whose Membership has been canceled until a new Membership Fee has been paid and all other applicable requirements for service as provided in this Tariff have been satisfied.

**Member** -- Any person, partnership, cooperative corporation, corporation, agency, or public or private organization that has qualified for service and received a Membership in accordance with the Corporation's Tariff.

**Membership Certificate** -- A non-interest bearing stock certificate purchased from the Corporation evidencing a Member's interest in the Corporation. (See Tariff Section E. 6 b and Article 1396-2.08 D)

**Membership Fee** -- A fee qualified as such under the terms of the tariff and the bylaws of the Corporation assigned to the real estate designated to receive service. The membership fee shall be refundable upon termination of service and surrendering the Membership Certificate. (30 TAC 291.3 Definitions, Texas Water Code 13.043(g))

**Person** – Any natural person, partnership, cooperative corporation, association, private corporation, agency, or public or private organization of any character.

**Proof of Ownership** – Texas Water Code 67.016 (d) gives authority to the corporation to require ownership of real estate designated to receive service as a condition of membership and service. For the purpose of this tariff, applicants for service and membership shall provide proof of ownership by deed of trust, warranty deed, or other recordable documentation of fee simple title to real estate to be served.

**Rural Utilities Service (RUS)** -- An Agency of the United States Department of Agriculture Rural Development Mission Area that provides loan and grant funds for development of rural water and sewer systems serving communities with a population of less than ten thousand (10,000) people.

**Renter** -- A consumer who rents or leases property from a Member or who may otherwise be termed a tenant. (See Tariff Section E. 7.)

**Re-Service** -- Providing service to an Applicant at a location for which service previously existed. Costs of such re-servicing shall be based on justifiable expenses. (See Tariff Section E. 3. b., E. 4. b., and Miscellaneous)

Approved _____

**Reserved Service Charge** -- A monthly charge assessed for each property where service is being reserved. (See Tariff Section F. 6. d., e)

**Service Availability Charge** -- (Also known as "minimum monthly charge", "minimum", or the "base rate") The monthly charge assessed each Member/Customer for the opportunity of receiving service. The Service Availability Charge is a fixed rate based upon the meter, service size, or equivalent dwelling unit(s). To keep a membership in good standing, the Service Availability Charge must be paid monthly to the Corporation, whether or not water is used. Failure to pay the monthly Service Availability Charge to the Corporation shall jeopardize the Member's Membership standing, and give rise to liquidation of membership. (See definition of Reserved Service Charge)

**Service Application and Agreement** -- A written agreement between the Member/Applicant and the Corporation defining the specific type of service requirements requested on the current service application and agreement form, and the responsibilities of each party required before service is furnished. (See Sample Application Packet RUS-TX Bulletin 1780-9 (Rev. 5/99) or Non-Standard Service Contract)

**Service Unit** -- The base unit of service used in facilities design and rate making. For the purpose of this Tariff, a service unit is a 5/8" X 3/4" water meter. Sewer facilities are designed and rates are based on the basis of population served or demand. (See Tariff Section G. 6. a., Miscellaneous)

**Subdivide** -- To divide the surface area of land into lots intended primarily for residential use. (Local Government Code Chapter 232, Section 232.021 Definitions)

**Subdivider** – An individual, firm, corporation, or other legal entity that owns any interest in land and that directly or indirectly subdivides land into lots as a part of a common promotional plan in the ordinary course of business. (Local Government Code Chapter 232, Section 232.021 Definitions)

**Subdivision** – An area of land that has been subdivided into lots for sale or lease. (Local Government Code Chapter 232, Section 232.021 Definitions)

**Tariff** -- The operating policies, service rules, service extension policy, service rates, rationing policies, sample application packet, and miscellaneous transaction forms adopted by the Board of Directors. A copy of this Board approved tariff is on file at the Corporation office and as required since September 1, 1989 at the State office of the TNRCC. (TX Water Code 13.136)

**Temporary Service** -- The classification assigned an applicant that is in the process of construction. This could also apply to service for uses other than permanent (agricultural, road construction, drilling, livestock, etc.). Temporary service is limited to one year. This classification will change to permanent service after requirements in Section E. 1, E. 2, E. 3, and E. 5 are met. Applicant must have paid an Indication of Interest Fee.

**Texas Natural Resource Conservation Commission (TNRCC)** -- State regulatory agency having jurisdiction of water and sewer service utilities and appellate jurisdiction over the rates and fees charged by Non-Profit Water and Sewer Service Corporations.

Approved _____

**Transferee** -- An Applicant receiving an ERHWSC Membership by legal means from a person or entity desiring to forfeit and transfer current rights of Membership to another person or entity. (See Tariff Section E. 6 c., Miscellaneous Transaction Forms)

**Transferor** -- A Member who transfers Membership by legal means to another person or entity desiring to qualify for service at a property for which the Membership is currently issued or to the Corporation. (Texas Water Code, Chapter 67.016)

# SECTION D.
## GEOGRAPHIC AREA SERVED

## EAST RIO HONDO WATER SUPPLY CORPORATION

## CERTIFICATE OF CONVENIENCE AND NECESSITY

To Provide Water Utility or Sewer Utility Service Under V.T.C.A., Water Code
and Texas Natural Resource Conservation Commission Substantive Rules

**Certificate No. 11552          Water**

**Certificate No. 20861          Sewer**

Certificate Holder:

    Name:              East Rio Hondo Water Supply Corporation

    Address:          206 Industrial Parkway
                            Rio Hondo, Texas  78583

Certificate Maps:

    The certificate holder is authorized to provide (water or sewer) service in the area
identified on the Commission's official service area maps, WRS-31 and WRS-245,
maintained in the offices of the Texas Natural Resource Conservation Commission,
12015 Park 35 Circle, Austin, Texas with all attendant privileges and obligations.

This certificate is subject to the rules and orders of the Commission, the laws of the State of Texas, and
conditions contained herein may be revoked for violations thereof.  The certificate is valid until amended
or revoked by the Commission.

## MAP OF WATER CCN AREA

# MAP OF SEWER CCN AREA

# SECTION E.
# SERVICE RULES AND REGULATIONS

1. ***Service Entitlement.*** An Applicant shall be considered qualified and entitled to water and or sewer utility service when proper application has been made, terms and conditions of Service and Membership have been met and continue to be met, and all fees have been paid as prescribed. (30 TAC 291.85 (a))

2. ***Application Procedures and Requirements.*** For the purposes of this Tariff, service requested by an Applicant shall be for real estate designated to receive the service provided by the Corporation and shall be divided into the following two classes:

   a. **Standard Service** is defined as service on an existing pipeline where pipeline or service facility extensions are not required and special design and/or engineering considerations are not necessary. Typically, this would include 5/8" X 3/4" or 3/4" sized water meter services set on existing pipelines or 4" gravity sewer taps, pressure collection facilities installed or connected to collection lines no more than five feet in depth.

   b. **Non-Standard Service** is defined as any service request, which requires a larger meter service, service to a Master Metered Account (see E. 2. c. (4) of this section), or an addition to the supply, storage and/or distribution/collection system. The service requirements as prescribed by Section F of this Tariff shall be required of the Non-Standard Service Applicant prior to providing service.

   c. **Requirements for Standard and Non-Standard Service.**
      1) The Corporation's Service Application and Agreement Form shall be completed in full and signed by the Applicant. (See Sample Application RUS-TX Bulletin 1780-9 (Rev. 5/99)
      2) A Right-of-Way Easement Form, Sanitary Control Easement, or other such easement form, required by the Corporation as a condition of service, must be completed by the Applicant for the purpose of allowing future facility additions. (See Sample Application – RIGHT OF WAY EASEMENT, East Rio Hondo Water Supply Corporation, 30 TAC 290.47 Appendix C.) ***NOTE:*** This requirement may be delayed for Non-Standard Service requests.
      3) The Applicant shall provide proof of ownership to property for which service has been requested in a manner acceptable to the Corporation. Proof of ownership shall consist of warranty deed, deed of trust or other recordable documentation of fee simple title to the real estate designated to receive service. (Texas Water Code 67.016 (e), and 13.002 (11).
      4) The Corporation shall consider master metering and/or non-standard sewer service to apartments, condos, trailer /RV parks, or business centers and other similar type enterprises at an Applicant's request provided the total number of units to be served are all:
         (a) owned by the same person, partnership, cooperative, corporation, agency, public or private organization of any type but not including a family unit,
         (b) directly inaccessible to public right-of-way, and
         (c) considered a commercial enterprise i.e. for business, rental, or lease purposes.

Approved _____

5) Notice of application approval and costs of service determined by the Corporation shall be presented to the Applicant in writing and shall remain in effect for a period not to exceed thirty (30) days. After that time the Applicant must re-apply for service. (30 TAC 291.81 (a) (1))

6) If the water main has been located in the public right-of-way and is adjacent to Applicant's property due to the current or previous landowner's refusal to grant easement to the Corporation for the purpose of installing the water main and appurtenances, and the Corporation has documentation of such refusal, the Applicant, prior to receiving the requested service, shall grant easement to the Corporation. In addition to the normally required fees for service, the Applicant shall pay such sums as are necessary for the removal of the water main from the public right-of-way and for relocation onto the Applicant's property pursuant to such easement. (see Miscellaneous Transaction Forms)

7) If a property owner fails to provide the Corporation a right-of-way easement upon request, and the Corporation must obtain the easement via condemnation or settlement agreement, the property owner and future property owners will be required to reimburse Corporation for all condemnation costs or for all costs related to the settlement agreement, as determined and documented by the Corporation, before non-standard service will be provided. Costs will include all legal fees, expert fees, and expenses necessary to obtain easement via condemnation or settlement agreement. Interest on these costs will also apply to the applicant and will be calculated on annual compounding at two (2) percentage points above rate for the ten-year (10-year) Treasury Note, or at the closest maturity Treasury Note, if the 10-year Treasury Note is discontinued.

8) If an applicant/Transferee fails to provide all documentation required at the time of application, the Corporation will issue written notice informing the applicant they have 10 days in which to provide the proper information or the service will be terminated. This will apply to Standard or Non-Standard Service request(s). (See Miscellaneous Transaction Forms – APPLICANT'S NOTICE OF INSUFFICIENT INFORMATION)

3. *Activation of Standard Service.*

    a. **New Tap** -- The Corporation shall charge a non-refundable service installation fee as required under Section G of this tariff. The service installation fee shall be quoted in writing to the Applicant. All fees shall be paid or a deferred payment contract signed in advance of installation. (30 TAC 291.86 (a)(1)(A))

    b. **Re-Service** -- On property where service previously existed, the Corporation shall charge the Membership Fee, where the Membership Fee has been liquidated, and costs necessary to restore service and reinstate a liquidated account to an active status. In addition, the Corporation shall charge accumulated Reserved Service Fees that have been entered on the in-active account as monthly debits. This is allowing the Corporation to recover the costs of reserving capacity at the location for which re-service has been requested. If restoration of service is not requested, this fee will accumulate monthly until the total balance of Reserved Service Fees equals the amount of the Equity Buy-In and/or Impact Fees previously paid for service to the property. After this time the service equipment may be removed by the Corporation and future request for service shall be treated as a new application. (see Miscellaneous Section)

    c. **Performance of Work** -- After proper authorities grant approval, all tap and equipment installations specified by the Corporation shall be completed by the Corporation staff or designated representative. The tap shall be completed within five (5) working days after approval and receipt of payment of quoted fees. This time may be extended for installation of equipment

Approved _____

for Non-Standard Service Request. (see Section F, 30 TAC 291.85)

    d.  **Inspection of Customer Service Facilities** -- The property of the Applicant/ Member shall be inspected to insure compliance with state required Minimum Acceptable Operating Practices For Public Drinking Water Systems as promulgated by the Texas Natural Resource Conservation Commission or successor agency. This Customer Service Inspection will be performed by the Corporation's employees, or the Corporation's designated and qualified agent. (30 TAC 290.46(i-k))

4. *Activation of Non-Standard Service.*

    a.  **Activation of Non-Standard Service** shall be conducted as prescribed by terms of Section F of this Tariff.

    b.  **Re-Service** - The same terms which apply under the Activation of Standard Service Sub-Section on Re-Servicing shall be applied to Non-Standard Re-Service requests. (Section E. 3. b)

5. ***Changes in Service Classification.*** If at any time the Corporation determines that the Applicant/Member has changed their service needs, other than that originally applied for, sufficiently to impact the system, the Corporation shall require the Applicant/Member to re-apply for service under the terms and conditions of this Tariff. Applicant/Members failing to comply with this provision shall be subject to the Disconnection with Notice Provisions of this Tariff, Sub-Section 15.a.

6. *Membership.*

    a.  **Eligibility** - Eligibility for Membership shall not guarantee service to the Applicant or Transferee; however, qualification for service is a prerequisite to Membership eligibility for new Applicants or continued Membership for Transferees.

    b.  **Membership Certificates** - Upon qualification for service, qualification for Membership, and payment of the required fees, the Corporation shall issue a refundable Membership Certificate to the Applicant. The Membership Certificate provides proof of Membership in the Corporation and shall entitle the Member to one (1) connection to the Corporation's water/sewer utility service and one (1) share of Corporation Stock. The Membership Certificate also entitles the Member to one (1) vote in conducting the affairs of any Annual or Special Membership Meeting of the Corporation as prescribed by the Corporation Bylaws. An original or a copy of each Membership Certificate shall be held on file in the Corporation Office. Ownership of more than one (1) Membership Certificate shall not authorize the Member to cast more than one (1) vote at any annual or special meeting. Each Membership Certificate and Stock thereby represented may be assigned to the specified parcel of land originally designated to receive service at the time of application. (Texas Water Code 67.016) *NOTE (1):* In the event that the Corporation is conducting a potential Members survey for indications of interest in future service for the purpose of determining the feasibility of an initial construction or expansion project under RUS guidelines (see Sample Application Packet - RUS TX Bulletin 1780-8, Membership Survey Data Sheet), regular application procedures may be modified. An Indication of Interest Fee may be required prior to qualifications for receipt of service by the Applicant but shall only be used or applied as a Membership Fee for Membership purposes (upon issuance of a Membership Certificate) if service is ultimately received or reserved by the Applicant as a result of the planned project facilities. If service is not provided within the scope of this project, Indication of Interest Fees shall be refunded, less expenses, within sixty (60) days of the loan closing with the Rural Utilities Service. *NOTE (2):* In the event the applicant is in the process of construction the Membership will be considered TEMPORARY until such time as the final Customer Service

Approved _____

Inspection is completed and the forms are returned as required. (See Section C., Section E. Sub-Section 1. Service Entitlement)

c. **Transfers of Membership.** (Texas Water Code 67.016)

   1) A Member is entitled to transfer Membership in the Corporation only under the following circumstances:

      (a) The Membership is transferred by will to a person related to the Transferor within the second degree by consanguinity; or

      (b) The Membership is transferred without compensation to a person related to the Transferor within the second degree by consanguinity; or

      (c) The Membership is transferred without compensation or by sale to the Corporation; or

      (d) The Membership is transferred as a part of the conveyance of real estate from which the Membership arose.

   2) In the event that Membership is transferred pursuant to the provisions of Sub-Section 6.c. (1) such transfer shall not be completed or recorded on the books and records of the Corporation until such time as the transferor has provided satisfactory evidence to the Corporation of such transfer. A transfer of Membership shall not be binding on the Corporation until such transfer has been approved as provided by Sub-Section 6.c. (3).

   3) Qualifications for service upon transfer of Membership set forth in Sub-Section 6.c.(1) and 6.c.(2) shall be subject to approval of the Corporation and shall be recorded on the books and records of the Corporation only upon the following terms and conditions:

      (a) A Transfer Authorization Form has been completed by the Transferor and Transferee;

      (b) The Transferee has completed the required Application Packet;

      (c) All indebtedness due the Corporation has been paid;

      (d) The Membership Certificate has been surrendered, properly endorsed, by the Transferor; and

      (e) The Transferee demonstrates satisfactory evidence of ownership of the property designated to receive service and from which the Membership originally arose.

   4). If the application packet and other information is not completed on the day transfer of membership is requested the corporation will give the transferee written notice of 10 additional days to produce completed documentation to the corporation office. Service will be disconnected on the day following the 10th day according to disconnection with notice requirements. Additional time may be allowed at the directions of the manager or board. (see Miscellaneous Transaction Form – APPLICANT'S NOTICE OF INSUFFICIENT INFORMATION)

d. **Cancellation of Membership** -- To keep a Membership in good standing, a Service Availability Charge or a Reserved Service Charge must be paid monthly to the Corporation, whether or not water is used. Failure to pay this monthly charge to the Corporation shall jeopardize the Member's Membership standing and give rise to liquidation of the Membership Fee and forfeiture of the Membership. A Member may be relieved of this obligation to pay by surrendering the Membership Certificate, properly endorsed, to the Corporation. The Member shall also complete a Service Discontinuance Request Form prior to termination of service. (See Misc. Transaction Forms.) However, a Member is not relieved of any obligations incurred prior to the date of surrender of a properly endorsed Membership Certificate prior to termination of service. Rights to future service at this tap shall be extended on an as-available basis and subject to the terms of the Activation of Service Sub-Section E.3.a. of this Tariff. (Texas Water Code 67.016)

e. **Liquidation Due To Delinquency** -- When the amount of the delinquent charges owed by the Member equals the Membership Fee, the Membership Fee shall be liquidated and the

Approved _____

Membership canceled and transferred back to the Corporation. In the event the Member leaves a balance due on an account guaranteed under the terms of a Service Application and Agreement, and the delinquent Member owns more than one Membership Certificate, the Corporation may liquidate as many of the Member Guarantor's Membership Fees as necessary to satisfy the balance due the Corporation, provided proper notice has been given (see Tariff Section E, Subsection 15.1a.(4)). The Corporation shall collect any remaining account balances by initiation of legal action. Re-instatement of service shall be subject to the terms of the Activation of Service Sub-Section E. 3. a. of this Tariff.

f. **Cancellation Due To Policy Non-Compliance** -- The Corporation may cancel a Membership anytime a Member fails to comply with policies of the Corporation, including but not limited to Member's failure to provide proof of ownership of the property from which the Membership arose. (Texas Water Code 67.016)

g. **Re-assignment of Canceled Membership** -- The Corporation, upon cancellation of Membership under the provisions of this Tariff, may re-assign the Membership rights thereby granted to any person who satisfactorily demonstrates eligibility for Membership, including but not limited to proof of ownership of the property from which the Membership arose. (Texas Water Code 67.016)

h. **Mortgaging of Memberships** -- Nothing herein shall preclude a Member from mortgaging his/her Membership. However, notification to the holder of any security interest (mortgagee/lien-holder) of account status of Member/mortgagor will be provided only upon satisfactory completion of requirements for such conditions under the Membership Mortgage Agreement (See Miscellaneous Transaction Forms). Prior to the cancellation of any Membership as provided under Sub-Section E. 6.d. (Cancellation of Membership), the Corporation will notify the holder of any security interest in the Membership. The holder of the security interest also must hold a security interest in the real property at which water service is provided under the Membership. The Corporation may transfer the Membership to the holder of such security interest in lieu of cancellation, provided the holder of the security interest pays in full all delinquent and unpaid obligations and provided further that the holder of the security interest has secured title to the real property from which the Membership arose. The Corporation may withhold cancellation of a Membership pending the resolution of any foreclosure proceedings or similar legal proceedings by the holder of the security interest.

i. **Cancellation and Re-Assignment of Membership as a Result of Bankruptcy Proceedings** -- Upon notice of the filing of a petition in bankruptcy, the Corporation may require the posting of a deposit or other form of security, acceptable to the Corporation, as a condition for continuing utility service. Unless special circumstances require otherwise, the amount of security shall equal the amount of charges for the month of greatest use during the preceding 12 months. The Corporation shall not require the payment of any security prior to the expiration of 20 days following the date on which the petition is filed. Failure to provide this security by the date specified by the Corporation may result in termination of service according to the Disconnection With Notice Provisions of Section E (15) (a) of this tariff, with a copy of the notice to the bankruptcy Trustee.

7. *Owners and Renters.* Any Member, renting or leasing real estate property designated to receive service according to the terms of this tariff to other parties, is responsible for all charges due the Corporation. The Corporation may bill the renter or lessee for utility service (at Member Request) as a third party, but the Member is fully responsible for any and all unpaid bills left by the renter/lessee. The owner shall be

Approved _____

required to sign an Alternate Billing Agreement. (See Miscellaneous Transaction Forms.) The Member shall take responsibility for any necessary deposits from the renter/lessee to ensure payment of a past due bill. The Corporation may notify the Member of the renter's past due payment status subject to service charges (see Section: Miscellaneous Transaction Forms).

8. ***Denial of Service.***  The Corporation may deny service for the following reasons:
   a. Failure of the Applicant or Transferee to complete all required forms and pay all required fees and charges;
   b. Failure of the Applicant or Transferee to comply with rules, regulations, policies, and bylaws of the Corporation;
   c. Existence of a hazardous condition at the Applicant's property which would jeopardize the welfare of the Members/Users of the Corporation upon connection;
   d. Failure of Applicant or Transferee to provide representatives or employees of the Corporation reasonable access to property, for which service has been requested;
   e. Failure of Applicant or Transferee to comply with all governmental rules and regulations of the Corporation's tariff on file with the state regulatory agency governing the service applied for by the Applicant;
   f. Failure of Applicant or Transferee to provide proof of ownership, to the satisfaction of the Corporation, of property for which the tap has been requested, and/or
   g. Applicant's service facilities are known to be inadequate or of such character that satisfactory service cannot be provided.

9. ***Applicant's or Transferee's Recourse.***  In the event the Corporation refuses to serve an Applicant under the provisions of these rules, the Corporation must notify the Applicant, in writing, on the basis of its refusal. The Applicant may file for an appeal, in writing, with the Board of Directors of the Corporation.

10. ***Insufficient Grounds for Refusal of Service.***  The following shall not constitute sufficient cause for the refusal of service to an Applicant:
    a. Delinquency in payment for service by a previous occupant of the premises to be served;
    b. Failure to pay a bill to correct previous underbilling due to misapplication of rates more than six (6) months prior to the date of application;
    c. Violation of the Corporation's rules pertaining to operation of non-standard equipment or unauthorized attachments which interferes with the service of others, unless the customer has first been notified and been afforded reasonable opportunity to comply with said requirements;
    d. Failure to pay a bill of another customer as guarantor thereof unless the guarantee was made in writing to the Corporation as a condition precedent to service;
    e. Failure to pay the bill of another customer at the same address except where the change of customer identity is made to avoid or evade payment of a utility bill;
    f. Failure to comply with regulations or rules for anything other than the type of utility service specifically requested including failure to comply with septic tank regulations.

11. ***Deferred Payment Agreement.***  The Corporation may offer a deferred payment plan to a Member who cannot pay an outstanding balance in full and is willing to pay the balance in reasonable installments as determined by the Corporation, including any Late Penalty Fees or interest on the monthly balance to be determined as per agreement. (See Miscellaneous Transaction Forms)

12. ***Indigent Care Policy.***  East Rio Hondo Water Supply Corporation does not have an Indigent Care Policy.

Approved _____

13. *Charge Distribution and Payment Application.*
   a. **The Service Availability Charge or the Reserved Service Charge** is for the billing period from the first day of the month service to the last day of the monthly service. Charges shall be prorated for meter installations and service termination's falling during the billing period. Billings for this amount shall be mailed on or about the last day of the monthly service preceding the monthly service for which this charge is due. All services shall be subject to this charge whether or not the service is in use by the Member.
   b. **Gallonage Charge** shall be billed at the rate specified in Section G and billing shall be calculated in one hundred (100) gallon increments. Water charges are based on monthly meter readings and are calculated from reading date to reading date. Readings used in all billing calculations shall be taken by the Corporation's employees or designated representative.
   c. **Posting of Payments** -- All payments shall be posted against previous balances prior to posting against current billings.

14. *Due Dates, Delinquent Bills, and Service Disconnection Date.* The Corporation has two billing cycles. The Corporation shall mail all bills for cycle one on or about the 15th day of the month and cycle two on or about the 31st day of the month. All bills shall be due and payable upon receipt and are past due beyond the date indicated on the bill (allowing approximately fifteen (15) days to pay), after which time a penalty shall be applied as described in Section G. A bill is delinquent if not paid on or before the past due date. Final notices will be mailed approximately 30 days after the regular billing and will include the initial regular billing amount, a late penalty, and the regular billing for the most recent monthly cycle of consumption. Final notices shall allow approximately 15 additional days for payment of the initial regular bill and late penalty prior to disconnection. If the past due date for the regular or final billing is on a weekend or holiday, the past due date for payment purposes shall be the next day the Corporation office is open for business after said weekend or holiday. For all disputed payment deadlines, the date on each bill will determine the beginning of each billing cycle or final notice mailings.

15. *Rules for Disconnection of Service.* The following describes the rules and conditions for disconnection of service. For the purposes of disconnecting sewer service under these policies, water service will be terminated in lieu of disconnecting sewer service. In instances of nonpayment of sewer service or other violations by a Member who is not a water customer, the Corporation has the option to disconnect the sewer tap or take other appropriate actions.
   a. **Disconnection with Notice** -- Water utility service may be disconnected for any of the following reasons after proper notification has been given within 10 days of mailing (unless other arrangements or extensions have been granted).
      1) Returned Checks -- The Corporation shall mail, via the U.S. Postal Service, a notice requiring redemption of the returned instrument within ten (10) days of the date of the notice to be made in the Corporation office. Redemption of the returned instrument shall be made by cash, money order, or certified check. Failure to meet these terms shall initiate disconnection of service. (see Miscellaneous Transaction Forms) Any such instruments returned as insufficient or non-negotiable for any reason for any two billing periods within a 12-month period shall be considered evidence of bad credit risk by the Corporation. The Member/Customer in violation shall be placed on a "cash-only" basis for a period of 12 months.
      *NOTE:* "cash only," means certified check, money order, or cash.
      2) Failure to pay a delinquent account for utility service, failure to timely provide a deposit or other security under Section E (6) (i), or failure to comply with the terms of a deferred

Approved _____

payment agreement (Miscellaneous Transaction Forms);

3) Violation of the Corporation's rules pertaining to the use of service in a manner which interferes with the service of others or the operation of non-standard equipment if a reasonable attempt has been made to notify the Member and the Member is provided with a reasonable opportunity to remedy the situation;

4) Failure of the Member to comply with the terms of the Corporation's Service Agreement, Tariff, Bylaws, or Special Contract provided that the Corporation has given notice of said failure to comply, and Member has failed to comply within a specified amount of time after notification.

5) Failure to provide access to the meter under the terms of this Tariff or to property at which water service is received when there is reason to believe that a hazardous condition or policy violation exists for which access is necessary to verify.

6) Misrepresentation by any Applicant or Transferee of any fact on any form, document, or other agreement required to be executed by the Corporation.

7) Failure of Member to re-apply for service upon notification by the Corporation that Member no longer meets the terms of the service classification originally applied for under the original service application.

8) Failure to pay a delinquent account billed by the Corporation for sewer utility service provided by Olmito Water Supply Corporation (OWSC) pursuant to the Corporation's Agreement with the OWSC. (See Miscellaneous Transaction Forms - Figure 1: 30 TAC 291.85 (e)(2) Appendix A "SEWER BILLING SERVICES FOR A RETAIL PUBLIC UTILITY PROVIDED BY A NON-PROFIT WATER SUPPLY CORPORATION")

9) Failure to pay charges for repairs made by the Corporation according to SIGNED "MEMBER'S EMERGENCY REPAIR REQUEST AGREEMENT" with the next monthly water service bill or by entering into a payment extension agreement within the prescribed payment period. (See Miscellaneous Transaction Forms – Member/Applicant Emergency/Repair Request Agreement. Ref. TNRCC 291.88. (c) (3))

b.  **Disconnection Without Notice** -- Water utility service may be disconnected without notice for any of the following conditions:

1) A known dangerous or hazardous condition exists for which service may remain disconnected for as long as the condition exists, including but not limited to a violation of the Texas Sanitation and Health Protection Law 4477-1, or there is reason to believe a dangerous or hazardous condition exists and the Member refuses to allow access for the purpose of confirming the existence of such condition and/or removing the dangerous or hazardous condition (Section E. 3. d., E. 24., 30 TAC 290.46 (j) );

2) Service is connected without authority by a person who has not made application for service or who has reconnected service without authority following termination of service for nonpayment; and

3) In instances of tampering with the Corporation's meter or equipment, by-passing the meter or equipment, or other diversion of service. *NOTE*: Where reasonable, given the nature of the reason for disconnection, a written statement providing notice of disconnection and the reason therefore shall be posted at the place of common entry or upon the front door of each affected residential unit as soon as possible after service has been disconnected.

c.  **Disconnection Prohibited** -- Utility service may not be disconnected for any of the following reasons:

1) Failure of the Member to pay for merchandise or charges for non-utility service provided by the Corporation, unless an agreement exists between the Applicant and the Corporation

whereby the Member guarantees payment of non-utility service as a condition of service (tnrcc 291.88 (c)(3)); *NOTE:* In addition to other charges this would apply to charges as per the "Member/Applicant Emergency Repair Request Agreement. (See Miscellaneous Transaction Forms)

2) Failure of the Member to pay for a different type or class of utility service unless a fee for such service is included in the same bill;

3) Failure of the Member to pay charges arising from an underbilling occurring due to any misapplication of rates more than six (6) months prior to the current billing;

4) Failure of the Member to pay the account of another Member as guarantor thereof, unless the Corporation has in writing the guarantee as a condition precedent to service;

5) Failure of the Member to pay charges arising from an underbilling due to any faulty metering, unless the meter has been tampered with or unless such underbilling charges are due under the Inoperative Meters subsection E. 19. of this tariff.

6) Failure of the Member to pay estimated bill other than a bill rendered pursuant to an approved meter reading plan, unless the Corporation is unable to read the meter due to circumstances beyond its control;

7) In response to a request for disconnection by an Owner/Member of rental property where the renter is billed directly by the Corporation as authorized by the owner, and the renter's account is not scheduled for disconnection under the Rules for Disconnection of Service in this Tariff.

d. **Disconnection on Holidays and Weekends** -- Unless a dangerous condition exists or the Member requests disconnection, service shall not be disconnected on a day, or on a day preceding a day, when personnel of the Corporation are not available to the public for the purpose of making collections and reconnecting service.

e. **Disconnection Due to Utility Abandonment** -- The Corporation may not abandon a Member or a Certificated Service Area without written notice to its Members and all similar neighboring utilities and approval from the Texas Natural Resource Conservation Commission.

f. **Disconnection of Temporary Service** -- When an applicant with a Temporary service fails to comply with the conditions stated in the Service Application and Agreement Form or other rules of this Tariff service may be terminated with notice.

16. *Billing Cycle Changes.* The Corporation reserves the right to change its billing cycles if the workload requires such practice. After a billing period has been changed, the billings shall be sent on the new change date unless otherwise determined by the Corporation.

17. *Back-billing.* The Corporation may back-bill a Member for up to four (4) years (48 months) for meter error, misapplied meter multiplier, incorrect meter readings, or error in computing a Member's bill. Failure to pay the most recent six (6) months billing will result in disconnection of service. Back-billing shall not extend beyond current Membership except in cases involving the transfer of a Membership conditioned upon payment of delinquent obligations by the Transferee, as provided in Section E. Sub-Section 6.h.

18. *Disputed Bills.* In the event of a dispute between the Member and the Corporation regarding any bill, the Corporation shall forthwith make and conduct an investigation as shall be required by the particular case, and report the results in writing thereof to the Member. All disputes under this Subsection must be submitted to the Corporation, in writing, prior to the due date posted on said bill except in cases involving the transfer of a Membership conditioned on payment of delinquent obligations by the Transferee, as provided in Section E. Sub-Section 6.h.

Approved _____

19. *Inoperative Meters.*  Water meters found inoperative will be repaired or replaced within a reasonable time.  If a meter is found not to register for any period, unless by-passed or tampered with, the Corporation shall make a charge for units used, but not metered, for a period not to exceed three (3) months, based on amounts used under similar conditions during the period preceding or subsequent thereto, or during corresponding periods in previous years.

20. *Bill Adjustment Due To Meter Error.*  The Corporation shall test any Member's meter upon written request of the Member.  In the event the meter tests within the accuracy standards of The American Water Works Association, a test fee as prescribed in Section G of this Tariff shall be imposed.  In the event the test results indicate that the meter is faulty or inaccurate, the test fee shall be waived, the meter shall be calibrated or replaced, and a billing adjustment may be made as far back as six (6) months but not extending beyond current Membership except in cases involving the transfer of a Membership conditioned on payment of delinquent obligations by the Transferee, as provided in Section E. Sub-Section 6.h.  The billing adjustment shall be made to the degree of the meter's inaccuracy as determined by the test.  The Member shall complete a Meter Test Request Form prior to the test.  (See Misc. Transaction Forms.)

21. *Meter Tampering and Diversion*  **CRIMINAL MISCHIEF.**  For purposes of these Sections, meter-tampering, by-passing, or diversion shall all be defined as tampering with the Corporation's service equipment, by-passing the same, or other instances of diversion, such as:
    a.  removing a locking or shut-off devise used by the Corporation to discontinue service,
    b.  physically disorienting the meter,
    c.  attaching objects to the meter to divert service or to by-pass,
    d.  inserting objects into the meter, and
    e.  other electrical and mechanical means of tampering with, by-passing, or diverting service,
    f.  the use of unauthorized taps or connections to any Corporation pipe(s) or appurtenances to acquire water or service.  (Flush Valves, tanks, wells, treatment plants and main or service lines)
    The burden of proof of meter-tampering, by-passing, or diversion is on the Corporation. Photographic evidence or any other reliable and credible evidence may be used; however, any evidence shall be accompanied by a sworn affidavit by the Corporation's staff when any action regarding meter-tampering as provided for in these Sections is initiated.  A court finding of meter tampering may be used instead of photographic or other evidence, if applicable.  Unauthorized users of services of the Corporation shall be prosecuted to the extent allowed by law under the Texas Penal Code 28.03.

22. *Meter Relocation.*  Relocation of services shall be allowed by the Corporation provided that:
    a.  No transfer of Membership is involved;
    b.  An easement for the proposed location has been granted to the Corporation;
    c.  The Member pays the actual cost of relocation plus administrative fees, and
    d.  Service capacity is available at proposed location.

23. *Prohibition of Multiple Connections To A Single Tap.*  No more than one (1) residential, commercial, or industrial service connection is allowed per meter.  The Corporation may consider allowing an apartment building or mobile home/RV park to apply as a  "Master Metered Account" and have a single meter (This refers to Section E. 2. c. (4)).  Any unauthorized submetering or diversion of service shall be considered a Multiple Connection and subject to disconnection of service.  If the Corporation has

Approved _____

sufficient reason to believe a Multiple Connection exists, the Corporation shall discontinue service under the Disconnection with Notice provisions of this Tariff. (see Sample Application Packet RUS-TX Bulletin 1780-9 (Rev. 5/99) )

24. *Member's Responsibility.*

    a.  The Member shall provide access to the meter as per service agreement. If access to the meter is hindered or denied preventing the reading of the meter, an estimated bill shall be rendered to the Member for the month; and a notice shall be sent to the effect that access could not be gained. If access is denied for three (3) consecutive months after proper notification to the Member, then service shall be discontinued and the meter removed with no further notice. (Section E. 3. d. )

    b.  The Member shall be responsible for compliance with all utility, local, and state codes, requirements, and regulations concerning on-site service and plumbing facilities.

        1)  All connections shall be designed to ensure against back-flow or siphonage into the Corporation's water supply. In particular, livestock water troughs shall be plumbed above the top of the trough with air space between the discharge and the water level in the trough. (30 TAC 290.46)

        2)  The use of pipe and pipe fittings that contain more than 8.0% lead or solder and flux that contain more than 0.2% lead is prohibited for any plumbing installation or repair of any residential or non-residential facility providing water for human consumption and connected to the Corporation's facilities. Customer service pipelines shall be installed by the applicant and shall be a minimum of SDR-26 PVC pipe. (30 TAC 290.46 )

        3)  All pipe and fittings used by the customer to convey sewage from its source to the sewer line must be a minimum of D-3034, SDR-35 or equivalent, 4-inch diameter pipe. No DWV (drain waste and vent) pipe or fittings will be allowed. All joints must be watertight and pipe must be installed to recommended grade. All non-household sewer customers who have potential for dirt, grit, sand, grease, oil, or similar substances must install and maintain a trap ahead of their entrance to the Corporation's sewer collection piping. A double cleanout is required at the property line and recommended at the house. The Corporation may impose other site-specific requirements. All sewer and potable water service pipeline installations must be a minimum of nine feet apart and meet all applicable plumbing standards for crossings, etc. Requirements for Traps:

        (A)  Discharges requiring a trap include but are not limited to:

            (i)  grease or waste containing grease in amounts that will impede or stop the flow in the public sewers;

            (ii)  oil, flammable wastes;

            (iii)  sand, and other harmful ingredients.

        (B)  Any person responsible for discharges requiring a trap shall, at his own expense, and as required by the approving authority:

            (i)  Provide equipment and facilities of a type and capacity approved by the approving authority;

            (ii)  locate the trap in a manner that provides ready and easy accessibility for cleaning and inspection; and

            (iii)  maintain the trap in effective operating condition.

        (C)  Approving Authority Review and Approval (By the Board of Directors or Agency):

            (i)  If pretreatment or control is required, the approving authority shall review and approve design and installation of equipment and processes.

            (ii)  The design and installation of equipment and processes must conform to all

Approved _____

applicable statutes, codes, ordinances and other laws.

    (iii)    Any person responsible for discharges requiring pretreatment, flow equalizing or other facilities shall provide and maintain the facilities in effective operating condition at his own expense.

Service shall be discontinued without further notice when installations of new facilities or repair of existing facilities are found to be in violation of this regulation until such time as the violation is corrected.

c.  A Member owning more than one (1) Membership Certificate shall keep all payments current on all accounts. Failure to maintain current status on all accounts shall be enforceable as per Service Application and Agreement executed by the Member.

d.  The Corporation's ownership and maintenance responsibility of water supply and metering equipment shall end at the meter or other service equipment. Therefore, all water usage registering upon and/or damages occurring to the metering equipment owned and maintained by the Corporation shall be subject to charges as determined by the Corporation's Tariff as amended from time to time by the Board of Directors.

e.  The Corporation shall require each Member to have a cut-off valve on the Member's side of the meter for purposes of isolating the Member's service pipeline and plumbing facilities from the Corporation's water pressure. The valve shall meet AWWA standards (a ball valve is preferred). The Member's use of the Corporation's curb/angle stop or other similar valve for such purposes is prohibited. Any damage to the Corporation's equipment shall be subject to service charges. (This additional cut-off valve may be installed as a part of the original meter installation by the Corporation.)

Approved _____

## SECTION F.
## DEVELOPER, SUBDIVISION AND NON-STANDARD SERVICE REQUIREMENTS

1.  ***Corporation's Limitations.***  All Applicants shall recognize that the Corporation must comply with local, state, and federal rules and regulations as promulgated from time to time, and with covenants of current indebtedness.  The Corporation is not required to extend retail utility service to an Applicant in a subdivision where the responsible party (Applicant/Developer) of the applicable property (subdivision) has failed to comply with the terms of this policy.  Section 13.2502 of the Texas Water Code requires that notice be given herein or by publication (see Miscellaneous Transaction Forms) or by alternative means to the Developers/Applicants.  (Also see Section F. 11.)

2.  ***Purpose.***  It is the purpose of this Section to define the process by which the specific terms and conditions for service to subdivisions and other Non-Standard applicants are determined including the Developer's/Applicant's and the Corporation's respective costs.

3.  ***Application of Rules.***  This Section is applicable to line extensions, road bores, subdivisions, additions to subdivisions, developments, or whenever additional service facilities are required.  For the purposes of this Tariff, Applications subject to this Section shall be defined as Non-Standard.  This Section may be altered or suspended for planned facility expansions when the Corporation extends its indebtedness.  The General Manager or his appointee of the Corporation shall interpret on an individual basis whether or not the Applicant's service request shall be subject to all or part of the conditions of this Section.

4.  ***Non-Standard Service Application.***  The Applicant shall meet the following requirements prior to the initiation of a Service Contract by the Corporation:
    a.  The Applicant shall provide the Corporation a completed Service Application And Agreement giving special attention to the item on SPECIAL SERVICE NEEDS OF THE APPLICANT.
    b.  A final plat approved by the Corporation must accompany the Application showing the Applicant's requested service area.  The plat must be approved by all governmental authorities exercising jurisdiction over lot sizes, sewage control, drainage, right-of-way, and other service facilities.  Plans, specifications, and special requirements of such governmental authorities shall be submitted with the plat.  Applicants for single taps involving extension or upsizing of facilities shall be required to submit maps or plans detailing the location of the requested extension and details of demand requirements.
    c.  At the time the Applicant submits the Application, a Non-Standard Service Investigation Fee (See Section G) to cover initial administrative, legal and engineering fees shall be paid to the Corporation.  The balance of actual expenses incurred as a result of efforts by the Corporation to study service requirements of the Applicant shall be refunded to the Applicant and the Applicant shall pay any additional expenses.
    d.  If after the service investigation has been completed, the Corporation determines that the Applicant's service request is for property outside the area described in the Corporation's Certificate of Convenience and Necessity, service may be extended provided that:

Approved _____

     1). The service location is contiguous to or within one-fourth (1/4) mile of the Corporation's Certificated Service Area;

     2). The service location is not in an area receiving similar service from another utility;

     3). The service location is not within another utility's Certificate of Convenience and Necessity; and

     4). If the Corporation extends service under these conditions, the Applicant shall fully support any subsequent efforts by the Corporation to amend its Certificate of Convenience and Necessity to include the applicant's property within the service area.

5. ***Design.*** The Corporation shall study the design requirements of the Applicant's required facilities prior to initiation of a Service Agreement by adopting the following schedule:

    a. The Corporation's Engineer or a consulting engineer shall design all service facilities for the Applicant's requested service within the Corporation's specifications or within certain codes and specifications of neighboring municipalities for all Non-Standard Service Applications which lie within the enforced extra territorial jurisdiction of a municipality.

    b. The Consulting Engineer's fees shall be paid out of the Non-Standard Service Investigation Fee, provided the actual costs of the Engineer's services do not exceed the amount of the Non-Standard Service Investigation Fee allotted for engineering services. If the fee for the Engineer's services exceed the allotted fee, the Applicant shall pay the balance of engineering fees prior to commencing with the service investigation.

    c. The Consulting Engineer shall submit to the Corporation a set of detailed plans, specifications, and cost estimates for the project.

    d. If no governmental authority imposes other design criteria on the Applicant's service request, the Corporation's Engineer shall design all facilities for any Applicant to meet the demand for service as platted and/or requested in the plans or plat submitted in application for service. The Corporation reserves the right to upgrade design of service facilities to meet future demands provided however, that the Corporation shall pay the expense of such upgrading in excess of the Applicant's facility requirements.

6. ***Non-Standard Service Contract.*** All Applicants requesting or requiring Non-Standard Service shall enter into a written contract, drawn up by the Corporation's Attorney, in addition to submitting the Corporation's Service Application and Agreement. Said contract shall define the terms of service prior to construction of required service facilities. Guidelines for the service contract may include, but are not limited to:

    a. All costs associated with required administration, design, construction, and inspection of facilities for water service to the Applicant's service area and terms by which these costs are to be paid.

    b. Procedures by which the Applicant shall accept or deny a contractor's bid, thereby committing to continue or discontinue the project.

    c. Equity Buy-In Fee (Front-end Capital Contributions) and Impact Fees required by the Corporation in addition to the other costs required under this Section.

    d. Monthly Reserved Service Charges as applicable to the service request.

Approved _____

e.  Terms by which reserved service shall be provided to the Applicant and duration of reserved service with respect to the impact the Applicant's service request will have upon the Corporation's system capability to meet other service requests.

f.  Terms by which the Corporation shall administer the Applicant's project with respect to:
   1) Design of the Applicant's service facilities;
   2) Securing and qualifying bids;
   3) Execution of the Service Agreement;
   4) Selection of a qualified bidder for construction;
   5) Dispensing advanced funds for construction of facilities required for the Applicant's service;
   6) Inspecting construction of facilities; and
   7) Testing facilities and closing the project.

g.  Terms by which the Applicant shall indemnify the Corporation from all third party claims or lawsuit in connection with the project contemplated.

h.  Terms by which the Applicant shall deed all constructed facilities to the Corporation and by which the Corporation shall assume operation and maintenance responsibility, including any enforcement of warranties in connection with construction of the Applicant's project.

i.  Terms by which the Applicant shall grant title or easement for right-of-ways, constructed facilities, and facility sites and/or terms by which the Applicant shall provide for the securing of required right-of-ways and sites.

j.  Terms by which the Board of Directors shall review and approve the Service Contract pursuant to current rules, regulations, and bylaws.

7.  ***Property and Right-of-Way Acquisition.***  With regard to construction of facilities, the Corporation shall require private right-of-way easements or private property as per the following conditions:

a.  If the Corporation determines that right-of-way easements or facility sites outside the Applicant's property are required, the Corporation shall require the Applicant make good faith efforts to secure easements or title to facility sites in behalf of the Corporation. All right-of-way easements and property titles shall be researched, validated, and filed by the Corporation at the expense of the Applicant. (See Sample Application Packet Right of Way Easement, East Rio Hondo Water Supply Corporation)

b.  All facilities required to be installed in public right-of-ways in behalf of the Applicant, due to inability to secure private right-of-way easements, shall be subject to costs equal to the original cost of facility installation for those facilities in public right-of-ways, plus the estimated cost of future relocation to private right-of-way, or subject to the cost of installation under condemnation procedures, whichever is most desired by the Applicant.

c.  The Corporation shall require an exclusive dedicated right-of-way on the Applicant's property (as required by the size of the planned facilities and as determined by the Corporation) and title to property required for other on-site facilities.

    d.   Easements and facilities sites shall be prepared for the construction of the Corporation's pipeline and facility installations in accordance with the Corporation's requirements and at the expense of the Applicant.

8.    ***Bids For Construction.***  The Corporation's Engineer shall advertise for bids for the construction of the Applicant's proposed facilities to contractors on the Corporation's list of approved contractors. Plans and specifications shall be made available, with or without charge, to prospective bidders. The Corporation reserves the right to reject any bid or contractor. The Corporation will allow a contractor not on the Corporation's list of approved contractors to bid the construction contract with a 10% inspection fee paid by the developer at the time of bid. The Corporation shall generally award the contract to the lowest and best bidder in accordance with the following criteria:

    a.   The Applicant shall sign the Service Contract noting willingness to proceed with the project and shall pay all costs in advance of construction associated with the project;

    b.   The Contractor shall provide an adequate bid bond under terms acceptable to the Corporation;

    c.   The Contractor shall secure adequate performance and payment bonding for the project under terms acceptable to the Corporation;

    d.   The Contractor shall supply favorable references acceptable to the Corporation;

    e.   The Contractor shall qualify with the Corporation as competent to complete the work; and

    f.   The Contractor shall provide adequate certificates of insurance as required by the Corporation.

9.    ***Pre-Payment For Construction and Service.***  After the Applicant has executed the Service Agreement, the Applicant shall pay to the Corporation all costs necessary for completion of the project prior to construction and in accordance with the terms of the Service Contract.

10.    ***Construction.***

    a.   All roadwork pursuant to state, county and/or municipal standards (if applicable) shall be completed prior to facility construction to avoid future problems resulting from road right-of-way completion and excavation. Subject to approval of the requisite authority, road sleeves may be installed prior to road construction to avoid road damage during construction of Applicant's facilities.

    b.   The Corporation shall, at the expense of the Applicant, inspect the facilities to ensure that Corporation standards are achieved.

    c.   Construction plans and specifications shall be strictly adhered to, but the Corporation reserves the right to change-order any specifications, due to unforeseen circumstances during the design phase, to better facilitate operation of the Applicant's facility. All change-order amounts shall be charged to the Applicant.

11   ***Service within Subdivisions***-The Corporation's objective to provide service to any customer located within subdivision governed by this section is strictly limited to the nonstandard service specified by the Applicant. The purchasers of any lots who do not receive service

Approved _____

because this service has not been specified or paid for by the Applicant shall have no recourse to the Corporation but may have recourse to the Applicant/Developer.

Approved _____

# SECTION G.
## RATES AND SERVICE FEES

Unless specifically defined in this Tariff, all fees, rates, and charges as stated shall be non-refundable.

1. ***Service Investigation Fee.*** The Corporation shall conduct a service investigation for each service application submitted at the Corporation office. An initial determination shall be made by the Corporation, without charge, as to whether the service request is Standard or Non-Standard. An investigation shall then be conducted and the results reported under the following terms:
   a. All Standard Service requests shall be investigated without charge and all applicable costs for providing service shall be quoted in writing to the Applicant within ten (10) working days of application.
   b. All Non-Standard Service requests shall be subject to a fee, appropriate to each project, of sufficient amount to cover all administrative, legal, and engineering fees associated with investigation of the Corporation's ability to deliver service to the Applicant to;
      (1) provide cost estimates of the project,
      (2) to present detailed plans and specifications as per final plat,
      (3) to advertise and accept bids for the project,
      (4) to present a Non-Standard Service Contract to the Applicant, and
      (5) to provide other services as required by the Corporation for such investigation. A Non-Standard Service Contract shall be presented to the Applicant within a suitable amount of time as determined by the complexity of the project. (See Section F.)

2. ***Membership Fee.*** At the time the application for service is approved, a refundable Membership Fee must be paid before service shall be provided or reserved for the Applicant by the Corporation.
   a. The Membership Fee for water service is $100.00 for each service unit.

3. ***Easement Fee.*** When the Corporation determines that private right-of-way easements and/or facilities sites are necessary to provide service to the Applicant, the Applicant shall be required to make good faith efforts to secure easements in behalf of the Corporation and/or pay all costs incurred by the Corporation in validating, clearing, and retaining such right-of-way in addition to tap fees otherwise required pursuant to the provisions of this Tariff. The costs may include all legal fees and expenses necessary to attempt to secure such right-of-way and/or facilities sites in behalf of the Applicant. (See Section E. 2. c. (2), Section F. 7. a.)

4. ***Installation Fee.*** The Corporation shall charge an installation fee for service as follows:
   a. **Standard Service** shall include all current labor, materials, engineering, legal, customer service inspection, and administrative costs necessary to provide individual metered water or wastewater service and shall be charged on a per tap basis as computed immediately prior to such time as metered service is requested and installed. Standard water service fee is $200.00 for each service unit.
   b. **Non-Standard Service** shall include any and all construction labor and materials, inspection, administration, legal, and engineering fees, as determined by the Corporation under the rules of Section F of this Tariff.
   c. Standard and Non-Standard Service Installations shall include all costs of any pipeline relocations as per Section E.2.c.(6) of this Tariff.

Approved _____

5.    ***Impact Fee.*** In addition to the Membership Fee, each Applicant shall be required to contribute capital in an amount projected to defray the cost of required water system capacity. This fee shall be assessed immediately prior to providing or reserving service for each tap/lot and shall be assigned and restricted to the tap/lot for which the service was originally requested. The impact fee for water system capacity is $1,012.50 per connection.

6.  ***Monthly Charges.***
   a.  **Service Availability Charge**
      (1) Water Service - The monthly charge for metered water service, which may or may not include allowable gallonage, is based on demand by meter size. Each charge is assessed based on the number of 5/8" X 3/4" meters (service units), as per American Water Works Association maximum continuous flow specifications (see Miscellaneous), equivalent to the size indicated and is used as a base multiplier for the Service Availability Charge and allowable gallonage. Rates and equivalents are as follows:

|  |  |  |  |
|---|---|---|---|
| 5/8" X 3/4" | 1.0 | 14.00 | 2000 |
| 1.0" | 2.5 | 35.00 | 5000 |

Approved _____

# SECTION H.
# RETAIL DROUGHT CONTINGENCY
# AND
# EMERGENCY WATER DEMAND MANAGEMENT PLAN

1. ***Declaration of Policy, Purpose, and Intent.*** In order to conserve the available water supply and protect the integrity of water supply facilities, with particular regard for domestic water use, sanitation, and fire protection, and to protect and preserve public health, welfare, and safety and minimize the adverse impacts of water supply shortage or other water supply emergency conditions, the East Rio Hondo Water Supply Corporation (ERHWSC) hereby adopts the following regulations and restrictions on the delivery and consumption of water. Water uses regulated or prohibited under this Drought Contingency Plan (the Plan) are considered to be non-essential and continuation of such uses during times of water shortage or other emergency water supply condition are deemed to constitute a waste of water.

2. ***Public Involvement.*** Opportunity for the public to provide input into the preparation of the Plan was provided by the ERHWSC by means of providing public notice of a public meeting held on June 3, 2002, to accept input on the Plan.

3. ***Public Education.*** Upon initial ERHWSC Board approval of the plan, ERHWSC will provide all customers written notification that the plan is completed. The notification will address the water supply and financial impacts the plan may have upon the customers, and will inform the customers of its availability upon request. The ERHWSC will periodically provide the public with information about the Plan, including information about the conditions under which each stage of the Plan is to be initiated or terminated and the drought response measures to be implemented in each stage. This information will be provided by means of a post card mailing to each customer, statements on billing postcards, public announcements via radio and television, and posting of conservation stages in public areas such as local U.S. Post Offices and the ERHWSC main office.

4. ***Coordination with Regional Water Planning Group.*** The service area of the ERHWSC is located within the Rio Grande Regional Water Planning Group (Region M) and ERHWSC has provided a copy of this Plan to the Rio Grande Valley Development Council and the Rio Grande Valley Regional Water Planning Group (Region M).

5. ***Authorization.*** The ERHWSC General Manager, or his/her designee is hereby authorized and directed to implement the applicable provisions of this Plan upon determination that such implementation is necessary to protect public health, safety, and welfare. The ERHWSC General Manager or his/her designee shall have the authority to initiate or terminate drought or other water supply emergency response measures as described in this Plan.

6. ***Application.*** The provisions of this Plan shall apply to all persons, customers, and property utilizing water provided by the ERHWSC. The terms "person" and "customer" as used in the Plan include individuals, corporations, partnerships, associations, and all other legal entities.

7. ***Definitions.*** For the purposes of this Plan, the following definitions shall apply:

Aesthetic water use -- water use for ornamental or decorative purposes such as fountains, reflecting pools, and water gardens.

Approved _____

_____          _____

Commercial and institutional water use -- water use, which is integral to the operations of commercial and non-profit establishments and governmental entities such as retail establishments, hotels and motels, restaurants, and office buildings.

Conservation -- those practices, techniques, and technologies that reduce the consumption of water, reduce the loss or waste of water, improve the efficiency in the use of water or increase the recycling and reuse of water so that a supply is conserved and made available for future or alternative uses.

Customer -- any person, company, or organization using water supplied by ERHWSC.

Domestic water use -- water use for personal needs or for household or sanitary purposes such as drinking, bathing, heating, cooking, sanitation, or for cleaning a residence, business, industry, or institution.

Industrial water use -- the use of water in processes designed to convert materials of lower value into forms having greater usability and value.

Landscape irrigation use -- water used for the irrigation and maintenance of landscaped areas, whether publicly or privately owned, including residential and commercial lawns, gardens, golf courses, parks, and rights-of-way and medians.

Non-essential water use -- water uses that are not essential nor required for the protection of public, health, safety, and welfare, including:

    a.    irrigation of landscape areas, including parks, athletic fields, yards, and golf courses, except otherwise provided under this Plan;

    b.    use of water to wash any motor vehicle, motorbike, boat, trailer, airplane or other vehicle;

    c.    use of water to wash down any sidewalks, walkways, driveways, parking lots, tennis courts, or other hard-surfaced areas;

    d.    use of water to wash down buildings or structures for purposes other than immediate fire protection;

    e.    flushing gutters or permitting water to run or accumulate in any gutter or street;

    f.    use of water to fill, refill, or add to any indoor or outdoor swimming pools or Jacuzzi-type pools;

    g.    use of water in a fountain or pond for aesthetic or scenic purposes except where necessary to support aquatic life; and

    h.    failure to repair a controllable leak(s) within a reasonable period after having been given notice directing the repair of such leak(s).

8. ***Triggering Criteria for Initiation and Termination of Drought Response Stages.*** The ERHWSC General Manager, or his/her designee, shall monitor water supply and/or demand conditions on a monthly basis and shall determine when conditions warrant initiation or termination of each stage of the Plan. Public notification of the initiation or termination of drought response stages shall be by means of publication in the Valley Morning Star, direct mail to each customer, and signs posted in public places. The triggering criteria described below are based on an analysis of the vulnerability of the water source under previous drought conditions.

    a.  Stage 1 - Mild Water Shortage Conditions

(1)     Requirements for initiation - Customers shall be requested to voluntarily conserve water and adhere to the prescribed restrictions on certain water uses, defined in Section VII – Definitions, when the Falcon and Amistad Reservoirs reach 51% of capacity as determined by the Texas Natural Resource Conservation Commission (TNRCC).

(2)     Requirements for termination - Stage 1 of the Plan may be rescinded when all of the conditions listed as triggering events have ceased to exist for a period of 30 consecutive days.

  b.  Stage 2 - Severe Water Shortage Conditions

(1)     Requirements for initiation - Customers shall be required to comply with the requirements and restrictions on certain non-essential water uses for Stage 2 of this Plan when (a) Cameron County Irrigation District Number 2 disallows farm irrigation water use, (b) distribution system pressures fall below 35 psi requirements due to system demand for two consecutive days, or (c) ERHWSC consumer demand exceeds 85% of ERHWSC plant capacity for 15 days out of any consecutive 30 day period.

(2)     Requirements for termination - Stage 2 of the Plan may be rescinded when all of the conditions listed as triggering events have ceased to exist for a period of 30 consecutive days.  Upon termination of Stage 2, Stage 1 becomes operative.

  c.  Stage 3 - Critical Water Shortage Conditions

(1)     Requirements for initiation - Customers shall be required to comply with the requirements and restrictions on certain non-essential water uses for Stage 3 of this Plan when (a) Falcon and Amistad Reservoirs reach 15% of capacity as determined by the TNRCC, (b) distribution system pressures fall below 20 psi due to system demand for two consecutive days, or (c) ERHWSC consumer demand exceeds 90% of ERHWSC plant capacity for 15 days out of any consecutive 30 day period.

(2)     Requirements for termination - Stage 3 of the Plan may be rescinded when all of the conditions listed as triggering events have ceased to exist for a period of 30 consecutive days.  Upon termination of Stage 3, Stage 2 becomes operative.

  d.  Stage 4 - Emergency Water Shortage Conditions

(1)     Requirements for initiation - Customers shall be required to comply with the requirements and restrictions for Stage 4 of this Plan when the ERHWSC General Manager, or his/her designee, determines that a water supply emergency exists based on:  (a) major water line breaks, or pump or system failures occur, which cause unprecedented loss of capability to provide water service; (b)  natural or man-made contamination of the water supply source(s); or (c)  rapidly occurring low-pressure conditions (less than 20 psi) due to any reason.

(2)     Requirements for termination – Stage 4 of the Plan may be rescinded when all of the conditions listed as triggering events have ceased to exist.  Upon termination of Stage 4, the General Manager will determine which Stage will follow.

  e.  Water Rationing

(1)     Requirements for initiation - Customers shall be required to comply with the requirements and restrictions for Stages 2, 3, and 4 of this Plan when these stages are declared to exist by the ERHWSC General Manager.

(2)     Requirements for termination – Water rationing may be rescinded when all of the conditions listed as triggering events for Stage 2 have ceased to exist for 30 consecutive days.

9.  ***Drought Response Stages.***  The ERHWSC General Manager, or his/her designee, shall monitor water supply and/or demand conditions on a daily basis and, in accordance with the triggering criteria set forth in Section 8 of the Plan, shall determine that a mild, severe, critical, or emergency condition exists and

Approved _____

shall implement the following actions upon publication of notice in a newspaper of general circulation, and posting in public buildings and the ERHWSC main office. The ERHWSC General Manager will notify via telephone the TNRCC, major water users, and critical water users (i.e. health clinics) as determined as necessary. Rate structure changes in Stages II & III will apply to billing following the first full service month after notification.

a.  Stage 1 - Mild Water Shortage Conditions

(1) Goal: Achieve a voluntary reduction in daily water demand.

(2) Supply Management Measures: ERHWSC will manage limited water resources with the following measures:

(a) Recycle backwash water to the front of the plant after decanting the settled water away from the settled sludge. This process eliminates the loss of the backwash water to evaporation or disposal.

(b) Flushing of water mains will be conducted only when customer complaints of taste and odor are reported, or when insufficient chlorine residuals are measured near the flush valve.

(c) ERHWSC will be an active partner in the Rio Grande Valley Water Smart Coalition providing public education through displays, radio and television announcements, and water conservation education in local school districts.

(3) Voluntary Water Use Restrictions:

(a) Water customers are requested to voluntarily minimize the irrigation of landscaped areas and lawns;

(b)     Water customers are requested to practice water conservation and to minimize or discontinue water use for non-essential purposes.

b.  Stage 2 – Severe Water Shortage Conditions

(1) Goal: Achieve a reduction in daily water demand.

(2) Supply Management Measures: All Supply Management measures noted in Stage 1 above.

(3) Water Use Restrictions: Under threat of penalty for violation, the following water use restrictions shall apply to all persons:

(a) Irrigation of landscaped or lawn areas with hose-end sprinklers or automatic or manual irrigation systems shall be limited to the hours of 12:00 midnight until 8:00 a.m. and between 8:00 p.m. and 12:00 midnight. However, irrigation of landscaped areas is permitted at anytime if it is by means of a hand-held hose, a faucet filled bucket or watering can, or drip irrigation system.

(b) Use of water to wash any motor vehicle, motorbike, boat, trailer, airplane or other vehicle is allowed when done with a hand-held bucket or a hand-held hose equipped with a positive shutoff nozzle for quick rinses.

(c) Operation of any ornamental fountain or pond for aesthetic or scenic purposes is prohibited except where necessary to support aquatic life.

(d) Use of water from flush valves shall be limited to fire fighting, related activities, or other activities necessary to maintain public health, safety, and welfare, except that use of water from designated flush valves for construction purposes may be allowed with meter service from the ERHWSC.

(e) Non-essential water uses are prohibited

Approved _____

(4) Water Rate Structure:
    (a) The Water Rate Structure for meters shall be as follows:

| Starting Value | Category Maximum | Cost S per Thousand |
|---|---|---|
| | Base Usage | Base Rate |
| 1 gal above Base | 8,000 gal above Base | $1.80 |
| 8,001 gal above Base | 18,000 gal above Base | $2.50 |
| 18,001 above Base | 48,000 above Base | $3.75 |
| 48,001 above Base | Any greater usage | $5.00 |

(b) Customers with livestock operations will be provided an allotment of 1500-gallons per month (50-gallons per day) per head of livestock, at $3.75 per thousand-gallons. This livestock allotment will not be utilized in calculating the customer's bill until the usage exceeds 48,000-gallon above base usage. Customers under this category must update their Service Application Form verifying the number of livestock served by their meter. It is the customer's responsibility to go to the ERHWSC office to complete and sign the form claiming livestock allotment. The customer must also agree to allow ERHWSC to verify the number of livestock on their water service with an accompanied walk-through of their property. If ERHWSC requests this walk-through, and the customer does not comply with the request within 3 business days, billing for that month shall be based upon the rate structure noted above.

(c) The Water Rate Structure for Industrial/Commercial Customers shall be the same as noted above, but will not exceed $3.75 per thousand. Industrial customers must comply with all water use restrictions listed above.

(5) Water Rights Surcharge: In the event that TNRCC requires Cameron County Irrigation District #2 (CCID#2) to calculate push water volume in order to supply ERHWSC with raw water, and CCID#2 assesses the cost of push water to ERHWSC, or ERHWSC purchases the push water from other sources, then ERHWSC will pass the cost of the push water equally onto the Membership on a per service unit basis, based upon the number of service units in existence at the time of the assessment.

c.  Stage 3 – Critical Water Shortage Conditions
    (1) Goal: Achieve a substantial reduction in daily water demand.
    (2) Supply Management Measures: All items noted in Stage 1 will continue to be implemented with the limitation of flushing water at flush valves for public health reasons only.
    (3) Water Use Restrictions: All requirements of Stages 1 and 2 shall remain in effect during Stage 3 except:
        (a) Irrigation of lawns and landscaped areas shall be by means of hand-held hoses, hand-held buckets, or drip irrigation only. The use of hose-end sprinklers or permanently installed automatic sprinkler systems are prohibited at all times.
        (b) Use of water to wash any motor vehicle, motorbike, boat, trailer, airplane or other vehicle not in the immediate interest of public health, safety, and welfare is prohibited.
        (c) The filling, refilling, or adding of water to swimming pools, wading pools, and Jacuzzi-type pools is prohibited.
    (4) Water Rate Structure:
        (a) The Water Rate Structure shall be as follows:

| Starting Value | Category Maximum | Cost $ per Thousand |
|---|---|---|
| | Base Usage | Base Rate |
| 1 gal above Base | 6,000 gal above Base | $1.80 |
| 6,001 gal above Base | 14,000 gal above Base | $2.50 |
| 14,001 above Base | 23,000 above Base | $3.75 |
| 23,001 above Base | Any greater usage | $5.00 |

(b) Customers with livestock operations will be provided an allotment of 1500-gallons per month (50-gallons per day) per head of livestock, at $3.75 per thousand-gallons. This livestock allotment will not be utilized in calculating the customer's bill until the usage exceeds 23,000-gallon above base usage. Customers under this category must update their Service Application Form verifying the number of livestock served by their meter. It is the customer's responsibility to go to the ERHWSC office to complete and sign the form claiming livestock allotment. The customer must also agree to allow ERHWSC to verify the number of livestock on their water service with an accompanied walk-through of their property. If ERHWSC requests this walk-through, and the customer does not comply with the request within 3 business days, billing for that month shall be based upon the rate structure noted above.

(c) The Water Rate Structure for Industrial/Commercial Customers shall be the same as noted above, but will not exceed $3.75 per thousand. Industrial customers must comply with all water use restrictions listed above.

(5) Water Rights Surcharge: In the event that TNRCC requires Cameron County Irrigation District #2 (CCID#2) to calculate push water volume in order to supply ERHWSC with raw water, and CCID#2 assesses the cost of push water to ERHWSC, or ERHWSC purchases the push water from other sources, then ERHWSC will pass the cost of the push water equally onto the Membership on a per service unit basis, based upon the number of service units in existence at the time of the assessment.

d.  Stage 4 – Emergency Water Shortage Conditions
    (1) Goal: Minimize all water use to only that required for public health, safety, and welfare, until system repairs or source water contamination is eliminated.
    (2) Supply Management Measures:
        (a) Interconnections with other water utility systems will be utilized to maximum extent possible. These interconnections include Harlingen Waterworks System and the City of Los Fresnos. It is possible to make an emergency connection within 24 hours with Valley Municipal Utility District (Rancho Viejo) and Olmito Water Supply Corporation if conditions required such action.
        (b) Emergency supplies for repair of water lines of all sizes and valves in the distribution system and water plant are maintained in stock for use.
        (c) Back-up raw water, chemical feed, and high service pumps are maintained in running condition at the water plant at all times. Monthly maintenance is conducted on all other equipment as recommended in the owner's manual. An emergency 350 KW generator is installed to provide back up power supply in the event of loss of power from Magic Valley Electric Cooperative.
        (d) ERHWSC will attempt to notify all major water users of emergency conditions and request water usage to be eliminated or minimized.

Approved _____

(3) Water Use Restrictions: All requirements of Stage 2 and 3 shall remain in effect during Stage 4 except:

    (a) Irrigation of landscaped areas is absolutely prohibited.

    (b) Use of water to wash any motor vehicle, motorbike, boat, trailer, airplane or other vehicle is absolutely prohibited.

(4) Water Rate Structure: The water rate structure under Stage 4 will not change from the previously existing stage, since this stage is for short-term emergencies only.

10. *Enforcement.*

    a.   **Violations** –Members found to be in violation of Stage II, III, or IV of this Plan will be notified by the ERHWSC General Manager or his designee in writing.  The written notice will contain the specific violation, date and time the violation was recorded, and put on notice that any subsequent violation will result in their meter being shut off and padlocked.  Services discontinued under such circumstances shall be restored only upon payment of a re-connection charge, hereby established at fifty dollars ($50.00) and any other costs incurred by the ERHWSC in discontinuing service.  In addition the customer, who's water service is disconnected after three separate offenses, must give suitable assurance to the ERHWSC General Manager that the same action shall not be repeated while the Plan is in effect.  After water service is disconnected for three distinct violations, any further distinct violations will result in water service being disconnected immediately.  The ERHWSC General Manager will reestablish water service after a one-hundred dollar ($100) reconnection charge is paid, the customer's account is cleared of all debts owed to ERHWSC, and the ERHWSC General Manager determines that the violations will not reoccur.

    b.   Any person, including a person classified as a water customer of the ERHWSC, in apparent control of the property where a violation occurs or originates shall be presumed to be the violator, and proof that the violation occurred on the person's property shall constitute a rebuttable presumption that the person in apparent control of the property committed the violation, but any such person shall have the right to show that he/she did not commit the violation.  Parents shall be presumed to be responsible for violations of their minor children and proof that a violation, committed by a child, occurred on property within the parents' control shall constitute a rebuttable presumption that the parent committed the violation, but any such parent may be excused if he/she proves that he/she had previously directed the child not to use the water as it was used in violation of this Plan and that the parent could not have reasonably known of the violation.

11. *Variances.*  The ERHWSC General Manager, or his/her designee, may, in writing, grant temporary variance for existing water uses otherwise prohibited under this Plan if it is determined that failure to grant such variance would cause an emergency condition adversely affecting the health, sanitation, or fire protection for the public or the person requesting such variance and if one or more of the following conditions are met:

    a.   Compliance with this Plan cannot be technically accomplished during the duration of the water supply shortage or other condition for which the Plan is in effect.

    b.   Alternative methods can be implemented which will achieve the same level of reduction in water use.

    c.   Persons requesting an exemption from the provisions of this Plan shall file a petition for variance with the ERHWSC within 15 days after the Plan or a particular drought response stage has been invoked.  All petitions for variances shall be reviewed by the ERHWSC General Manager or his/her designee, and shall include the following:

        (1) Name and address of the petitioner(s).

        (2) Purpose of water use.

Approved _____

(3) Specific provision(s) of the Plan from which the petitioner is requesting relief.

(4) Detailed statement as to how the specific provision of the Plan adversely affects the petitioner or what damage or harm will occur to the petitioner or others if petitioner complies with this Plan.

(5) Description of the relief requested.

(6) Period of time for which the variance is sought.

(7) Alternative water use restrictions or other measures the petitioner is taking or proposes to take to meet the intent of this Plan and the compliance date.

(8) Other pertinent information.

d.  Variances granted by the ERHWSC shall be subject to the following conditions, unless waived or modified by the ERHWSC General Manager or his/her designee:

(1) Variances granted shall include a timetable for compliance.

(2) Variances granted shall expire when the Plan is no longer in effect, unless the petitioner has failed to meet specified requirements.

(3) No variance shall be retroactive or otherwise justify any violation of this Plan occurring prior to the issuance of the variance.

12. *Severability.*  It is hereby declared to be the intention of the ERHWSC Board of Directors that the sections, paragraphs, sentences, clauses, and phrases of this Ordinance are severable and, if any phrase, clause, sentence, paragraph, or section of this Plan shall be declared unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs, and sections of this Plan, since the same would not have been enacted by the ERHWSC Board of Directors without the incorporation into this Plan of any such unconstitutional phrase, clause, sentence, paragraph, or section.

Approved _____

# SECTION I.
# WHOLESALE DROUGHT CONTINGENCY
# AND
# EMERGENCY WATER DEMAND MANAGEMENT PLAN

1. ***Declaration of Policy, Purpose, and Intent.*** In order to conserve the available water supply and/or to protect the integrity of water supply facilities, with particular regard for domestic water use, sanitation, and fire protection, and to protect and preserve public health, welfare, and safety and minimize the adverse impacts of water supply shortage or other water supply emergency conditions, the East Rio Hondo Water Supply Corporation (ERHWSC) adopts the following Wholesale Drought Contingency and Emergency Water Demand Management Plan (the Plan).

2. ***Public Involvement.*** Opportunity for the public and wholesale water customers to provide input into the preparation of the Plan was provided by ERHWSC by means of notification to the wholesale water users.

3. ***Wholesale Water Customer Education.*** The ERHWSC will periodically provide wholesale water customers with information about the Plan, including information about the conditions under which each stage of the Plan is to be initiated or terminated and the drought response measures to be implemented in each stage. Wholesale water customers have been provided a copy of the Plan. In addition, each wholesale customer will be contacted to discuss any changes in Plan stages.

4. ***Coordination with Regional Water Planning Group.*** The service area of the ERHWSC is located within the Rio Grande Regional Water Planning Group (Region M) and ERHWSC has provided a copy of this Plan to the Rio Grande Valley Development Council and the Rio Grande Valley Regional Water Planning Group (Region M).

5. ***Authorization.*** The ERHWSC General Manager, or his/her designee is hereby authorized and directed to implement the applicable provisions of this Plan upon determination that such implementation is necessary to protect public health, safety, and welfare. The ERHWSC General Manager or his/her designee shall have the authority to initiate or terminate drought or other water supply emergency response measures as described in this Plan.

6. ***Application.*** The provisions of this Plan shall apply to all wholesale customers utilizing water provided by the ERHWSC. The terms person and customer as used in the Plan include individuals, corporations, partnerships, associations, and all other legal entities.

7. ***Triggering Criteria for Initiation and Termination of Drought Response Stages.*** The ERHWSC General Manager, or his/her designee, shall monitor water supply and/or demand conditions on a monthly basis and shall determine when conditions warrant initiation or termination of each stage of the Plan. Public notification of the initiation or termination of drought response stages shall be by means of publication in the Valley Morning Star, direct mail to each wholesale customer. The triggering criteria described below are based on an analysis of the vulnerability of the water source under previous drought conditions.
   a. Stage 1 - Mild Water Shortage Conditions
      (1)    Requirements for initiation - Customers shall be requested to voluntarily conserve water and adhere to the prescribed restrictions on certain water uses, when the Falcon and

Approved _____

Amistad Reservoirs reach 51% of capacity as determined by the Texas Natural Resource Conservation Commission (TNRCC).

(2)    Requirements for termination - Stage 1 of the Plan may be rescinded when all of the conditions listed as triggering events have ceased to exist for a period of 30 consecutive days.

b.  Stage 2 - Severe Water Shortage Conditions

(1)    Requirements for initiation - Customers shall be required to comply with the requirements and restrictions on certain non-essential water uses for Stage 2 of this Plan when (a) Cameron County Irrigation District Number 2 disallows farm irrigation water use, (b) distribution system pressures fall below 35 psi requirements due to system demand for two consecutive days, or (c) ERHWSC consumer demand exceeds 85% of ERHWSC plant capacity for 15 days out of any consecutive 30 day period.

(2)    Requirements for termination - Stage 2 of the Plan may be rescinded when all of the conditions listed as triggering events have ceased to exist for a period of 30 consecutive days. Upon termination of Stage 2, Stage 1 becomes operative.

c.  Stage 3 - Critical Water Shortage Conditions

(1)    Requirements for initiation - Customers shall be required to comply with the requirements and restrictions on certain non-essential water uses for Stage 3 of this Plan when (a) Falcon and Amistad Reservoirs reach 15% of capacity as determined by the TNRCC, (b) distribution system pressures fall below 20 psi due to system demand for two consecutive days, or (c) ERHWSC consumer demand exceeds 90% of ERHWSC plant capacity for 15 days out of any consecutive 30 day period.

(2)    Requirements for termination - Stage 3 of the Plan may be rescinded when all of the conditions listed as triggering events have ceased to exist for a period of 30 consecutive days. Upon termination of Stage 3, Stage 2 becomes operative.

d.  Stage 4 - Emergency Water Shortage Conditions

(1)    Requirements for initiation - Customers shall be required to comply with the requirements and restrictions for Stage 4 of this Plan when the ERHWSC General Manager, or his/her designee, determines that a water supply emergency exists based on: (a) major water line breaks, or pump or system failures occur, which cause unprecedented loss of capability to provide water service; (b) natural or man-made contamination of the water supply source(s); or (c) rapidly occurring low-pressure conditions (less than 20 psi) due to any reason.

(2)    Requirements for termination − Stage 4 of the Plan may be rescinded when all of the conditions listed as triggering events have ceased to exist. Upon termination of Stage 4, the General Manager will determine which Stage will follow.

e.  Water Rationing

(1)    Requirements for initiation - Customers shall be required to comply with the requirements and restrictions for Stages 2, 3, and 4 of this Plan when these stages are declared to exist by the ERHWSC General Manager.

(2)    Requirements for termination − Water rationing may be rescinded when all of the conditions listed as triggering events for Stage 2 have ceased to exist for 30 consecutive days.

8.  ***Drought Response Stages.***  The ERHWSC General Manager, or his/her designee, shall monitor water supply and/or demand conditions on a daily basis and, in accordance with the triggering criteria set forth in Section 8 of the Plan, shall determine that a mild, severe, critical, or emergency condition exists and shall implement the following actions upon publication of notice in a newspaper of general circulation, and posting in public buildings and the ERHWSC main office. The ERHWSC General Manager will notify via telephone the TNRCC, major water users, and critical water users (i.e. health clinics) as

determined as necessary. Rate structure changes in Stages II & III will apply to billing following the first full service month after notification.

a.  Stage 1 - Mild Water Shortage Conditions

(1) Goal: Achieve a voluntary reduction in daily water demand.

(2) Supply Management Measures: ERHWSC will manage limited water resources with the following measures:

(a) Recycle backwash water to the front of the plant after decanting the settled water away from the settled sludge. This process eliminates the loss of the backwash water to evaporation or disposal.

(b) Flushing of water mains will be conducted only when customer complaints of taste and odor are reported, or when insufficient chlorine residuals are measured near the flush valve.

(c) ERHWSC will be an active partner in the Rio Grande Valley Water Smart Coalition providing public education through displays, radio and television announcements, and water conservation education in local school districts.

(3) Demand Management Measures: The ERHWSC General Manager, or his/her designee(s), will contact wholesale water customers to discuss water supply and/or demand conditions and will request that wholesale water customers initiate voluntary water use restrictions similar to those listed under Stage 1 of the ERHWSC Retail Drought Contingency Plan.

b.  Stage 2 – Severe Water Shortage Conditions

(1) Goal: Achieve a reduction in daily water demand.

(2) Supply Management Measures: All Supply Management measures noted in Stage 1 above.

(3) Demand Management Measures: The ERHWSC General Manager, or his/her designee(s), will initiate monthly contact with wholesale water customers to discuss water supply and/or demand conditions and request the wholesale customer implement mandatory measures for water conservation similar to those listed under Stage 2 of the ERHWSC Retail Drought Contingency Plan. In addition, ERHWSC shall include a provision in every wholesale water contract entered into or renewed after adoption of the plan, including contract extensions, that in case of a shortage or insufficient supply of water resulting from drought, the water to be distributed shall be divided in accordance with Texas Water Code, §11.039.

(4) Water Rate Structure: The ERHWSC General Manager, or his/her designee(s), will review all wholesale water contracts for daily and monthly usage capacities. Wholesale customer rate structure shall be as follows:

(a). Any usage within the contract amount shall be at the contract rate structure.

(b) Any usage beyond the contract amount shall be surcharged $.50 per thousand gallons for the first 50,000 gallons over the contract amount.

(c) Second 50,000 gallons over contract amount, a surcharge of $1.00 per thousand gallons.

(d) Third 50,000 gallons over contract amount, a surcharge of $1.50 per thousand gallons.

(e) Any amount greater than 150,000 gallons over the contract amount, a surcharge of $2.00 per thousand gallons.

(5) Water Rights Surcharge: In the event that TNRCC requires Cameron County Irrigation District #2 (CCID#2) to calculate push water volume in order to supply ERHWSC with raw water, and CCID#2 assesses the cost of push water to ERHWSC, then ERHWSC will pass the cost of the push water equally onto all ERHWSC customers. A wholesaler's percentage

Approved _____

of the push water surcharge will be based upon the wholesaler's previous 12 months metered usage as a percentage of the total ERHWSC metered usage.

c.  Stage 3 – Critical Water Shortage Conditions

(1) Goal: Achieve a substantial reduction in daily water demand.

(2) Supply Management Measures:  All items noted in Stage 1 will continue to be implemented with the limitation of flushing water at flush valves for public health reasons only.

(3) Demand Management Measures:  The ERHWSC General Manager, or his/her designee(s), will initiate monthly contact with wholesale water customers to discuss water supply and/or demand conditions and request the wholesale customer implement mandatory measures for water conservation similar to those listed under Stage 3 of the ERHWSC Retail Drought Contingency Plan.  In addition, ERHWSC shall include a provision in every wholesale water contract entered into or renewed after adoption of the plan, including contract extensions, that in case of a shortage or insufficient supply of water resulting from drought, the water to be distributed shall be divided in accordance with Texas Water Code, §11.039.

(4) Water Rate Structure: The Water Rate Structure shall be as follows:

(a). Any usage within the contract amount shall be at the contract rate structure.

(b) Any usage beyond the contract amount shall be surcharged $.50 per thousand gallons for the first 25,000 gallons over the contract amount.

(c) Second 25,000 gallons over contract amount, a surcharge of $1.00 per thousand gallons.

(d) Third 25,000 gallons over contract amount, a surcharge of $1.50 per thousand gallons.

(e) Any amount greater than 75,000 gallons over the contract amount, a surcharge of $2.00 per thousand gallons.

(5) Water Rights Surcharge: In the event that TNRCC requires Cameron County Irrigation District #2 (CCID#2) to calculate push water volume in order to supply ERHWSC with raw water, and CCID#2 assesses the cost of push water to ERHWSC, then ERHWSC will pass the cost of the push water equally onto all ERHWSC customers.  A wholesaler's percentage of the push water surcharge will be based upon the wholesaler's previous 12 months metered usage as a percentage of the total ERHWSC metered usage.

d.  Stage 4  – Emergency Water Shortage Conditions

(1) Goal: Minimize all water use to only that required for public health, safety, and welfare, until system repairs or source water contamination is eliminated.

(2) Supply Management Measures:

(a) Interconnections with other water utility systems will be utilized to maximum extent possible.  These interconnections include Harlingen Waterworks System and the City of Los Fresnos.  It is possible to make an emergency connection within 24 hours with Valley Municipal Utility District (Rancho Viejo) and Olmito Water Supply Corporation if conditions required such action.

(b) Emergency supplies for repair of water lines of all sizes and valves in the distribution system and water plant are maintained in stock for use.

(c) Back-up raw water, chemical feed, and high service pumps are maintained in running condition at the water plant at all times.  Monthly maintenance is conducted on all other equipment as recommended in the owner's manual.  An emergency 350 KW generator is installed to provide back up power supply in the event of loss of power from Magic Valley Electric Cooperative.

Approved _____

(d) ERHWSC will attempt to notify all major water users of emergency conditions and request water usage to be eliminated or minimized.

(3) Demand Management Measures:  Whenever emergency water shortage conditions exist as defined in Section VII of the Plan, the ERHWSC General Manager shall:

(a) Assess the severity of the problem and identify the actions needed and time required to solve the problem.

(b) Inform the utility director or other responsible official of each wholesale water customer by telephone or in person and suggest actions, as appropriate, to alleviate problems (e.g., notification of the public to reduce water use until service is restored).

(c) If appropriate, notify city, county, and/or state emergency response officials for assistance.  Notify the news media as necessary to protect the public health and request reduction in water usage.

(d) Undertake necessary actions, including repairs and/or clean-up as needed.

(e) Prepare a post-event assessment report on the incident and critique of emergency response procedures and actions.

9.  *Variances.*  The ERHWSC General Manager, or his/her designee, may, in writing, grant temporary variance for existing water uses otherwise prohibited under this Plan if it is determined that failure to grant such variance would cause an emergency condition adversely affecting the health, sanitation, or fire protection for the public or the person requesting such variance and if one or more of the following conditions are met:

a.  Compliance with this Plan cannot be technically accomplished during the duration of the water supply shortage or other condition for which the Plan is in effect.

b.  Alternative methods can be implemented which will achieve the same level of reduction in water use.

c.  Persons requesting an exemption from the provisions of this Plan shall file a petition for variance with the ERHWSC within 15 days after the Plan or a particular drought response stage has been invoked.  All petitions for variances shall be reviewed by the ERHWSC General Manager or his/her designee, and shall include the following:

(1) Name and address of the petitioner(s).

(2) Purpose of water use.

(3) Specific provision(s) of the Plan from which the petitioner is requesting relief.

(4) Detailed statement as to how the specific provision of the Plan adversely affects the petitioner or what damage or harm will occur to the petitioner or others if petitioner complies with this Plan.

(5) Description of the relief requested.

(6) Period of time for which the variance is sought.

(7) Alternative water use restrictions or other measures the petitioner is taking or proposes to take to meet the intent of this Plan and the compliance date.

(8) Other pertinent information.

d.  Variances granted by the ERHWSC shall be subject to the following conditions, unless waived or modified by the ERHWSC General Manager or his/her designee:

(1) Variances granted shall include a timetable for compliance.

(2) Variances granted shall expire when the Plan is no longer in effect, unless the petitioner has failed to meet specified requirements.

(3) No variance shall be retroactive or otherwise justify any violation of this Plan occurring prior to the issuance of the variance.

Approved _____

10. *Severability.* It is hereby declared to be the intention of the ERHWSC Board of Directors that the sections, paragraphs, sentences, clauses, and phrases of this Ordinance are severable and, if any phrase, clause, sentence, paragraph, or section of this Plan shall be declared unconstitutional by the valid judgment or decree of any court of competent jurisdiction, such unconstitutionality shall not affect any of the remaining phrases, clauses, sentences, paragraphs, and sections of this Plan, since the same would not have been enacted by the ERHWSC Board of Directors without the incorporation into this Plan of any such unconstitutional phrase, clause, sentence, paragraph, or section.

Approved _____

**RIGHT OF WAY EASEMENT**
**East Rio Hondo Water Supply Corporation**

KNOW ALL MEN BY THESE PRESENTS, that _____ (hereinafter called "Grantor" whether one or more persons are named), in consideration of one dollar ($1.00) and other good and valuable consideration paid by EAST RIO HONDO WATER SUPPLY CORPORATION, (hereinafter called "Grantee"), the receipt and sufficiency of which is hereby acknowledged, does hereby grant, bargain, sell, transfer, and convey to said Grantee, its successors, and assigns, a perpetual and exclusive easement with the right to erect, construct, install and lay and thereafter use, operate, inspect, repair, maintain, replace, and remove utility lines and appurtenances over and across _____ acres of land, more particularly described in instrument recorded in Vol. _____, Page _____, Deed Records, Cameron County, Texas, together with the right of ingress and egress over Grantor's adjacent lands for the purpose for which the above-mentioned rights are granted, to have and to hold the above-described property and premises unto the said Grantee, Grantee's heirs, administrators, executors, successors and/or assigns forever.

The easement hereby granted shall not exceed 15-feet in width, and Grantee is hereby authorized to designate the course of the easement herein conveyed except that when the utility line(s) is (are) installed, the easement herein granted shall be limited to a strip of land 15-feet in width, the centerline thereof being: (a) the midpoint between the utility lines installed if two lines are initially installed, or (b) 7.5-feet from either the property, road right of way, or easement line, whichever line is closer to and parallel to the initial utility line installed, said centerline of this easement being outside of any public road right of way.

In the event the easement hereby granted abuts on a public road and the county or state hereafter widens or relocates the public road so as to require the relocation of this (these) utility line(s) as installed, Grantor further grants to Grantee an additional easement over and across the land described above for the purpose of laterally relocating said utility lines as may be necessary to clear the road improvements, which easement hereby granted shall be limited to a strip of land 15-feet in width, the center line thereof being determined as described above.

Grantor agrees to not place any fences on this easement. The consideration recited herein shall constitute payment in full for all damages sustained by Grantor by reason of the installation of the structures referred to herein and the Grantee will maintain such easement in a state of good repair and efficiency so that no unreasonable damages will result from its use to Grantor's premises. This Agreement together with other provisions of this grant shall constitute a covenant running with the land for the benefit of the Grantee, its successors, and assigns. The Grantor covenants that he (she) (they) is (are) the owners of the above described lands and that said lands are free and clear of all encumbrances and liens, except the following:

The easement conveyed herein was obtained or improved through Federal financial assistance. This easement is subject to the provisions of Title VI of the Civil Rights Act of 1964 and the regulations issued pursuant thereto for so long as the easement continues to be used for the same or similar purpose for which financial assistance was extended or for so long as the Grantee owns it, whichever is longer.

IN WITNESS WHEREOF the said Grantor has executed this instrument this _____ day of _____ 20 _____.

_____

_____

**ACKNOWLEDGMENT**

**STATE OF TEXAS**                     §
                                       §
**COUNTY OF _____**       §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared _____ known to me to be the person(s) whose name(s) is (are) subscribed to the foregoing instrument, and acknowledged to me that he (she) (they) executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE THIS THE ____ day of _____, 20_____.

_____
Notary Public in and for

_____ County, Texas

My Commission Expires: _____

RUS-TX Bulletin 1780-9 (Revised 5/99)

| CORPORATION USE ONLY |
| --- |
| Date Approved: _____ |
| Service Classification: _____ |
| Cost: _____ |
| Work Order Number: _____ |
| Eng. Update: _____ |
| Account Number: _____ |
| Service Inspection Date: _____ |

# EAST RIO HONDO WATER SUPPLY CORPORATION
# SERVICE APPLICATION AND AGREEMENT

**Please Print:**        DATE _____

APPLICANT'S NAME _____

APPLICANT'S NAME _____

CURRENT BILLING ADDRESS:                    FUTURE BILLING ADDRESS:

_____          _____

_____          _____

PHONE NUMBER - Home (_____) _____ - _____        Work / Cell (_____) _____ - _____

PROOF OF OWNERSHIP PROVIDED BY _____ DOCUMENT #_____ VOL _____ PG _____

DRIVER'S LICENSE # OF APPLICANT _____ SSN _____

LEGAL DESCRIPTION OF PROPERTY (i.e., Subdivision Name with Lot and Block Number or Short Metes and Bounds)

_____

PHYSICAL LOCATION OF PROPERTY _____
(i.e., directions and distance from nearest road intersection)

PREVIOUS OWNER'S NAME AND ADDRESS (if transferring Membership)

_____

_____

ACREAGE _____        HOUSEHOLD SIZE _____

LIVESTOCK & NUMBER _____

SPECIAL SERVICE NEEDS OF APPLICANT OTHER THAN STANDARD RESIDENTIAL METER SERVICE_____

_____

NOTE: **FORM MUST BE COMPLETED ENTIRELY** BY APPLICANT ONLY. N.A. SHOULD BE WRITTEN WHERE BLANK IS NOT APPLICABLE. A MAP OF SERVICE LOCATION REQUEST MUST BE ATTACHED.

The following information is requested by the Federal Government in order to monitor compliance with Federal laws prohibiting discrimination against applicants seeking to participate in this program. You are not required to furnish this information, but are encouraged to do so. This information will not be used in evaluating your application or to discriminate against you in any way. However, if you choose not to furnish it, we are required to note the race/national origin of individual applicants on the basis of visual observation or surname.

☐ White, Not of Hispanic Origin    ☐ Black, Not of Hispanic Origin    ☐ American Indian or Alaskan Native    ☐ Hispanic    ☐ Asian or Pacific Islander    ☐ Other (Specify)    | ☐ Male
| ☐ Female

EQUAL OPPORTUNITY PROGRAM

AGREEMENT made between East Rio Hondo Water Supply Corporation (ERHWSC), a corporation organized

under the laws of the State of Texas (hereinafter called the Corporation) and _____

_____ (hereinafter called the Applicant(s) and/or Member(s)),

Witnesseth:

The Corporation shall sell and deliver water and/or wastewater service to the Applicant and the Applicant shall purchase, receive, and/or reserve service from the Corporation in accordance with the bylaws and tariff of the Corporation as amended from time to time by the Board of Directors of the Corporation. Upon compliance with said policies, including payment of a Membership Fee, the Applicant qualifies for Membership as a new applicant or continued Membership as a transferee and thereby may hereinafter be called a Member.

The Member shall pay the Corporation for service hereunder as determined by the Corporation's tariff and upon the terms and conditions set forth therein. A copy of the tariff is available to the Member for review at the ERHWSC Office or one may be purchased for printing costs, and the Member acknowledges availability (upon Member request) by execution of this agreement. A copy of this agreement shall be executed before service may be provided to the Applicant.

The Board of Directors shall have the authority to discontinue service and cancel the Membership of any Member not complying with any policy or not paying any utility fees or charges as required by the Corporation's published rates, fees, and conditions of service. At any time service is discontinued, terminated or suspended, the Corporation shall not re-establish service unless it has a current, signed copy of this agreement.

If this agreement is completed for the purpose of assigning utility service as a part of a rural domestic water and/or wastewater system loan project contemplated with the Rural Development, an Applicant shall pay an Indication of Interest Fee in lieu of a Membership Fee for the purposes of determining:

    a. The number of taps to be considered in the design and

    b. The number of potential ratepayers considered in determining the financial feasibility of constructing
      1) a new water system or
      2) expanding the facilities of an existing water system.

The Applicant hereby agrees to obtain, utilize, and/or reserve service as soon as it is available. Applicant, upon qualification for service under the terms of the Corporation's policies, shall further qualify as a Member and the Indication of Interest Fee shall then be converted by the Corporation to a Membership Fee. Applicant further agrees to pay, upon becoming a Member, the monthly charges for such service as prescribed in the Corporation's tariff. Any breach of this agreement shall give cause for the Corporation to liquidate, as damages, the fees previously paid as an indication of interest. In addition to any Indication of Interest Fees forfeited, the Corporation may assess a lump sum of $300.00 as liquidated damages to defray any losses incurred by the Corporation. If delivery of service to said location is deemed infeasible by the Corporation as a part of this project, the Applicant shall be denied Membership in the Corporation and the Indication of Interest Fee, less expenses, shall be refunded. The Applicant may re-apply for service at a later date under the terms and conditions of the Corporation's policies. For the purposes of this agreement, an Indication of Interest Fee shall be of an amount equal to the Corporation's Membership Fees.

All water shall be metered by meters to be furnished and installed by the Corporation. The meter and/or wastewater connection is for the sole use of the Member or customer and is to provide service to only one (1) dwelling

or one (1) business. Extension of pipe(s) to transfer utility service from one property to another, to share, resell, or submeter water to any other persons, dwellings, businesses, or property, etc., is prohibited.

The Corporation shall have the right to locate a water service meter and the pipe necessary to connect the meter on the Member's property at a point to be chosen by the Corporation, and shall have access to its property and equipment located upon Member's premises at all reasonable and necessary times for any purpose connected with or in the furtherance of its business operations, and upon discontinuance of service the Corporation shall have the right to remove any of its equipment from the Member's property. The Member shall install, at their own expense, any necessary service lines from the Corporation's facilities and equipment to the point of use, including any customer service isolation valves, backflow prevention devices, clean-outs, and other equipment as may be specified by the Corporation. The Corporation shall also have access to the Member's property for the purpose of inspecting for possible cross-connections, potential contamination hazards, and illegal lead materials.

The Corporation is responsible for protecting the drinking water supply from contamination or pollution which could result from improper practices. This service agreement serves as notice to each customer of the restrictions which are in place to provide this protection. The Corporation shall enforce these restrictions to ensure the public health and welfare. The following undesirable practices are prohibited by state regulations:

a. No direct connection between the public drinking water supply and a potential source of contamination is permitted. Potential sources of contamination shall be isolated from the public water system by an air gap or an appropriate backflow prevention assembly in accordance with state regulations.

b. No cross-connection between the public drinking water supply and a private water system is permitted. These potential threats to the public drinking water supply shall be eliminated at the service connection by the proper installation of an air gap or a reduced pressure-zone backflow prevention assembly. Backflow assemblies require annual inspection and testing by a certified backflow prevention device tester and documentation of the inspections must be provided to the Corporation.

c. No connection which allows condensing, cooling, industrial process water, or any water of unknown quality to be returned to the public drinking water supply is permitted.

d. No pipe or pipe fitting which contains more than 8.0 % lead may be used for the installation or repair of plumbing on or after July 1, 1988, at any connection which provides water for human consumption.

e. No solder or flux which contains more than 0.2 % lead may be used for the installation or repair plumbing on or after July 1, 1988, at any connection which provides water for human consumption.

The Corporation shall maintain a copy of this agreement as long as the Member and/or premises is connected to the public water system. The Member shall allow their property to be inspected for possible cross-connections, potential contamination hazards, and illegal lead materials. These inspections shall be conducted by the Corporation or its designated agent prior to initiating service and periodically thereafter. The inspections shall be conducted during the Corporation's normal business hours.

The Corporation shall notify the Member in writing of any cross-connections or other undesirable practices which have been identified during the initial or subsequent inspection. The Member shall immediately correct any undesirable practice on their premises. The Member shall, at their expense, properly install, test, and maintain any backflow prevention device required by the Corporation. Copies of all testing and maintenance records shall be provided to the Corporation as required. Failure to comply with the terms of this service agreement shall cause the Corporation to terminate service or properly install, test, and maintain an appropriate backflow prevention device at the service connection. Any expenses associated with the enforcement of this agreement shall be billed to the Member.

RUS-TX Bulletin 1780-9 (5/99)                                           Service Application and Agreement
                                                                                            page 4 of 4

In the event the total water supply is insufficient to meet all of the Members, or in the event there is a shortage of water, the Corporation may initiate the Emergency Water Demand Management Plan as specified in the Corporation's Tariff. By execution of this agreement, the Applicant hereby shall comply with the terms of said program.

By execution hereof, the Applicant shall hold the Corporation harmless from any and all claims for damages caused by service interruptions due to waterline breaks by utility or like contractors, tampering by other Member/users of the Corporation, normal failures of the system, or other events beyond the Corporation's control. In addition, the Corporation will install a dual or double check valve on the members service creating a closed plumbing system for the member. This prevents the return of water to the Corporation's main line. Member is responsible for maintaining all of their private plumbing, such as hot water heaters, temperature pressure relief valves, and thermal expansion tanks, in a manner compatible with the closed system noted above. Member shall hold Corporation harmless from any claims for damages caused by failure of private plumbing due to lack of maintenance.

The Member shall grant to the Corporation, now or in the future, any easements of right-of-way for the purpose of installing, maintaining, and operating such pipelines, meters, valves, and any other equipment which may be deemed necessary by the Corporation to extend or improve service for existing or future Members, on such forms as are required by the Corporation.

By execution hereof, the Applicant shall guarantee payment of all other rates, fees, and charges due on any account for which said Applicant owns a Membership Certificate. Said guarantee shall pledge any and all Membership Fees against any balance due the Corporation. Liquidation of said Membership Fees shall give rise to discontinuance of service under the terms and conditions of the Corporation's tariff.

By execution hereof, the Applicant agrees that non-compliance with the terms of this agreement by said Applicant shall constitute denial or discontinuance of service until such time as the violation is corrected to the satisfaction of the Corporation.

Any misrepresentation of the facts by the Applicant on any of the four pages of this agreement shall result in discontinuance of service pursuant to the terms and conditions of the Corporation's tariff.

IN WITNESS WHEREOF the said Applicant(s) has (have) executed this agreement this _____ day of _____ 20 ____.


_____


_____


## ACKNOWLEDGMENT

STATE OF TEXAS                          §
                                        §
COUNTY OF CAMERON                        §

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared

_____ known to me to be the person(s) whose name(s) is (are) subscribed to the foregoing instrument, and acknowledged to me that he (she) (they) executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE THIS THE _____ day of _____, 20____.


_____

RUS-TX Bulletin 1780-9 (5/99)

Service Application and Agreement
page 5 of 4

Notary Public in and for

Cameron County, Texas

My Commission Expires: _____

Form FmHA-TX-442-7
(Revised 9/93)

RUS-TX Bulletin 1780-20
(Revised 3/2002)

# BYLAWS

## of

_____ WATER SUPPLY

## CORPORATION

Bylaws of _____Water Supply Corporation, having been presented to the Board of Directors of said Corporation and duly adopted as follows:

## ARTICLE I

The President shall preside *and vote* at all Members' and Directors' meetings. ~~The President may, and upon demand of one-third (1/3) of the Members, shall call a special meeting of the Members or Directors. Such special meetings shall be held upon giving the notice required in Article XII of the Bylaws.~~ The President shall perform all other duties that usually pertain to the office or are delegated ~~to him~~by the Board of Directors.

## ARTICLE II

The Vice-President shall, in case of the absence or disability of the President, perform the duties of the President.



EXHIBIT
tabbies
" 3 "

03/21/024:12 PM

Form FmHA TX-442-7
(Revised 9/93)

RUS-TX Bulletin 1780-20
(Revised 3/2002)

## ARTICLE III

The Secretary-Treasurer shall have ~~the~~ custody of all ~~the~~ monies, *records* and securities of the Corporation.  The Secretary-Treasurer shall ~~keep regular books and shall~~ keep minutes of all meetings of *the Corporation* ~~Members and Directors~~.  All monies of the Corporation shall be deposited by the Secretary-Treasurer in such depository as shall be selected by the Directors. Checks must be signed by the Secretary-Treasurer *or assistant or deputy secretary,* and the President or *a designee of that office* ~~Vice-President in the absence of the President~~.  The Secretary-Treasurer shall have custody of the seal of the Corporation and affix it as directed ~~hereby or~~ by resolution passed by the Board of Directors or Members.  The Board of Directors may appoint an employee as assistant or deputy secretary to assist the Secretary-Treasurer in all official duties pertaining to *that office* ~~the office of Secretary~~.

The position of the Secretary-Treasurer, and other *Board* positions *and/or employees* entrusted with receipt and disbursement of funds, shall be placed under a fidelity bond in an amount which shall be set from time to time, but not less than once each year, by the Board of Directors.  The fidelity bond coverage amount shall approximate the total annual debt service requirements for all ~~FmHA~~ *USDA Rural Development, Rural Utilities Service (RUS)* loans and be evidenced by a position fidelity schedule bond as acceptable to ~~the Farmers Home Administration~~ *USDA Rural Development, RUS, or its successor agencies and assigns.*

## ARTICLE IV

Section 1. The Board of Directors shall consist of _____ Directors, a majority of whom shall constitute a quorum.  Upon issuance of the Charter and annually thereafter on _____[1], the Board of Directors shall elect a President, a Vice-President and a Secretary-Treasurer.  The Directors shall be elected by the Members at the Members' regular meeting provided for in Article ~~XV~~*I* of the Bylaws, *or special called meeting as provided*

---

[1] This election shall be held *between January 1 and* ~~prior to~~ May 1, but after the Members' annual meeting.  Insert day of week, week of month, and month of year (i.e., second Tuesday of April).

03/21/024:12 PM

Form FmHA-TX-442-7
(Revised 9/93)

RUS-TX Bulletin 1780-20
(Revised 3/2002)

*in Article VII.* The Directors shall be divided into three (3) classes, each class to be as near as equal in number as possible. The terms of the Directors of the first class shall expire at the first annual meeting of the *Members* shareholders after their election; the terms of the Directors of the second class shall expire at the second annual meeting after their election; and terms of the Directors of the third class shall expire at the third annual meeting after their election. At each annual meeting after such classification, the number of Directors equal to the number of the class whose term expires at the time of such meeting shall be elected to hold office until the third succeeding annual meeting. The Directors shall serve without pay, but may be compensated for actual expenses by a majority vote of Directors. *Directors, as such, shall not receive any stated salary for their services, except as provided for by state law.*

Upon the death or resignation of a Director, a successor shall be elected *appointed* by a majority of the existing Directors to serve until the next regular or special Membership meeting, at which time the general Membership shall elect a successor for the remaining balance of the previously vacated term.

Section 2. Officers and Directors may be removed from office in the following manner, except as otherwise provided in Article V: Any Member, Officer, or Director may present charges against a Director or Officer by filing such charges in writing with the Secretary-Treasurer of the Corporation. If presented by a Member, the charges must be accompanied by a petition signed by at least ten (10) percent of the Members of the Corporation. Such removal shall be voted on at the next regular or special meeting of the Membership and shall be effective if approved by a vote of 2/3 majority of those voting if a quorum is present. The Director(s) or Officer(s) against whom such charges have been presented shall be informed in writing of such charges at least twenty (20) days prior to the meeting, and shall have the opportunity at such meeting to be heard in person or by counsel and to present witnesses; and the person or persons presenting such charges shall have the same opportunity. If the removal of a Director(s) is approved, such action shall also vacate any other office(s) held by the removed Director(s) in the Corporation. A vacancy in the Board thus created shall immediately be filled by a qualified

Form FmHA-TX-442-7                                    *RUS-TX Bulletin 1780-20*
(Revised 9/93)                                           *(Revised 3/2002)*

person other than the removed Director upon a vote of a majority of the Members present and
voting at such meeting *in accordance with the written annual or special meetings procedures
as adopted by the Board.* A vacancy in any office thus created shall be filled by the Board of
Directors from among their number so constituted after the vacancy in the Board has been filled.

Section 3. The President of the Board, or ~~his designee~~ *Vice-President,* shall preside at any
meeting of the Members convened to consider removal of an Officer or Director as provided
under Section 2, unless the President is the subject of charges, in which event the Vice-President
shall preside. In the event both the President and the Vice-President are the subject of charges,
those Directors who are not the subject of any charges shall appoint one of their number to
preside over the meeting. Any meeting convened to consider the removal of an Officer or
Director shall be conducted in accordance with the procedures prescribed by the *Board
~~Credentials Committee established under the provisions of Article XVI~~.* The fact that the
President, Vice-President, or any other Officer or Director has been made the subject of charges
does not otherwise prevent such ~~Officer~~ *individual* from continuing to act in ~~his~~ *the* capacity as
an Officer or Director of the Corporation. Any Director that has been removed under the
provisions of this Article shall not be precluded from subsequent election to a position on the
Board of Directors.

Section 4. The Board of Directors shall adopt and maintain a conflict of interest policy
designed to promote the business of the Corporation and serve the interests of the Membership.
*Such policy, at a minimum, shall be in conformance with the provisions of the Texas
NonProfit Corporation Act pertaining to duties and responsibilities of the Board of Directors.*

Form FmHA-TX-442-7
(Revised 9/93)

*RUS-TX Bulletin 1780-20*
*(Revised 3/2002)*

## ARTICLE V

Section 1.  ~~Regular~~ *M*eetings of the Board of Directors shall be held at such time and place as the Board may determine at the ~~next~~ previous ~~regular~~ meeting, and shall include posting of the meeting as required by the Texas Open Meetings Act.~~, [Article 6252-17, Tex. Rev. Civ. Stat.], by furnishing the notice to the _____ and by posting such notice in a place readily convenient to the public in its administrative office at all times for at least seventy-two (72) hours preceding the scheduled time of the meeting.  Such notice shall specify the date, hour, place and subject of each meeting held by the Board of Directors.  Section 4.~~The Board of Directors shall ensure that all meetings comply with the requirements of the Open Meetings Act, ~~Article 6252-17, Tex. Rev. Civ. Stat.~~ *Chapter 551, Texas Government Code,* including any subsequent amendment thereto.  In the event of any conflict between the provisions of these Bylaws and the requirements of the Open Meetings Act, the provisions of the Open Meetings Act shall prevail.

Section 2.  Any Director failing to attend two (2) consecutive ~~regular monthly~~ meetings ~~shall~~ be given written notice by the balance of the Board of Directors that failure by said Director to attend a third consecutive ~~monthly~~ meeting, without justifiable cause acceptable to the balance of the Board of Directors, ~~shall~~ give rise to removal of said Director from the Board.  A successor shall be ~~elected~~ *appointed* by a majority vote of the Directors remaining to serve until the next regular or special Membership meeting, at which time the general Membership shall elect a successor for the balance of the term.  ~~If the removal of a Director pursuant to this Section 2 occurs at an annual membership meeting, then the successor shall be elected by a majority vote of the Membership in attendance at the meeting.~~

Section 3.  The Board of Directors shall provide access for the public, new service applicants, or Members to the ~~regular monthly~~ meetings of the Board of Directors by setting aside a time for hearing of suggestions, proposals, or grievances*; however, there shall be no deliberations or actions by the Board unless such has first been noticed in accordance with the Texas Open Meetings Act.*  The Board of Directors shall establish reasonable rules for access to such meetings.

03/21/024:12 PM

Form FmHA TX 442-7
(Revised 9/93)

RUS-TX Bulletin 1780-20
(Revised 3/2002)

Section 4. *The Board of Directors may, upon lawful notice to the public, meet in executive session when permitted, in the manner and for such limited purposes as provided for in the Texas Open Meetings Act, as amended, and for no other reason. All proceedings of any meeting at which a quorum of Directors is present to discuss the business of the Corporation shall be recorded in the manner required by the Texas Open Meetings Act.*

Section 5.  In conducting their duties as members of the Board, each Directors: (1) shall be entitled to rely, in good faith and with ordinary care, on information, opinions, reports, or statements, including financial statements and other financial data, concerning the Corporation or the Corporation's affairs that have been prepared or presented by one or more officers or employees of the Corporation, or by legal counsel, public accountants, or other persons retained by the Corporation for the development of professional advice and information falling within such person's professional or expert competence; (2) may believe, in good faith and with ordinary care, that the assets of the Corporation are at least that of their book value; and (3) in determining whether the Corporation has made adequate provision for the discharge of its liabilities and obligations, may rely in good faith and with ordinary care, on the financial statements of, or other information concerning, any person or entity obligated to pay, satisfy or discharge some or all of the Corporation's liabilities or obligations; and may rely in good faith on information, opinions, reports, or statements, including financial statements and other financial data, prepared or presented by one or more Officers or employees of the Corporation, legal counsel, public accountants, or other persons provided the Directors reasonably believes such matters to fall within such person's professional or expert competence.  Nevertheless, a Directors must disclose any knowledge he or she *they* may have concerning a matter in question that makes reliance otherwise provided herein to be unwarranted.

03/21/024:12 PM

~~Form FmHA-TX-442-7~~
~~(Revised 9/93)~~

*RUS-TX Bulletin 1780-20*
*(Revised 3/2002)*

## ~~ARTICLE XI~~ *ARTICLE VI*

Section 1.  There shall be a regular meeting of the Members annually, on

_____ [2] to transact all business that may be properly brought

before it.  The Secretary-Treasurer shall give at least fifteen (15) days written notice of such

annual meeting to the Membership indicating the time, place and purpose of such meeting, and

shall address and mail the notice to each Member at the address last known to the Corporation.

Failure to hold or call an annual or special meeting in accordance with these Bylaws shall give

each Member rights to compel the Board of Directors to properly hold an annual or special

meeting of the Membership.  Voting by proxy shall be permitted.  Members holding ten percent

(10%) of the votes entitled to be cast, represented in person or by proxy, shall constitute a

quorum for the transaction of business.

Section 2.  *The Board of Directors shall adopt, and from time to time may revise,*
*written procedures for conducting annual or special Membership meetings, including the*
*proxy and/or ballot form which shall be the official proxy and/or ballot for such meetings;*
*procedures for proper notification of the Membership of such meetings and delivery of the*
*Corporation's official proxy and/or ballot forms to the Membership; procedures to determine,*
*qualify and register the eligible voters for such meetings; and procedures for canvassing all*
*votes and recording the results of all elections at such meetings of the Membership.*

Section 3.  The Board of Directors shall establish a standing Credentials Committee of

three (3) Members, of which the Secretary-Treasurer shall be the chairperson.  *This committee*
*shall at no time have sufficient board members appointed to constitute a quorum of the Board*
*of Directors.*  This committee, *in accordance with procedures adopted by the Board under*
*Section 2,* shall ~~adopt proper procedures for conducting an annual or special Membership~~
~~meeting to adopt a specific proxy form to be used in conducting an annual or special~~
~~Membership meeting; adopt procedures for proper notification of~~ *notify* the Membership of ~~such~~
*annual or special Membership* meetings and ~~delivery of~~ *deliver* the Corporation's *official* proxy
*and/or ballot* forms to the Membership; determine, qualify, and register the eligible voters for

---

[2] This meeting shall be held between January 1 and May 1.  Insert the day of week, week of month and month of
year.

Form FmHA-TX-442-7
(Revised 9/93)

*RUS-TX Bulletin 1780-20*
*(Revised 3/2002)*

such meeting; validate proxies, determine presence of quorum for conducting the meeting, ~~design ballots,~~ canvas all votes, and ~~institute proper~~ recording ~~of~~ the results of such elections. *Should the individual holding the office of Secretary-Treasurer be running for re-elecction, the President shall appoint an officer not currently running for re-election to serve as chairperson of this committee.*

Section ~~24~~. After fixing a date for the notice of a meeting, the Board of Directors shall prepare an alphabetical list of the names of all voting members who are entitled to vote as of the record date of the meeting. The list must show the address of each voting member. No later than two (2) business days after the date notice is given of the meeting, and continuing through the meeting, the list of voting members must be available for inspection by any member entitled to vote at the meeting for the purpose of communication with other members concerning the meeting at the Corporation's principal office or at a reasonable place identified in the meeting notice in the city where the meeting will be held. Any voting Member, or voting Member's agent or attorney, shall be allowed, on written demand, to inspect and, at a reasonable time and at *their* ~~his~~ expense, copy the list. Further, the Board shall make the list of voting Members available at the meeting, and shall allow inspection of such list by any voting Member or voting Member's agent or attorney at any time during the meeting, including any adjournments thereof.

### ~~ARTICLE XII~~ *ARTICLE VII*

A Special Meeting of the Members or Directors may be called by the President, or by demand by a majority of the board members or one-third (1/3) of the Members. Such special meetings shall be held upon giving the notice *as* required ~~in Article XII of the Bylaws~~ *by the Texas Open Meetings Act.*.

Special meetings of the Directors may be held upon the posting of notice of such special meeting, in the manner provided ~~under Article V of the Bylaws~~ *by the Texas Open Meetings Act,* ~~at least two hours before the meeting is convened~~. It shall be the responsibility of the President,

~Form FmHA-TX-442-7~
~(Revised 9/93)~

*RUS-TX Bulletin 1780-20*
*(Revised 3/2002)*

or ~his~ *a* designee *of that office,* to ensure that proper notice is posted *and Directors are properly notified.* In no event shall any special meeting of the Directors be convened where the business of such meeting could be considered at a regular meeting of the Directors receiving at ~least~ seventy-two (72) hours notice as provided under Article V of these Bylaws.

Prior to convening any special meeting of the Members, the President shall request in writing that the Secretary-Treasurer give at least ten (10) days prior notice to the Members, and that such special meeting is otherwise noticed *as required under the Texas Open Meetings Act* and as provided under Article V of these Bylaws. Such notice shall specify the time, place and purpose of the meeting, and shall be addressed and mailed to each of the Members at their address last known to the Corporation.

## ~ARTICLE VI~ *ARTICLE VIII*

The Corporation shall conduct its business on a non-profit basis, and no dividends shall ever be paid upon the Memberships of such Corporation. All profits arising from the operation of such business shall be annually paid out to the persons who have, during the past year, transacted business with the Corporation, in direct proportion to the amount of business transacted, provided that no such dividends shall ever be paid while any indebtedness of the Corporation remains unpaid *and, provided also, that the Directors of the Corporation may allocate to sinking fund(s) and reserve accounts such amount of profits as they deem necessary for maintenance, operation, capital improvements, expansions and replacements of all facility components, as provided by Section 67.008 (d) of the Texas Water code. Funds allocated by the Board to a sinking fund for replacement, amortization of debts, and the payment of interest that are not required to be spent in the year in which deposited shall be invested in accordance with the provisions of Section 67.014 (b) of the Texas Water Code..*

03/21/024:12 PM

Form FmHA TX 442-7
(Revised 9/93)

RUS-TX Bulletin 1780-20
(Revised 3/2002)

## ~~ARTICLE VII~~ *ARTICLE IX*

The Directors of the Corporation shall establish and maintain, so long as the Corporation is indebted to the Government, in an institution insured by the State or Federal Government, or invested in readily marketable securities backed by the full faith and credit of the United States of America, a reserve account separate and apart from other fund accounts of the Corporation. *Securities so purchased shall be deemed at all times to be part of the reserve fund account.* There shall be deposited in such fund the sum as required by a total of all loan resolutions executed by the Corporation. Such deposits shall be made monthly and shall continue until the total amount deposited equals the sum as required by the executed loan resolutions provided, however, that after any withdrawals, such deposits shall be resumed until the amount accumulated in the fund is restored to the sum as required by the executed loan resolutions.

Withdrawals may be made from this fund only upon prior written approval from ~~Farmers Home Administration~~ *USDA Rural Development, RUS*. Approval shall be made only for emergency repairs, obsolescence of equipment, improvements to facility, and for making up any deficiencies in revenue for loan payments.

~~The Directors shall invest all sums in this fund not to be required to be expended within the year in which the same are deposited in bonds or other evidence of indebtedness of the United States of America, or in readily marketable securities backed by the full faith and credit of the United States of America. Securities so purchased shall be deemed at all times to be part of the reserve fund account.~~

## ~~ARTICLE VII~~ *ARTICLE X*

Section 1. *The Corporation shall have Members as defined by the Texas Water Code. All customers of the Corporation must hold a membership or obtain their service through a membership. A person or entity that holds an interest in property solely as security for the*

~~Form FmHA TX 442-7~~
~~(Revised 9/93)~~

*RUS-TX Bulletin 1780-20*
*(Revised 3/2002)*

*performance of an obligation or that only builds on or develops the property for sale to others*
*is not required to hold a membership as a condition to receive service on a limited basis.*
Every person (which includes any legal entity) owning or having a legal right to the control,
possession or occupancy of property served, or which may ~~reasonable~~ *reasonably* be served by
the Corporation, shall have the right to become a Member of the Corporation upon payment of
the Membership fee hereinafter provided and upon compliance with the Corporation's conditions
of water and/or sewer service as provided for or in its published charges, rates and conditions of
service. Membership shall not be denied because of the applicant's race, color, ~~creed,~~ *religion,*
*sex, age, marital status, familial status, handicap, income from Public Assistance, disability* or
national origin. It is the intent of the Corporation to provide service on a nondiscriminatory
basis. ~~to all persons desiring service to the extent that the capabilities of the system will~~
~~reasonably permit.~~

      Section 2. The Membership fee shall be *as determined by the Board of Directors*
$_____. Payment of Membership fee or transfer of Membership shall entitle
an applicant to further qualify for one (1) connection to the system or shall entitle a transferee of
Membership to continue to qualify for service to an existing connection to the system by meeting
the conditions for water and/or sewer as provided in the Corporation's published rates, charges,
and conditions of service. A person may own more than one Membership, but each Member
shall be entitled to only one vote regardless of the number of Memberships owned. Membership
certificates shall be in such form as shall be determined by the Board of Directors.

      Section 3. The Membership fee may be revised by the Board of Directors as the Board
may determine to be appropriate. In determining the amount of the Membership fee, however,
the Board shall ensure that the fee is sufficient to establish the potential Member as being
legitimately interested in securing water *and/or sewer* service from the Corporation for such
potential Members' own needs. Furthermore, the Board shall determine and administer such fee
in a manner or in an amount which does not unreasonably deny service to financially deprived
potential Members. In no event, however, shall the Membership fee exceed an amount equal to
the sum of twelve (12) charges of the Corporation's minimum monthly water *and/or sewer* rate

~~Form FmHA-TX-442-7~~
~~(Revised 9/93)~~

*RUS-TX Bulletin 1780-20*
*(Revised 3/2002)*

unless previously approved by ~~Farmers Home Administration~~ *USDA Rural Development, RUS.*
*Membership fees will be refundable.*


### ~~ARTICLE IX~~ *ARTICLE XI*


Where necessary for determining those Members entitled to notice of, or those Members
entitled to vote at any meeting or any adjournment thereof, or where necessary to make a
determination of Members for any other proper purpose, ownership of Memberships shall be
deemed to be vested in those persons who are the record owners of Memberships as evidenced
by the Membership transfer book on the 15th day of the month preceding the month of the date
upon which the action requiring such determination is to be taken.  Nothing herein shall preclude
the holder of a Membership from mortgaging such Membership or, upon notification of the
Corporation, preclude the holder of such mortgages from exercising legal rights pursuant to such
mortgages upon proper notice to the Corporation.


### ~~ARTICLE X~~ *ARTICLE XII*


Section 1.  In order to ensure that business done by the Corporation shall continue within
the capacity of its facilities and to prevent undue financial burden on the Members of the
Corporation, Membership in the Corporation shall be transferred in accordance with the
following:


(a)  Except as herein provided, Membership in the Corporation shall be deemed personal
estate and a person or entity that owns any stock of, is a Member of, or has some other right of
participation in the Corporation may not sell or transfer that stock, Membership, or other right of
participation to another person or entity except:  (1) by will to a transferee who is a person related
to the testator within the second degree by consanguinity; (2) by transfer without compensation
to a transferee who is a person related to the owner of the stock or other interest within the

~~Form FmHA-TX-442-7~~
~~(Revised 9/93)~~

*RUS-TX Bulletin 1780-20*
*(Revised 3/2002)*

second degree by consanguinity; or (3) by transfer without compensation or by sale to the Corporation.

(b)  Subsection (a) of this section does not apply to a person or entity that transfers the Membership or other right of participation to another person or entity as part of the conveyance of real estate from which the Membership or other right of participation arose.

(c)  The transfer of stock, Membership, or another right of participation under this section does not entitle the transferee to water *and/*or sewer service unless each condition for water *and/*or sewer service is met as provided in the Corporation's published rates, charges, and conditions of service.  Water *and/*or sewer service provided by the Corporation as a result of stock, Membership, or other right of participation may be conditioned on ownership of the real estate designated to receive service and from which the Membership or other right of participation arose.

(d)  The Corporation may cancel a persons or other entity's stock, Membership, or other right of participation if the person or other entity fails to meet the conditions for water *and/*or sewer service prescribed by the Corporation's published rates, charges, and conditions of service, or fails to comply with any other condition placed on the receipt of water *and/*or sewer service under the stock, Membership, or other right of participation authorized under Subsection (c) of this section.  The Corporation may, consistent with the limitations prescribed by Subsection (a) of this section and as provided in the Corporation's tariff, reassign canceled Membership or other right of participation to any person or entity that has legal title to the real estate from which the canceled Membership or other right of participation arose and for which water *and/*or sewer service is requested, subject to compliance with the conditions for water *and/*or sewer service prescribed by the Corporation's published rates, charges, and conditions of service.

Section 2.  Notwithstanding anything to the contrary here-in-above provided, the consideration for the transfer of any Membership in the Corporation from the original Members, their transferees, pledges, administrators or executors, or other persons, shall never exceed the

Form FmHA TX 442-7
(Revised 9/93)

RUS-TX *Bulletin 1780-20*
*(Revised 3/2002)*

amount of the original costs of such Membership. No gain or profit shall ever be realized from the sale or transfer of a Membership.

## ARTICLE XIII

*The Board may employ a manager to handle the business of the Corporation under the direction of the Board. The Board shall set the salary for the manager.* ~~The business of the Corporation shall be handled under the direction of the Board of Directors by a manager to be elected by majority vote of the Board. The manager shall serve with or without compensation. The manager, with the approval of the Board of Directors, may employ, with or without compensation, such supervisory, clerical or other employees as may be required to effectively operate the business of the Corporation.~~

## ARTICLE XIV

Notwithstanding the ownership of a Membership certificate, all Members shall be billed, disconnected, or reconnected, and otherwise shall receive service in accordance with the written policies of the Corporation, including the tariff of the Corporation. In the event a member should surrender ~~his~~ *the* Membership certificate properly endorsed to the Secretary-Treasurer of the Corporation, the water *and/or sewer* service shall be discontinued and the obligation to pay for water *and/or sewer* service shall terminate except as for the minimum charge for the current month and the charge for water *and/or sewer* used during the current month, and except as for any prior unpaid amounts due the Corporation. *Any remaining balance from the membership fee will be refunded to the former member.* In the event Membership is terminated, cancelled, withdrawn, or surrendered, whether voluntarily or involuntarily, the former Member's rights and interest in the assets of the Corporation will not be forfeited.

03/21/024:12 PM

Form FmHA TX 442-7
(Revised 9/93)

RUS-TX Bulletin 1780-20
(Revised 3/2002)

## ARTICLE XV

Upon the discontinuance of the Corporation by dissolution or otherwise, all assets of the Corporation shall be distributed among the Members and former Members in direct proportion to the amount of their patronage with the Corporation insofar as practicable.  Any indebtedness due the Corporation by a Member for water *and/or sewer* service or otherwise shall be deducted from such Member's share prior to final distribution.  By application for and acceptance of Membership in the Corporation, each Member agrees that upon the discontinuance of the Corporation by dissolution or otherwise, all assets of the Corporation transferred to that Member shall be in turn immediately transferred by the individual Member to an entity that provides a water supply or wastewater service, or both, that is exempt from ad valorem taxation. *By application for and acceptance of membership in the Corporation, each Member grants the Corporation's Board of Directors that Member's permission to execute all instruments and documents necessry to effectuate such transfers in order to preserve the Corporation's statutory rights to exemption from income and ad valorem taxation.*

## ARTICLE XVI

The fiscal year of the Corporation shall be _____ to _____.

## ARTICLE XVII

For so long as the Corporation is indebted for a loan or loans made to it by the United States of America through the ~~Farmers Home Administration~~ *USDA Rural Development, RUS*, the Corporation shall insure with a reputable insurance company such of its properties and in such amounts as is required by the State Director of the ~~Farmers Home Administration~~ *USDA Rural Development, RUS*, for the State of Texas.

03/21/024:12 PM

Form FmHA TX 442-7
(Revised 9/93)

*RUS-TX Bulletin 1780-20*
*(Revised 3/2002)*

### ~~ARTICLE XVII~~

~~Section 1. If at the end of the fiscal year, or in the event of emergency repairs, the Board of Directors determines the total amount derived from the collection of water charges to be insufficient for the payment of all costs incident to the operation of the Corporation's system during the year in which such charges are collected, the Board shall make and levy an assessment against each Member of the Corporation as the Board may determine or as may be required by Farmers Home Administration so that the sum of such assessments and the amount collected from water and other charges insufficient to fully pay all costs of operation, maintenance, replacement and repayment on indebtedness for the year's operations, but this provision shall not operate for the benefit of any third party creditor other than Farmers Home Administration without a favorable vote of the majority of the Members. Any assessments levied to make up operations deficits in any year shall be levied against Members in proportion to their patronage with the Corporation.~~

~~Section 2. In the event a Member should surrender his Membership certificate properly endorsed by the Secretary-Treasurer of the Corporation, the obligation to pay such assessments shall be limited to assessments made and levied prior to the date of surrender of the Membership certificate provided, however, that this paragraph and the second sentence of Article XIV shall not apply to relieve a Member of his obligation under special arrangements covering Multiple Membership certificates held by one Member which may have been required or approved by the Farmers Home Administration.~~

### ~~ARTICLE XIX~~ *ARTICLE XVIII*

The Corporation shall keep correct and complete books and records of account and shall keep minutes of the proceedings of its Members, Board of Directors, and committees, and shall keep a record of the name and addresses of its Members entitled to vote at its registered office or principle office in Texas.

03/21/024:12 PM

~Form FmHA-TX-442-7~
~(Revised 9/93)~

RUS-TX Bulletin 1780-20
*(Revised 3/2002)*

Annually, the Board of Directors shall prepare or cause to be prepared a report of the financial activity of the Corporation for the preceding year including a statement of support, revenue, and expenses and changes in fund balances, a statement of functional expenses, and balance sheets for all funds or such financial reports as required by ~Farmers Home Administration~ *USDA Rural Development, RUS*.  Such report shall be approved by the Board of Directors.

With prior written request, corporate records, books, and annual reports, subject to exceptions provided by the ~Open Records~ *Public Information* Act, ~Article 6252-17a, Tex. Rev. Civ. Stat.~ *Chapter 552, Texas Government Code*, including any amendments thereto, shall be available for public inspection and copying by the public or their duly authorized representatives during normal business hours subject to a reasonable charge for the preparation of copies.

In the event of any conflict between the provisions of the ~Open Records~ *Public Information* Act and the provisions of the Bylaws, the provisions of the ~Open Records~ *Public Information* Act shall prevail.

## ~ARTICLE XX~ *ARTICLE XIX*

These Bylaws may be altered, amended, or repealed by a vote of a majority of the Members present, *whether in person or by proxy,* at any regular meeting of the *Members* ~Corporation,~ or at any special meeting of the *Members* ~Corporation~ called for that purpose, except that the Members shall not have the power to change the purpose of the Corporation so as to decrease its rights and powers under the laws of the State, or to waive any requirements of bond or other provisions for the safety and security of the property and funds of the Corporation or its Members, or to deprive any Member of rights and privileges then existing, or so to amend the Bylaws as to effect a fundamental change in the ~policies~ *intents and purposes* of the Corporation.  Notice of any amendment to be made at a special meeting of the Members must be given at least ten (10) days before such meeting and must set forth the amendments to be considered.  For so long as the Corporation is indebted for a loan or loans made to it by the

Form FmHA-TX-442-7
(Revised 9/93)

RUS-TX Bulletin 1780-20
(Revised 3/2002)

United States of America through the ~~Farmers Home Administration~~ *USDA Rural Development, RUS, or its successor agencies and assigns*, these Bylaws shall not be altered, amended, or repealed without the prior written consent of the State Director of the ~~Farmers Home Administration~~ **USDA Rural** *Development, RUS,* for the State of Texas.

### ~~ARTICLE XXI~~ *ARTICLE XX*

The seal of the Corporation shall consist of a circle within which shall be inscribed "_____ WATER SUPPLY CORPORATION."

### ~~ARTICLE XXII~~ *ARTICLE XXI*

The Corporation pledges its assets for use in performing the ~~organization's charitable~~ functions *of the corporation as provided by law and the Corporation's Articles of Incorporation.*

### ~~ARTICLE XXIII~~ *ARTICLE XXII*

The above Bylaws and regulations were unanimously adopted by the *Board of Directors* ~~Membership~~ of the _____ WATER SUPPLY CORPORATION, at a meeting in the _____ on the _____ day of _____, ~~199~~ *20* _____.

_____
*President*

*Attest:*

_____
Secretary-Treasurer



RECEIVED
AUG - 6 1979

STATE OF TEXAS
OFFICE OF THE SECRETARY OF STATE
AUSTIN, TEXAS 78711

May 22, 1972

Bob Bullock
SECRETARY OF STATE

RE'D.
Adams, Graham,
Lewis, Jenkins
& Graham
Bowers III
ASST SECRETARY OF STATE

Raymond S. Jenkins
Adams, Graham, Lewis, Jenkins & Graham
Harlingen National Bank Building
P. O. Drawer 1429
Harlingen, Texas  78550

CHARTER NO:
EXEMPT                                    306705

RE:        EAST RIO HONDO WATER SUPPLY CORPORATION

TO THE ATTENTION OF THE CAPTIONED CORPORATION

        It has been our pleasure to approve and place on record the
Articles of Incorporation that created your corporation. We extend our
best wishes for success in your new venture.

        If as shown as "EXEMPT" above, you will be required to file
an annual franchise tax return with comptroller of Public Accounts,
Capitol station, Austin, Texas, 78711, and pay the tax due thereunder.
The first return and payment will be due within 90 days after the end
of the first corporated year.  If the corporation should be exempt
and is not shown "EXEMPT" above, you must apply to the comptroller for
such exemption.  The SECRETARY OF STATE cannot make such a determination
for your corporation.

        We suggest that you keep this letter as a reminder, or, so mark
your records that you will not unwittingly become liable for statutory pen-
alties for late filing and late payment.

                                Yours very truly,

                                BOB BULLOCK
                                Secretary of State

                        BY:     Ted W. Hejl
                                Ted W. Hejl
                                Director
                                Corporation Division

ERHWSC 0016

EXHIBIT
"4"

NON-PROFIT



THE STATE OF TEXAS

## OFFICE OF THE SECRETARY OF STATE

## CERTIFICATE OF INCORPORATION

### OF

EAST RIO HONDO WATER SUPPLY CORPORATION

CHARTER NO.  306705

The undersigned, as Secretary of State of the State of Texas, hereby certifies that

duplicate originals of Articles of Incorporation for the above corporation duly

signed and verified pursuant to the provisions of the Texas Non-Profit Corporation

and Article 1434a, V. A. C. S. of Texas

Act, have been received in this office and are found to conform to law.

ACCORDINGLY the undersigned, as such Secretary of State, and by virtue of

the authority vested in him by law, hereby issues this Certificate of Incorporation

and attaches hereto a duplicate original of the Articles of incorporation

Dated  May 17   , 19  72

_Bob Bullock_

Secretary of State



ERHWSC 0017

ARTICLES OF INCORPORATION

OF

EAST RIO HONDO WATER SUPPLY CORPORATION

FILED
In the Office of the
Secretary of State of Texas

MAY 17 1972

Deputy Director, Corporation Division

THE STATE OF TEXAS )
COUNTY OF CAMERON )

KNOW ALL MEN BY THESE PRESENTS:

WE, the undersigned natural persons of the age of twenty-one (21) years or more, at least three of who are citizens of the State of Texas, acting as incorporators of a Corporation, do hereby adopt the following Articles of Incorporation for such Corporation:

ARTICLE I.

The name of the Corporation is East Rio Hondo Water Supply Corporation.

ARTICLE II.

The Corporation is a non-profit Corporation organized under Article 1434a of the Revised Civil Statutes of Texas of 1925, as amended, supplemented by the Texas Non-Profit Corporation Act, Article 1.01 et seq., as amended, and is authorized to exercise all powers, privileges and rights conferred on a Corporation by these Acts, and all powers and rights incidental in carrying out the purposes for which the Corporation is formed, except such as are inconsistent with the express provisions of these Acts.

ARTICLE III.

The period of its duration is perpetual.

ARTICLE IV.

The Corporation is formed for the purpose of furnishing a water supply for general farm use and domestic purposes to individuals residing in the rural community near Rio Hondo, Texas, and northeast of Harlingen, Texas, and the surrounding rural areas. The places where the business of the Corporation is to be transacted shall be the Rio Hondo Community in Cameron

ERHWSC 0018

County, Texas, and the surrounding rural areas.

## ARTICLE V.

The street address of the initial registered office of the Corporation is P. O. Box 126, Lozano, Texas, and the name of its initial registered agent at such address is R. T. Biddison.

## ARTICLE VI.

The number of directors constituting the initial Board of Directors of the Corporation is seven (7), and the names and addresses of the persons who are to serve as the initial directors are:

| NAME | ADDRESS | CITY |
|---|---|---|
| R. T. Biddison | P. O. Box 126 | Lozano, Texas  78568 |
| Ralph Bollheimer | Rt. 2, Box 115-C | San Benito, Texas  78586 |
| Olivia Gonzalez | Box 72 | Rio Hondo, Texas  78583 |
| Richard Gonzalez | Box 276 | Rio Hondo, Texas  78583 |
| Doinicio Zuniga | Rt. 2, Box 177 | San Benito, Texas 78586 |
| Comer Kidd | Rt. 2 | Harlingen, Texas 78550 |
| Eddie L. David | Rt. 2, Box 87 | Harlingen, Texas 78550 |

## ARTICLE VII.

The name and street address of each incorporator is:

| NAME | ADDRESS | CITY |
|---|---|---|
| R. T. Biddison | P. O. Box 126 | Lozano, Texas  78568 |
| Ralph Bollheimer | Rt. 2, Box 115-C | San Benito, Texas  78586 |
| Olivia Gonzales | Box 72 | Rio Hondo, Texas  78583 |
| Richard Gonzales | Box 276 | Rio Hondo, Texas  78583 |
| Doinicio Zuniga | Rt. 2, Box 177 | San Benito, Texas 78586 |
| Comer Kidd | Rt. 2 | Harlingen, Texas 78550 |
| Eddie L. David | Rt. 2, Box 87 | Harlingen, Texas 78550 |

Each incorporator shall be a member of the Board of Directors who are to serve as directors until the first annual meeting of the members, or until

-2-

ERHWSC 0019

their successors are elected and qualified.

<u>ARTICLE VIII.</u>

The Corporation is and shall continue to be a Corporation without capital stock, and membership in the Corporation shall be deemed personal estate and shall be transferable only on the books of the Corporation in such manner as the By-Laws may prescribe.

IN WITNESS WHEREOF, we have hereunto set our hands, this the 8th day of May , 1972.

_R. T. Biddison_
R. T. Biddison

_Ralph Bollheimer_
Ralph Bollheimer

_Olivia Gonzalez_
Olivia Gonzalez

_Richard Gonzalez_
Richard Gonzalez

_Doinicio Zuniga_
Doinicio Zuniga

_Comer Kidd_
Comer Kidd

_Eddie L. David_
Eddie L. David

THE STATE OF TEXAS )

COUNTY OF CAMERON )

I, Raymond S. Jenkins a Notary Public, do hereby certify that on this 8th day of May , 1972, personally appeared before me R. T. Biddison, Ralph Bollheimer, Olivia Gonzalez, Richard Gonzalez,

-3-



### Office of the Attorney General
### State of Texas

March 17, 1995

| | |
|---|---|
| Dr. James Corbin<br>Chair<br>Texas Antiquities Committee<br>P.O. Box 12276<br>Austin, Texas 78711-2276 | Letter Opinion No. 95-011<br><br>Re: Whether the Fort Bend Flood Control Water Supply Corporation is a political subdivision and whether its development actions are subject to the Texas Antiquities Code (ID# 25694) |

Dear Dr. Corbin:

The members of the Texas Antiquities Committee ask whether the Fort Bend Flood Control Water Supply Corporation is a political subdivision of the State of Texas, and whether the development actions of this entity are subject to compliance with the Texas Antiquities Code, Nat. Res. Code ch. 191. Section 191.092 (a) of the Natural Resources Code provides as follows:

Sites, objects, buildings, artifacts, implements, and locations of historical, archeological, scientific, or educational interest . . . as well as archeological sites . . . that are located in, on, or under the surface of any land belonging to the State of Texas or to any county, city, or political subdivision of the state are state archeological landmarks and are eligible for designation. [Emphasis added.]

Landmarks described by section 191.092 "are the sole property of the State of Texas and may not be removed, altered, damaged, destroyed, salvaged, or excavated without a contract with or permit from the committee." Id. § 191.093. Accordingly, landmarks that are located in, on, or under land belonging to a political subdivision of the state are subject to section 191.093.

The Fort Bend Flood Control Water Supply Corporation is a nonprofit water supply corporation established pursuant to article 1434a, V.T.C.S. A nonprofit water supply corporation created pursuant to that statute is not a political subdivision or a municipal or governmental agency. See Tarrant County Water Supply Corp. v. Hurst- Euless-Bedford Indep. Sch. Dist., 391 S.W.2d at 163 (Tex. Civ. App.--Fort Worth 1965, writ ref'd n.r.e.); Attorney General Opinion JM-596 (1986).

In the context of certain statutes concerning water projects, however, the legislature has expressly defined "political subdivision" to include nonprofit water supply corporations. For example, in chapter 52 of the Water Code, relating to underground water conservation districts, "political subdivision" means

a county, municipality, or other body politic or corporate of the state, including a district or authority created under Article III, Section 52, or Article XVI, Section 59, of the Texas Constitution, a state agency, and a nonprofit water supply corporation created under . . . [a]rticle 1434a, Vernon's Texas Civil Statutes . . . .

Water Code § 52.001(15)(emphasis added); see also id. §§ 15.001 ("political subdi- vision" for purposes of Texas water assistance program includes nonprofit water supply corporations), .731(4) ("political subdivision" for purposes of plumbing improvement loans includes certain nonprofit water supply corporations), 17.921(3) ("political subdivision" for purposes of assistance for water supply and sewer service projects includes nonprofit water supply corporations).



By expressly including nonprofit water supply corporations in the definitions of "political subdivision," the legislature enabled them to participate in particular water development programs. See generally Tex Const. art. III, § 49-d-5 (authorizing legis- lature to extend to nonprofit water supply corporations benefits of water development programs established by various other constitutional provisions). The use of a specialized definition of "political subdivision" in particular statutes does not change the meaning of that term elsewhere. See Gov't Code § 311.011(common and technical usage of words in statutes).

For the purposes of chapter 191 of the Natural Resources Code, a "political subdivision" is

a local governmental entity created and operating under the laws of this state, including a city, county, school district, or special district created under Article III, Section 52(b)(1) or (2), or Article XVI, Section 59, of the Texas Constitution.

Nat. Res. Code § 191.003(4) (footnote added). This definition does not expressly state that a nonprofit water supply corporation created under article 1434a, V.T.C.S., is a political subdivision. The legislature has not modified the decision in Tarrant County Water Supply Corporation for purposes of chapter 191 of the Natural Resources Code. Accordingly, the Fort Bend Flood Control Water Supply Corporation is not a "political subdivision" of the state within section 191.092 of the Natural Resources Code. The land it owns is not subject to the requirements of Natural Resources Code section 191.093.

### SUMMARY

The Fort Bend Flood Control Water Supply Corporation, established under article 1434a, V.T.C.S., and incorporated under the Nonprofit Corporation Act, is not a "political subdivision" of the state within section 191.092 of the Natural Resources Code. Land owned by the water supply corporation is not subject to the requirements of Natural Resources Code section 191.093.

Yours very truly,

Susan L. Garrison
Assistant Attorney General
Opinion Committee

## Footnotes

(1) Under article 1434a, a water supply corporation may be formed and chartered by the state "for the purpose of furnishing a water supply or sewer service, or both, to towns, cities, private corporations, [and] individuals, . . . and for the purpose of providing a flood control and drainage system for towns, cities, counties, other political subdivisions, private corporations, individuals, and other persons." V.T.C.S. art. 1434a, § 1; see Tarrant County Water Supply Corp. v. Hurst-Euless-Bedford Indep. Sch. Dist., 391 S.W.2d 162 (Tex. Civ. App.--Fort Worth 1965, writ ref'd n.r.e.). The persons applying for a corporate charter "shall make application to the Secretary of State in the manner now provided by law for private corporations and in the name designated for such corporation shall use the words 'Water Supply Corporation.'" V.T.C.S. art. 1434a, § 3(a). The Texas Non-Profit Corporation Act, id. art. 1396-.01, applies to corporations created under article 1434a, V.T.C.S., "to the extent that it does not conflict" with the latter act. Id. art. 1434a, § 2(d); see Attorney General Opinion M-840 (1971). We have learned from the Statutory Filings Division of the Secretary of State's Office that the Fort Bend Flood Control Water Supply Corporation was incorporated under the Texas Non-Profit Corporation Act.

(2) The term "including" is one of enlargement, not limitation, and its use does not create a presumption that entities not enumerated in the definition are necessarily excluded. See Gov't Code § 312.001(19); Letter Opinion LO94-076 (1994). In considering whether the Fort Bend Flood Control Water Supply Corporation is a political subdivision as defined by section 191.003(4) of the Natural Resources Code, we do not rely on such a presumption, but on the decision in Tarrant County Water Supply Corp. v. Hurst-Euless-Bedford Indep. Sch. Dist., 391 S.W.2d 162 (Tex. Civ. App.--Fort Worth 1965, writ ref'd n.r.e.).

(3) Article III, section 52(b)(1) and (2) of the Texas Constitution removes certain legislatively authorized water projects from the prohibition against the lending of credit by political subdivisions. Article XVI, section 59 of the Texas Constitution authorizes the creation of conservation and reclamation districts.

Morales Letter Opinion No. 95-011                                    Page 3 of 3

Texas OAG home page | Opinions & Open Government